**THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

MFB Fertility, Inc.,

Plaintiff,

v.

Action Care Mobile Veterinary Clinic, LLC,

Defendant.

Case No. 1:23-cv-03854

Dist. Judge Harry D. Leinenweber

Mag. Judge Gabriel A. Fuentes

**RESPONSE OF DEFENDANT/COUNTER-PLAINTIFF ACTION CARE MOBILE VETERINARY CLINIC, LLC TO PLAINTIFF/COUNTER-DEFENDANT MFB FERTILITY'S MOTION TO DISMISS COUNTERCLAIMS**

Defendant/Counter-Plaintiff Action Care Mobile Veterinary Clinic, LLC ("Action Care") respectfully submits this response in opposition ("Response") to Plaintiff/Counter-Defendant MFB Fertility, Inc.'s ("MFB") Motion to Dismiss Action Care's Counterclaims [Dkt. 31] and to MFB's brief in support thereof ("MFB Br.") [Dkt. 31-1].

**PRELIMINARY STATEMENT**

Within a month of Action Care's first sale of its "OVUPROOF" products via Amazon, MFB identified Action Care's goods as being an alternative to MFB's "PROOV" fertility tests. MFB decided to eliminate the fledgling competitor. Rather than seeking injunctive relief from a court, MFB instead decided to short-circuit the process by submitting a DMCA takedown notice to Amazon. MFB's approach resulted in the immediate removal of Action Care's product listing from a popular marketplace. After Action Care submitted a counternotice seeking reinstatement of its Amazon page, MFB initiated this litigation alleging copyright infringement and trademark infringement against Action Care.

In response to MFB's Complaint [Dkt. 6], Action Care filed a motion to dismiss the Complaint's copyright claim and for the associated attorneys' fees, [Dkt. 10], and a brief in support thereof [Dkt. 11] ("Action Care's Pending Motion"). Action Care also timely proceeded to answer

the Complaint and to allege certain counterclaims ("Counterclaims" or "Countercl.") [Dkt. 15], all of which MFB now seeks to dismiss through MFB's motion under Rule 12(b)(6).

As an initial matter, MFB's motion to dismiss is a dilatory tactic designed to delay the adjudication of Action Care's Pending Motion. MFB's counsel acknowledged on December 18, 2023, that significantly delaying the filing of pre-discovery motions by MFB would be prejudicial to Action Care. (*See* **Zlatkin Declaration, Ex. A**.) MFB nevertheless proceeded to file its motion on February 2, 2024. Despite this prejudicial attempt to delay, even if MFB's motion is considered timely, MFB's motion must be denied with respect to all claims for the reasons set forth herein.

## LEGAL STANDARD

The legal standard for a motion to dismiss a counterclaim is the same as for a motion to dismiss a complaint. *Cozzi Iron & Metal Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir.2001). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). Under Rule 8, a complaining party must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a counterclaim to be plausible, the complainant's factual allegations – as opposed to any legal conclusions – must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all of the complainant's well-pleaded factual allegations and must view them – and all reasonable inferences – in the light most favorable to the complainant. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019).

The moving party bears the burden of establishing the insufficiency of the complainant's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). Further, Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and

information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Unless the Court is "certain that amendment would be futile or otherwise unwarranted," the complainant should be given "at least one opportunity to amend his complaint." *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022).

## ARGUMENT

### I. ACTION CARE HAS PROPERLY ALLEGED MISREPRESENTATION UNDER SECTION 512(f) OF THE DMCA

A submitter of a DMCA takedown notice can be found liable if the submitter "knowingly materially misrepresents . . . that material or activity is infringing" and such misrepresentation results in injury for the alleged infringer. 17 U.S.C. § 512(f)(1). MFB attacks Action Care's Counterclaims as failing to allege that "MFB had actual knowledge of a misrepresentation made to Amazon" or "to identify which set of facts give rise to its claim for misrepresentation." (MFB Br. at 6.) Action Care has sufficiently pleaded all necessary elements of a Section 512(f) claim.

#### a. MFB Knowingly Misrepresented Facts in the DMCA Takedown Notice

Section 512(f) case law is sparse on the district court level in the Seventh Circuit. *The Sunny Factory, LLC v. Chen*, 21 C 3648, at *8 (N.D. Ill. Mar. 11, 2022). In fact, almost no circuit-level cases exist regarding Section 512(f), with the Ninth Circuit being the only one to have ruled on it. *See, generally*, *Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2015), *cert. denied*, 137 S.Ct. 2263 (2017); *Rossi v. Motion Picture Ass'n of America Inc.*, 391 F.3d 1000 (9th Cir. 2004).

As the more recent *Lenz* decision has indicated, the knowledge requirement of Section 512(f) can be met not only through a showing of actual knowledge, but also through a showing of willful blindness. 815 F.3d at 1155; *see also*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766–70 (2011) (clarifying that a statutory knowledge requirement may be satisfied not only by proof that the defendant had actual knowledge of the relevant facts, but also by evidence of the defendant's willful blindness). A person is willfully blind to a fact if the person

(1) "subjectively believe[s] that there is a high probability that [the] fact exists" and (2) "take[s] deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769. Willful blindness is legally equivalent to actual knowledge because a defendant "who takes deliberate actions to avoid confirming a high probability of wrongdoing" is as culpable as one who acts with actual knowledge and "can almost be said to have actually known the critical facts." *Id.* This view is in line with the Seventh Circuit's determination that "[w]illful blindness is knowledge, in copyright law." *In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003). Therefore, in addition to actual knowledge of a misrepresentation, a DMCA notice submitter like MFB violates Section 512(f) if the submitter chooses not to "confirm a high probability" that material is not infringing.

Various types of behavior can meet this standard. Of note, "'ostrich-like' business practices amount to willful blindness." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). "Conscious avoidance of information is a form of knowledge," and qualifies as ostrich behavior. *Ho v. Donovan*, 569 F.3d 677, 680 (7th Cir. 2009). If a party fails to inquire into relevant circumstances due to a fear "of what the inquiry would yield," this also amounts to willful blindness. *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989). Willful blindness can be ascertained through circumstantial evidence. *See Global-Tech*, 563 U.S. at 770–71.

The obligation of good-faith inquiry extends to Section 512(f) claims. DMCA takedown protocols require all notice submitters to represent that they have "a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, <u>or the law</u>." 17 U.S.C. § 512(c)(3)(A)(v) (emphasis added). The Ninth Circuit interpreted that provision as imposing a <u>proactive</u> obligation to "consider fair use before sending a takedown notification." *Lenz*, 815 F.3d at 1148. If a copyright holder "ignores or neglects" the requirement to "consider fair use before sending a takedown notification, it is liable for damages under § 512(f)." *Id.* at 1154. Further, a "copyright holder who pays lip service to the consideration of fair use by

claiming it formed a good faith belief when there is evidence to the contrary is still subject to § 512(f) liability." *Id.* Though fair use is often viewed as an affirmative defense that excuses an otherwise infringing use, the *Lenz* Court nevertheless concluded that "[f]air use is not just excused by the law, it is wholly authorized by the law." *Id.* at 1151. In contrast, without the incorporation of protectable elements into an accused work, copyright infringement cannot exist even as a *prima facie* claim. *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012) ("If the copied parts are not, on their own, protectable expression, then there can be no claim for infringement"). Applying this logic, a DMCA notice submitter like MFB must proactively consider the potential that similarities in materials are unprotectable. Failure to do so can form the basis of a finding of willful blindness and, therefore, knowledge for purposes of Section 512(f).

Action Care has sufficiently alleged that MFB had the requisite level of knowledge when MFB submitted the DMCA Takedown Notice. Action Care explicitly alleged that MFB's takedown notice "includ[ed] language mandated by the DMCA," which allegation was subsequently incorporated into the Section 512(f) claim. (Countercl. ¶¶ 13, 24.) As a matter of law, MFB's representations included a statement that MFB had a good faith belief that the material contained on Action Care's Amazon Listing Page infringed on MFB's materials. As discussed above, MFB could not have obtained the good faith belief without proactively assessing whether Action Care's materials were non-infringing.

Action Care further presents various statements made by MFB that indicate not only willful blindness of the non-infringing nature of Action Care's materials, but also actual knowledge. (*See* Countercl. ¶¶ 26–29.) Action Care then makes a more on-the-nose allegation that, based on "information and belief, MFB knew that material contained on the Action Care Amazon Product Listing Page did not infringe upon MFB's copyright." (*Id.* ¶ 30.) Action Care's use of the word

"knew" in the Counterclaims encapsulated the legal standards relating to actual knowledge and willful blindness set forth above.

MFB criticizes Action Care's use of allegations founded on "information and belief." (MFB Br. at 9.) The criticism is misplaced. "Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005). As discussed above, Action Care's Section 512(f) counterclaim hinges on MFB's state of mind. Therefore, with respect to allegations that MFB knowingly misrepresented under the DMCA, Action Care is entirely justified to make assertions based on "information and belief" for pleading purposes.

**b. <u>MFB's Misrepresentations Were Material in Nature</u>**

Misrepresentations relating to any statements mandated by the DMCA for all takedown notifications are material. Amazon would be obligated to reject a notification that did not contain all mandatory language under Section 512(c)(3)(A), including the Section 512(c)(3)(A)(v) requirement regarding good faith consideration of noninfringement. In addition to the mandatory statements, however, MFB also included additional false statements regarding Action Care's copying of MFB's materials, and the alleged extent thereof. (Countercl. ¶¶ 13, 26–29.)

MFB seeks to classify its false statements that Action Care "used all" or "copied all" of specific portions of MFB's materials as examples of hyperbole and opinion. (MFB Br. At 7.) Under Illinois law governing defamation, courts consider the following nonexclusive factors to determine whether a statement is nonactionable opinion or a factual assertion: "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content." *Madison v. Frazier*, 539 F.3d 646, 654 (7th Cir. 2008) (citing Illinois state court cases). False statements "can be defamatory even when couched within an apparent opinion or rhetorical hyperbole." *Id.* "[A] statement should

only be considered rhetorical hyperbole when it is obviously an exaggeration, rather than a statement of literal fact." *Stanley v. Carrier Mills-Stonefort Sch. Dist. No. 2*, 459 F. Supp. 2d 766, 774 (N.D. Ill. 2006) (citing *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1 (Ill. 1992)).

The word "all" means 100 percent. *Tr. of Iron Wkrs. L. 473 P. Tr. v. Allied Prod*, 872 F.2d 208, 213 (7th Cir. 1989). This meaning of the word "all" is further supported when other terms relating to anything less are also used. *Id.* The fact that Action Care did not copy and did not use 100 percent of MFB's materials is verifiable. The context of MFB's statements is that MFB represented that "the information in the notification is accurate." *See* 17 U.S.C. § 512(c)(3)(A)(vi). Nothing in the submitted notification conveys that it is an opinion or hyperbole, nor is a DMCA takedown notification the place that would obviously contain any exaggerations.

In attempting to discard the materiality of MFB's false statements about the amount of MFB's properties allegedly appropriated by Action Care, MFB cites to *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 395 (S.D.N.Y. 2020). The comparison of MFB's misrepresentations to the *Hughes* defendant's labeling of content as "entirely transformative" is misguided. The reason that the statement "entirely transformative" was deemed "merely hyperbolic" is because the content was actually deemed by the *Hughes* court to be transformative as a matter of law for fair use purposes. *Id.* Action Care, on the other hand, cannot be said to have copied as a matter of law for the reasons set forth in Action Care's Pending Motion. Further, unlike *Hughes*, MFB's statements included their own points of comparison. MFB did not only state that Action Care "used all" or "copied all" of specific portions of MFB's materials. Instead, MFB also stated that Action Care "took wording from" a different specific portion of MFB's materials. This distinction reinforces MFB's awareness that the word "all" means 100 percent. MFB made verifiably false statements with precise and readily understood meanings within a context in which MFB had the explicit obligation to make accurate statements. These misrepresentations meet the standard for materiality.

### c. MFB's Misrepresentations Under the DMCA Injured Action Care

MFB also attacks the causal relationship between MFB's submission of the DMCA Takedown Notice and the injuries suffered by Action Care. (MFB Br. at 8.) This is a bizarre perspective. If MFB had not submitted the DMCA Takedown Notice and the misrepresentations that MFB included therein, then Amazon would not have had any reason to deactivate Action Care's Amazon product listing. Action Care has alleged that the injury resulting from MFB's misrepresentations include, at a minimum, "the financial and personal expenses associated with responding to the takedown notice, reputational damage resulting from a lower seller rating and lower account health, and lost revenues from an inability to sell Action Care's products through Amazon." (Countercl. ¶ 33.) All losses, both financial and otherwise, incurred by Action Care as a result of the deactivation are a proximate result of MFB's conduct.

## II. ACTION CARE HAS PROPERLY ALLEGED A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

MFB attempts to dismiss Action Care's counterclaim for tortious interference based on Action Care's alleged failure to identify how MFB engaged in an intentional and unjustified interference with Action Care's economic advantage. (MFB Br. at 9.) MFB correctly names the four elements of a tortious interference claim under Illinois law, (*see id.* (citing cases)), of which the existence of an intentional and unjustified interference is just one sub-element. Action Care therefore construes MFB's silence with respect to the other elements as conceding that Action Care has sufficiently pleaded those other elements.

The Seventh Circuit has explicitly acknowledged that an attempt to prevent product distribution by contacting a third party and asserting meritless copyright claims leads to exposure for tortious interference. *See Klinger v. Conan Doyle Estate, Ltd.*, 755 F.3d 496, 499 (7th Cir. 2014). In *Klinger*, the Conan Doyle estate attempted to stop a writer's use of public domain content. *Id.* The estate sought to prevent distribution of Klinger's book "by asking Amazon and other big

book retailers not to carry it." *Id.* The Seventh Circuit determined that "Klinger could have sued the estate for having committed tortious interference with advantageous business relations by intimidating his publisher." *Id.* In a subsequent order awarding attorneys' fees to Klinger, the Seventh Circuit noted that "the estate was playing with fire in asking Amazon and other booksellers to cooperate with it in enforcing its nonexistent copyright claims against Klinger." 761 F.3d 789, 792 (7th Cir. 2014). The court equated the Doyle estate's actions to an attempt to cause a boycott of Klinger's products by enlisting Klinger's "suppliers of essential distribution services." *Id.*

Here, MFB also communicated with Amazon – a supplier of essential distribution services for Action Care. (Countercl. ¶¶ 10–12.) The underlying implication with any DMCA takedown notice is that if the online service provider (OSP) like Amazon does not comply with the takedown notice, the OSP will expose itself to a lawsuit. *See In re Aimster Copyright Litigation*, 334 F.3d 643, 655 (7th Cir. 2003) ("The common element of [the DMCA's] safe harbors is that the service provider must do what it can reasonably be asked to do to prevent the use of its service by 'repeat infringers.'"). As a result, the submission of the DMCA Takedown Notice effectively operated as a threat to sue Amazon if Amazon failed to acquiesce to MFB's demands. As discussed in Action Care's Pending Motion, MFB's copyright infringement claim fails because there is no substantial similarity as a matter of law with respect to the protectable elements contained in MFB's work. Unprotectable elements in a work are available for use by any party and are the equivalent of the public domain materials at issue in *Klinger*. *See Assessment Techs. of WI, LLC v. Wiredata, Inc.*, 350 F.3d 640, 643 (7th Cir. 2003) ("The obvious orderings, the lexical and the numeric, have long been in the public domain, and what is in the public domain cannot be appropriated by claiming copyright."). Under the legal standard applicable to Rule 12(b)(6) motions, the Court may take judicial notice of its upcoming ruling with respect to Action Care's Pending Motion.

MFB is unsatisfied with Action Care's assertion that MFB "falsely claim[ed] to Amazon that Action Care violated MFB's intellectual property rights." (Countercl. ¶ 38.) MFB's submission of the DMCA Takedown Notice prevented the distribution of Action Care's products by attempting to enforce MFB's copyrights against Action Care without a legal foundation to do so. (Countercl. ¶¶ 17–23, 37–39.) MFB's interference with Action Care's dealings with Amazon will be found to have the requisite lack of justification.

As for the intentionality of MFB's conduct, MFB wanted to cause the immediate removal of Action Care's Amazon product listing. MFB could have followed proper legal procedures to seek that outcome, such as seeking injunctive relief in federal district court without initially contacting Amazon. The Court at that point would have determined the likelihood of MFB's success on the merits (*i.e.*, no likelihood at all). While Action Care's Amazon listing would have remained active to MFB's dissatisfaction, MFB would have avoided purposefully interfering with Action Care's prospective economic advantage. By abusing the takedown process, MFB exposed itself. Construing the facts in a light most favorable to Action Care, MFB's motion relating to Action Care's tortious interference counterclaim must be denied.

## III. ACTION CARE HAS PROPERLY ALLEGED A CLAIM FOR DEFAMATION *PER SE*

MFB argues that all DMCA notices are privileged communications and therefore are absolutely immune from serving as the basis of defamation claims. (MFB Br. at 11.) In doing so, MFB mischaracterizes the adjudication of *The Sunny Factory* case. The order dismissing plaintiff's claims regarded defendants who were **attorneys**. *See The Sunny Factory, LLC v. Chen*, 21 C 3648, at *1 (N.D. Ill. Mar. 11, 2022) (noting that the defined "Defendants" under the Court's order were lawyers). The Court did not see any problem with awarding default judgment for all of The Sunny Factory's alleged claims (including for defamation and defamation *per se*) against the non-attorney

defendant. *See id.* at *4 (noting that default judgment was granted against Fuxi); *The Sunny Factory*, 21-CV-3648, Dkt. 21, at *2 (Feb. 16, 2022) (final judgment order against defaulting defendant). Notably, in its order awarding default judgment against the non-attorney defendant, the Court included a mandate enjoining the non-attorney defendant from:

> knowingly making false, frivolous, and defamatory claims in, on or to the online marketplace Amazon.com ("Amazon") by falsely claiming that Plaintiff markets or sells candles on Amazon.com that infringe on Defaulting Defendant's intellectual property rights in violation of the processes laid out by the Digital Millennium Copyright Act.

*Id.* (emphasis added). This evidences that the Court did not view defamation claims and DMCA notices to be mutually exclusive as a matter of law. *See U.S. v. DiMucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) ("As a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint."); *Wehrs v. Benson York Group, Inc.*, No. 07 C 3312, at *7 (N.D. Ill. Sep. 23, 2011) ("Courts recognize . . . that judgment by default may be granted only for such relief as may lawfully be granted upon the well-pleaded facts of the complaint.") (cleaned up). Thus, a false statement in a DMCA notice can serve as the basis of a defamation claim. Only statements by attorneys made in anticipation of litigation are absolutely privileged in a DMCA notice. *See The Sunny Factory, LLC*, 21 C 3648, at *5 (N.D. Ill. Mar. 11, 2022) (quoting *Lewis v. School Dist. #70*, 523 F.3d 730, 745–46 (7th Cir. 2008)).

MFB is neither an attorney nor a law firm. Further, Action Care does not allege that MFB's DMCA Takedown Notice was submitted by an attorney. While Action Care notes that Jeffrey Schell, an intellectual property attorney, is part of MFB's management, Action Care does not allege that Schell was the one who submitted the DMCA Takedown Notice. (*See* Countercl. ¶¶12, 46.)

MFB stated in its DMCA Takedown Notice that "[Action Care] found a cheap Chinese manufacturer to copy [MFB's] tests." (Countercl. ¶ 43.) Contrary to MFB's statements, Action Care's manufacturer was producing the products in question long before Action Care ever

contacted the manufacturer, and Action Care performed due diligence to ensure that no patent infringement could be claimed. (Countercl. ¶ 44.) Considering that MFB's published false statement, at a minimum, imputes a want of integrity by Action Care in business, Action Care has sufficiently alleged all elements of defamation *per se*.

While the innocent construction doctrine may serve as a defense in defamation actions, it does not help MFB here. "In considering allegedly defamatory statements under the innocent construction rule, courts must interpret the words 'as they appeared to have been used and according to the idea they intended to convey to the reasonable reader.'" *Giant Screen Sports v. Canadian Imperial Bank*, 553 F.3d 527, 533 (7th Cir. 2009) (quoting *Bryson v. News America Publications*, 174 Ill. 2d 77, 93 (Ill. 1996)). The Court is not obligated to engage in mental gymnastics to find the most innocent possible message. *Giant Screen Sports*, 553 F.3d at 533 ("The rule does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable.") (internal quotation marks omitted). Courts are not obligated to be naïve. *Id.* "When a defamatory meaning was clearly intended and conveyed, Illinois courts will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them nonlibellous under the innocent construction rule." *Id.* (cleaned up).

As the sole basis for innocent construction, MFB latches on to MFB's use of the pronoun "They" (as opposed to "Action Care" or some other specific name) to identify the party who "found a cheap Chinese manufacturer to copy our tests then used all of our wording on the product page and product inserts." (MFB Br. at 12.) MFB cites to *Milo Enterprises v. Bird-X, Inc.*, 18-CV-6315, at *24 (N.D. Ill. Mar. 24, 2022), in support of MFB's position. (*Id.*) The main difference between *Milo Enterprises* and the instant case is that the communications with Amazon in *Milo Enterprises* actually specified multiple people who had engaged in violations. *See Milo Enters.*, 18 C 6315, at *24 (N.D. Ill. Mar. 24, 2022) ("the innocent construction rule requires the Court to

read this statement as referring to the Lius rather than to the plaintiff"). In communications with Amazon, Bird-X's representatives had identified "Anthony and Michael Liu" as individuals who had broken the law. *Id.* at *8, *22. Therefore, the subsequent use of the pronoun "They" made it unclear who was being accused of wrongdoing – the Lius or the company Milo. *Id.* at 23–24.

Here, the DMCA Takedown Notice does not mention any party by name. It does, however, make it clear that the pronoun "They" refers to the same person as the one who "used all of our wording on the product page and product inserts." Unlike the defendant in *Milo* (who did not initiate that particular litigation), MFB made it abundantly clear whom it had identified in the DMCA Takedown Notice by instituting this suit against solely Action Care. MFB had identified Action Care as the sole alleged infringer of MFB's rights. The only reasonable interpretation of the word "They" in the DMCA Takedown Notice is in relation to the owner of the Amazon listing that was the subject of MFB's takedown notice and ensuing litigation – Action Care. The Court should not be straining to find an unnatural non-defamatory interpretation for MFB's pronoun usage. Action Care alleged sufficient facts to sustain its claim for defamation *per se*.

## IV. ACTION CARE HAS PROPERLY ALLEGED A CLAIM FOR DEFAMATION *PER QUOD*

Unlike defamation *per se*, where harm to the plaintiff is presumed, defamation *per quod* requires the plaintiff to identify special damages caused by the unprivileged false statement. The Seventh Circuit has clarified that "it is enough to identify a concrete loss" to satisfy requirements of defamation *per quod* claims. *Pippen v. NBC Universal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013). It is sufficient to identify "specific business opportunities that had been available to [plaintiff] earlier but that, following the defendants' statements, were available no more." *Id.* MFB's statements caused Amazon to deactivate Action Care's listing, which in turn "resulted in Action Care's inability to distribute Action Care's Products through Amazon." (Countercl. ¶ 17.) Under the Seventh

Circuit's standard, that is sufficient by itself. Action Care also alleges additional concrete losses. In the immediate aftermath of the deactivation of Action Care's listing on Amazon, "at least 174 units of Action Care's products [were] stranded or lost." (*Id.* ¶ 18.)

MFB seeks to muddy the issue by conflating multiple removals with multiple DMCA takedown notices. (*See* MFB Br. at 13.) As far as Action Care is aware, and as Action Care has pleaded, MFB submitted a single DMCA notice on June 2, 2023. (Countercl. ¶¶ 12, 52.) This caused the immediate removal of Action Care's listing. (Id. ¶¶ 12, 53.) After a brief reinstatement of the listing, the listing was deactivated again. (*Id.* ¶¶ 21–22.) This was still a proximate result of MFB's DMCA Takedown Notice. Amazon would not have had any reason to remove Action Care's listing without the DMCA Takedown Notice from June 2023. This caused the stranding of 450 additional units, as well as "physical damage to much of Action Care's inventory." (*Id.* ¶¶ 22–23.) Regardless of the additional damages resulting from the second deactivation, Action Care still suffered sufficient injury for purposes of a defamation *per quod* claim in the period between the initial removal of the listing and the brief reinstatement, as addressed above. (Countercl. ¶ 17–19.)

## V. ACTION CARE HAS STANDING TO PETITION THE COURT TO CANCEL MFB'S "PROOV" TRADEMARK REGISTRATION

The Lanham Act explicitly allows petitions for cancellation by "any person who believes that he is or will be damaged . . . by the registration of a mark on the principal register . . . [a]t any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered." 15 U.S.C. § 1064(3). Despite this rather clear language enabling Action Care to file its cancellation counterclaim, MFB argues that Action Care has no standing to do so. (MFB Br. at 14.) To support its position, MFB cites authority that provides examples of situations that provide standing – namely, likelihood of confusion and rejection of a petitioner's application

during prosecution. (*Id.*) While a petitioner for cancellation must have a legitimate interest, MFB's cited circumstances are not the sole bases for standing.

"The question of standing focuses 'on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed,'* and is an essential part of the case or controversy requirement of Article III of the Constitution." *Amerimax Real Estate Partners, Inc. v. RE/MAX International, Inc.*, 600 F. Supp. 2d 1003, 1009 (N.D. Ill. 2009) (quoting *Davis v. FEC*, 128 S.Ct. 2759, 2768–69 (2008)) (emphasis in original). Standing exists when the claimant requesting cancellation has "shown that it was subject to an imminent threat of harm" from the trademark owner at the time that the cancellation claim was filed. *Amerimax*, 600 F. Supp. 2d at 1009. Here, at the time that Action Care filed its cancellation counterclaim, MFB was actively suing Action Care for infringement of the "PROOV" trademark. The threat of harm does not get more imminent than that. Action Care has standing to seek cancellation of MFB's "PROOV" trademark, and this Court has the authority to cancel the "PROOV" trademark. *See* 15 U.S.C. § 1119.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court deny MFB's motion to dismiss. If the Court determines that Action Care has insufficiently pleaded any of the Counterclaims, Action Care requests at least one opportunity to amend the Counterclaims.

Dated: February 26, 2024

Respectfully submitted,

ACTION CARE MOBILE VETERINARY CLINIC, LLC

By: /s/ Ilya G. Zlatkin
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Email: ilya@zce.law

*Attorney for Defendant Action Care Mobile Veterinary Clinic, LLC*