THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MFB Fertility, Inc.,<br><br>       Plaintiff,<br><br>    v.<br><br>Action Care Mobile Veterinary Clinic, LLC,<br><br>       Defendant. | Case No. 1:23-cv-03854<br><br>Dist. Judge Harry D. Leinenweber<br><br>Mag. Judge Gabriel A. Fuentes |

## MOTION FOR RECONSIDERATION OF DISMISSAL OF TRADEMARK CANCELLATION COUNTERCLAIM

Defendant/Counter-plaintiff Action Care Mobile Veterinary Clinic, LLC ("Action Care"), by its counsel, respectfully submits this motion for reconsideration of the Court's dismissal of Action Care's trademark cancellation counterclaim against Plaintiff/Counter-defendant MFB Fertility Inc. ("MFB"). The Court's reasoning for the dismissal of the counterclaim is set forth in the Court's memorandum opinion and order issued on April 22, 2024 ("Opinion") [Dkt. 35].

### RELEVANT PROCEDURAL BACKGROUND

MFB filed its original complaint on June 20, 2023 [Dkt. 6], asserting claims of copyright infringement and trademark infringement against Action Care. On September 15, 2023, Action Care filed a partial motion to dismiss [Dkt. 10], seeking dismissal of MFB's copyright infringement claim. Action Care then proceeded to file an answer, affirmative defenses, and counterclaims on September 22, 2023 [Dkt. 15]. Action Care's counterclaims included counts for misrepresentation under Section 512(f) of the Digital Millennium Copyright Act ("DMCA"), tortious interference with prospective economic advantage, defamation *per se*, defamation *per quod*, and cancellation of MFB's "PROOV" trademark (U.S. Registration No. 5,622,245).

On November 27, 2023, MFB filed a motion seeking leave to amend its original complaint [Dkt. 22]. MFB's proposed amended complaint ("PAC") [Dkt. 22-1] sought to substitute a

different copyrighted work as the basis of MFB's copyright infringement claim. While the motion for leave to file the PAC was pending, MFB also proceeded to file a motion seeking dismissal of all of Action Care's counterclaims [Dkt. 31]. On April 22, 2024, the Court proceeded to grant Action Care's motion to dismiss MFB's copyright infringement claim and granted MFB's motion to dismiss Action Care's trademark cancellation counterclaim (*i.e.*, denied MFB's motion to dismiss the other four counterclaims). The Court denied MFB's motion for leave to file the PAC as being moot, having based its findings on the copyrighted work that had been proposed to be substituted in the PAC. (*See* Dkt. 34, Dkt. 35.) As a result, the parties' surviving claims now consist of MFB's assertions that Action Care infringed upon MFB's "PROOV" trademark through use of Action Care's "OVUPROOF" trademark, and of Action Care's counterclaims of misrepresentation under the DMCA, tortious interference with prospective economic advantage, defamation *per se*, and defamation *per quod*.

## LEGAL STANDARD FOR MOTIONS TO RECONSIDER

Rule 54(b) governs motions for reconsideration before a final judgment has been entered in a case. *Dahlstrom v. Sun-Times Media, LLC*, 346 F. Supp. 3d 1162, 1167 (N.D. Ill. 2018) (LEINENWEBER, J.). Under Rule 54(b), "any order . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment." FED. R. CIV. P. 54(b); *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012). Courts may grant motions for reconsideration "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). "[M]anifest error is not demonstrated by the disappointment of the losing party," but rather by the "misapplication or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation and

2

citation omitted). The rule allows the court to correct its own errors and avoid unnecessary appellate procedures. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012).

## ARGUMENT

**I. Likelihood of Confusion Is Not a Prerequisite for Seeking Trademark Cancellation Under the Lanham Act.**

As a procedure for cancelling a federal trademark registration, the Lanham Act provides that "[a] petition to cancel a registration of a mark, <u>stating the grounds relied upon</u>, may . . . be filed . . . by **any** person who believes that he **is or will be** damaged . . . by the registration of a mark on the principal register established by this chapter . . ." 15 U.S.C. § 1064 (emphases added). The statute then proceeds to provide different circumstances that would apply based on how long the mark has been registered. For marks that have been registered more than five years, a limited set of circumstances exists for which cancellation can be sought. *See* 15 U.S.C. § 1064(3). Notably, a mark may be cancelled "[a]t any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered . . ." *Id*. Meanwhile, for marks that have been registered for less than five years, the statute does not provide any list of preconditions. *See* 15 U.S.C. § 1064(1). Section 1064 does not mention "confusion" at all.

As the Court acknowledged in the Opinion, for marks such as MFB's that have been registered for under five years, "**any** grounds may be stated for cancellation, **including** traditional arguments **such as** likelihood of confusion, false identification, **or** <u>that the mark is merely descriptive</u>." (Opinion at 22 (citing *Eagle Forum v. Phyllis Schlafly's Am. Eagles*, 2017 WL 4785792 (S.D. Ill. Oct. 20, 2017)) (emphases added).) "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). The term "or" is disjunctive. *United States v. Hughes*, 585 F.2d 284, 287 (7th Cir. 1978). At the same time, "the terms

3

'including' and 'such as' . . . indicate the 'illustrative and not limitative' function of the examples given." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Meanwhile, "the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997). Thus, likelihood of confusion (same as mere descriptiveness) is just one listed circumstance of a nonexclusive list of circumstances that may serve as potential grounds for cancellation of a mark that has been registered for under five years.

Separately, Section 1052 addresses registrability of marks on the principal register specifically.[1] 15 U.S.C. § 1052. Trademarks may be refused registration on the principal register if the applicable mark, "when used on or in connection with the goods of the applicant[,] is merely descriptive." 15 U.S.C. § 1052(e)(1). Notably, while subsection 1052(e) does not mention confusion, subsection 1052(d) focuses entirely on confusion, permitting a denial of registration on the principal register if a mark is "likely, when used on or in connection with the goods of the applicant, to cause confusion." *Compare* 15 U.S.C. § 1052(d), *with* 15 U.S.C. § 1052(e). This suggests that, in addition to viewing mere descriptiveness as a condition separate from likelihood of confusion for denial of a registration, Congress would have referenced "confusion" as a specific basis for cancellation if it deemed likelihood of confusion as a requirement for cancellation under Section 1064.

Furthermore, claims for trademark infringement (such as MFB's) require showing (1) that the plaintiff's mark is valid, and (2) that the defendant's use of a mark creates a likelihood of consumer confusion. *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 (7th Cir. 2019). Therefore, even in instances in which consumer confusion exists, without a valid trademark, a

---

[1] MFB's PROOV trademark is registered on the USPTO's Principal Register, of which the Court can take judicial notice, and which is also explicitly stated on the trademark registration certificate filed by MFB in support of its trademark infringement claim.

plaintiff would not be able to sustain a claim for infringement. *See id*. Cancellation of a registration relates to the validity (or, more accurately, the invalidity) of the trademark. *Id*. "Validity of a mark is a question <u>totally distinct</u> from the issue of likelihood of customer confusion." *Singh v. V. Patel Sons, Inc.*, 851 F. Supp. 318, 320 (N.D. Ill. 1994) (emphasis added). Because of this separation between the two elements of infringement, likelihood of confusion cannot serve as a prerequisite for an attack on the validity of the trademark.

Consequently, a party's proclamation that there is no likelihood of confusion relates to the absence of trademark infringement. It does not mean that the party has not otherwise been damaged or that the party will not be harmed in the future by the continued maintenance of a registration on the principal register. While a petitioner for cancellation must have a "real interest" (as discussed below), likelihood of confusion is not required for standing.

## II. Competitors Have the Necessary "Real Interest" in the Outcome of a Cancellation Proceeding to Establish Standing, Especially When a Trademark Is Challenged as Being Generic or Descriptive.

As established above, a petitioner seeking cancellation must have a belief "that he is or will be damaged" by the registration of a mark. *DRL Enters., Inc. v. N. Atl. Operating Co.*, 301 F. Supp. 3d 824 (N.D. Ill. 2018) (quoting 15 U.S.C. § 1064). In *DRL Enterprises*, then-Chief Judge Castillo explained:

> These statutory provisions have been interpreted to require a "real interest" in the outcome of the proceeding and a "reasonable basis" in fact for the opposer's or petitioner's belief that it is or will be damaged by the challenged registration. The opposer or petitioner bears the burden of pleading and ultimately proving standing. The purpose of standing is to prevent litigation where there is no real controversy between the parties, that is, where a petitioner or opposer is "no more than an intermeddler." Put differently, it is intended to preclude meddlesome parties from instituting proceedings as self-appointed guardians of the purity of the [trademark] Register.
>
> Standing is considered a low threshold, intended only to ensure that the plaintiff has a real interest in the matter, and is relatively easy to meet in the vast majority

> of cases. The opposer or petitioner need only be something more than a gratuitous interloper or a vicarious avenger of someone else's rights. Since "mere intermeddlers" only rarely bring [trademark] challenges, few proceedings are ever dismissed for lack of standing and a challenge to standing is usually just a futile procedural gesture.

301 F. Supp. at 834 (internal citations and quotation marks omitted) (brackets in original).

This "low threshold" for standing is even more lenient "[w]hen a mark is challenged as generic or descriptive." *Id*. at 835. "For example, when a mark could be used to describe a competitor's own product, the competitor has standing whether or not it has actually used the mark descriptively with its own products." *Id*. (collecting cases). Furthermore, the fact that litigants are competitors "would ordinarily be sufficient evidence, 'in and of itself,' to establish that Defendants have standing." *Id*. at 836. In this case, it is undisputed that MFB and Action Care are competitors. (*See* Opinion at 2 (referring to Action Care as "Competitor and Defendant").)

**III.    Courts in the Seventh Circuit Have Previously Cancelled Trademarks Based on the Trademarks' Generic or Merely Descriptive Nature, Including When the Generic/Descriptive Terms Were Misspelled.**

"A generic or common descriptive term can never function as a trademark." *Liquid Controls, Corp. v. Liquid Control Corp.*, 802 F.2d 934, 935 (7th Cir. 1986). Merely descriptive terms may operate as trademarks only if they have acquired secondary meaning. *Id*. Generic terms are ones that are "commonly used as the name of a kind of goods," specifying "the genus of which the particular product is a species." *Id*. at 936. In turn, "[m]erely descriptive terms are generally not protectible as trademarks both because they are poor means of distinguishing one source of services from another and because they are often necessary to the description of all goods or services of a similar nature." *Id*. (internal quotation marks omitted).

Even though a federal trademark registration gives the registrant the benefit of certain presumptions as to distinctiveness of the trademark, this presumption can be overcome through a

6

review of dictionary definitions and contextual usages of a term, resulting in cancellation. *See, e.g.*, *id*. (cancelling "LIQUID CONTROLS" due to a determination of genericness); *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409 (7th Cir. 2019) (affirming cancellation of "CAPSULE" trademark for cell phone cases as being merely descriptive, even when there was no likelihood of confusion). This is true <u>even when a registrant attempted to differentiate the mark from a generic or descriptive term by misspelling it</u>. *See, e.g.*, *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979) (affirming district court's cancellation of the trademark "LITE" for beer, because "a generic term cannot be appropriated through the device of misspelling it"), *cert. denied*, 444 U.S. 1102 (1980); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977) ("A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances. <u>Using the phonetic equivalent of a common descriptive word, i.e., misspelling it, is of no avail</u>.") (emphasis added and internal citations omitted). Phonetic equivalents of generic or descriptive terms are treated in the same manner as properly spelled generic or descriptive terms. *American Aloe Corp. v. Aloe Creme Laboratories, Inc.*, 420 F.2d 1248, 1253 (7th Cir. 1970) ("By using the phonetic equivalent of the generic name as the sole common and distinguishing mark of its products, [owner of "ALO-" family of marks] invited confusion."); *see also*, TMEP § 1209.03(j) (2023) ("A slight misspelling of a word will not turn a descriptive or generic word into a non-descriptive mark.") (citing cases).

IV. **The Seventh Circuit Has Encouraged District Courts to Cancel Trademarks That Do Not Meet All the Criteria of Validity.**

As discussed above, Section 1064 gives standing to any party that believes it is or will be damaged by the continued registration of a mark, and competitors in particular have a real interest in ensuring that generic and descriptive terms are not monopolized. Meanwhile, in terms of the

7

authority of federal district courts to cancel a trademark as part of litigation otherwise involving a registered trademark, the Seventh Circuit has determined that:

> [15 U.S.C. § 1119] arms courts with the power to effectively put the public on notice of its trademark-related judgments. Because a court's decision may raise doubts about the validity of a trademark registration, § 1119 arms the court with the power to update the federal trademark register to account for a mark's actual legal status (or lack thereof) after it has been adjudicated, thereby reducing the potential for future uncertainty over the rights in a particular mark. Where, as here, a registrant's asserted rights to a mark are shown to be invalid, <u>cancellation is not merely appropriate, it is the best course</u>.

*Central Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007) (emphasis added). Therefore, courts that find registered trademarks to be insufficiently distinctive <u>should</u> in fact cancel the registrations for such marks.

### V. Action Care's Counterclaim for Trademark Cancellation Included Sufficient Allegations That MFB's "PROOV" Trademark Is Phonetically Equivalent to a Generic or Descriptive Term for the Parties' Goods.

As grounds for its trademark cancellation counterclaim, Action Care explicitly alleged that the "PROOV" trademark was generic or, alternatively, merely descriptive, with respect to the parties' products. (Countercl. ¶ 58–61.) The parties' products are ovulation tests or ovulation test strips, including as described by MFB itself. (Countercl. ¶ 56.) Action Care provided dictionary definitions to convey that the words "PROOF" and "PROVE" were synonyms of the word "TEST." (Countercl. ¶ 57.) Action Care also provided the specimen that MFB had submitted when registering its trademark, showing that MFB itself was using the misspelling "PROOV" in a phonetically equivalent manner to the word "PROVE." (Countercl. ¶ 55 ("Stop guessing if you've ovulated. Proov$^{TM}$ it!").)

When MFB filed its motion to dismiss Action Care's counterclaims, MFB alleged that Action Care lacked standing to seek cancellation. In response, Action Care cited to relevant requirements of Section 1064. Action Care also emphasized that MFB's cited circumstances

(which included likelihood of confusion and rejection of a petitioner's application during prosecution) "are not the sole bases for standing." (*See* Dkt. 32 at 14–15.) Thus, it cannot be said that Action Care somehow waived any argument. In all relevant pleadings, Action Care sufficiently addressed the lack of distinctiveness of MFB's "PROOV" mark relative to the parties' goods as a basis for cancellation.

    **VI.    The Court Committed Manifest Error by (1) Treating Likelihood of Confusion as a Prerequisite for Standing to Petition for Cancellation of a Trademark Registration, and (2) Failing to Consider Action Care's Allegations Relating to the Generic or, Alternatively, Descriptive Nature of MFB's "PROOV" Trademark.**

As established above, likelihood of confusion is not a prerequisite for cancellation of a federal trademark registration. Instead, it is just one of multiple legitimate bases for a party to petition for cancellation. Other appropriate grounds for cancellation exist. The Court even acknowledged as much by mentioning that merely descriptive marks registered less than five years prior are subject to cancellation. (Opinion at 22 (citing 15 U.S.C. § 1064(1); *Eagle Forum v. Phyllis Schlafly's Am. Eagles*, 2017 WL 4785792 (S.D. Ill. Oct. 20, 2017)).) Despite noting mere descriptiveness as one of multiple circumstances that may warrant cancellation, the Court did not actually analyze whether Action Care had sufficiently pleaded mere descriptiveness. The Court also did not review at all whether Action Care had sufficiently pleaded the genericness of MFB's trademark. Instead, the Court focused solely on whether Action Care had sufficiently pleaded the existence of a likelihood of confusion, which Action Care explicitly denies (as a defense to MFB's trademark infringement claim). The Court deemed this rejection of likelihood of confusion as fatal to Action Care's cancellation counterclaim, because purportedly a party could not be harmed if there was no likelihood of confusion. (*See* Opinion at 22.) In effect, the Court treated likelihood of confusion as a required element for seeking cancellation, rather than just one potential avenue toward doing so. This was manifest error.

Action Care is a competitor of MFB, and it has a real interest in ensuring that generic and descriptive terms in the parties' industry are not monopolized through trademark registration. This gives Action Care standing to pursue its cancellation counterclaim. If the Court had properly analyzed the allegations contained in Action Care's trademark cancellation counterclaim as to genericness and mere descriptiveness of the "PROOV" trademark, the Court would have concluded that Action Care had standing and had sufficiently pleaded its counterclaim.

## CONCLUSION

The Court's manifest error in failing to consider Action Care's allegations that MFB's "PROOV" trademark is generic or, alternatively, merely descriptive, directly contradicts the Lanham Act, Seventh Circuit precedent, and even the case law cited by the Court in the Opinion. The Court should have denied MFB's motion to dismiss in its entirety.

WHEREFORE, Action Care requests that the Court reconsider its April 22, 2024, Opinion solely as to the trademark cancellation counterclaim, and issue an order permitting Action Care to continue its petition for cancellation of MFB's "PROOV" trademark.

Dated: May 1, 2024

Respectfully submitted,

ACTION CARE MOBILE VETERINARY CLINIC, LLC

By: /s/ Ilya G. Zlatkin
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Email: ilya@zce.law

*Attorney for Defendant Action Care Mobile Veterinary Clinic, LLC*