THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MFB Fertility, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Action Care Mobile Veterinary Clinic, LLC, <br><br> Defendant. | Case No. 1:23-cv-03854 <br><br> Dist. Judge Harry D. Leinenweber <br><br> Mag. Judge Gabriel A. Fuentes |

**ACTION CARE'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF DISMISSAL OF TRADEMARK CANCELLATION COUNTERCLAIM**

Defendant/Counter-plaintiff Action Care Mobile Veterinary Clinic, LLC ("Action Care"), by its counsel, respectfully submits this reply in support of its motion for reconsideration of the Court's dismissal of Action Care's trademark cancellation counterclaim ("Motion for Reconsideration") [Dkt. 39]. Plaintiff/Counter-defendant MFB Fertility Inc. ("MFB") filed a response brief opposing the Motion for Reconsideration on May 29, 2024 ("MFB Resp.") [Dkt. 43]. The Court's analysis resulting in the dismissal of the counterclaim is set forth on page 22 of the memorandum opinion and order issued on April 22, 2024 ("Opinion") [Dkt. 35].

**INTRODUCTION**

Action Care is well aware that motions for reconsideration are generally disfavored and have a high standard. The last thing that Action Care wants to do is waste the Court's time. In fact, Action Care did not move for dismissal of MFB's trademark infringement claim at the 12(b)(6) stage for that very reason. (*See* Dkt. 11 at 1 n.1 (acknowledging that "MFB's success in obtaining a federal trademark registration creates certain presumptions that Action Care is unlikely to overcome at the motion-to-dismiss stage.").)

At the same time, motions for reconsideration give district courts "the opportunity to correct their own alleged errors, and allowing them to do so prevents unnecessary burdens being

placed on the courts of appeals." *United States v. Ibarra*, 502 U.S. 1, 5 (1991) (*per curiam*). Action Care believes it is imperative for the Court to take a second look at its analysis of the trademark cancellation counterclaim. Action Care is confident that when the Court reviews the two paragraphs the Court devoted to the trademark cancellation counterclaim, the manifest errors contained in the Opinion will be easy to spot.

Contrary to MFB's assertions, Action Care does not present any untimely new theories or evidence in the Motion for Reconsideration. Though Action Care provides additional authority for the Court's consideration, such authority is all in line with the properly developed arguments advanced by Action Care throughout this case, including in response to MFB's motion to dismiss. The Court can and should consider the additional cited authority. *See Covenant Media of Ill. v. City of Des Plaines*, 496 F. Supp. 2d 959, 961 n.1 (N.D. Ill. 2007) ("While the City's discussion does indeed go beyond that presented in its motion for summary judgment, it does not add any new facts, evidence or legal theories; rather, it merely fleshes out the argument made in support of its motion for summary judgment . . . As such, it is properly considered at this time."). Meanwhile, MFB's attempt to have the Court draw negative inferences from Action Care's successful registration of the OVUPROOF trademark showcases MFB's misuse of trademark law.

## ARGUMENT

### I. By Analyzing Solely Likelihood of Confusion to the Exclusion of Other Potential Grounds for Cancellation, the Court Misapplied Its Own Cited Law.

MFB accuses Action Care of "build[ing] a straw man" with respect to the non-dispositive nature of likelihood of confusion. (MFB Resp. at 4.) Under MFB's framing, "[i]t is [Action Care's] brief, not the Court's analysis, which focused solely upon the issue of likelihood of confusion." (*Id*.) Considering that MFB reproduced the entirety of Action Care's prior argument about standing for trademark cancellation, MFB's objection is bizarre. (*See id*. at 2–3.) Action Care had clearly

asserted in its response brief to MFB's motion to dismiss that "MFB's cited circumstances [including likelihood of confusion] are not the sole bases for standing." (*See id*. at 3 (citing Dkt. 32 at 14–15).) Action Care also explicitly argued that the generic nature of a mark always serves as grounds for cancellation. (*See id*. at 2.)

Action Care based its Motion for Reconsideration on the Court's apparent treatment of likelihood of confusion as a necessity for seeking cancellation. The case law cited by the Court in the first paragraph of the Opinion indeed provided multiple grounds for standing. Despite this authority, the Court ruled in the second paragraph that "Action Care's assertion of no likelihood of confusion therefore contradicts its pleading that the registration of the PROOV trademark 'is causing irreparable harm to Action Care.'" (*See* Opinion at 22.) Harm, either existing or potential, is the true prerequisite for cancellation standing. *See* 15 U.S.C. § 1064; *DRL Enters., Inc. v. N. Atl. Operating Co.*, 301 F. Supp. 3d 824, 834 (N.D. Ill. 2018) (CASTILLO, C.J.); *Amerimax Real Estate Partners, Inc. v. RE/MAX International, Inc.*, 600 F. Supp. 2d 1003, 1009 (N.D. Ill. 2009). The Court effectively determined that without a likelihood of confusion, no potential of harm could exist. This position is the root of the manifest error at issue.

Action Care therefore proceeded to provide Seventh Circuit authority to support that a trademark can be cancelled even when there is no likelihood of confusion. *See, e.g.*, *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 422–23, 427 (7th Cir. 2019) (affirming cancellation of "CAPSULE" trademark for cell phone cases due to mere descriptiveness, even when there was no likelihood of confusion). Action Care also presented the differences between the statutory language in 15 U.S.C. § 1052 and 15 U.S.C. § 1064. (Dkt. 39 at 4-5); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of

3

a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (brackets in original).[1]

Regardless of any additional citations provided by Action Care in its Motion for Reconsideration, the Court needs only to look at its own analysis in the Opinion to determine that it misapplied the law to the trademark cancellation counterclaim. (*See* Opinion at 22.) The Court provided a <u>nonexclusive, illustrative</u> list of circumstances that could serve as grounds for seeking cancellation. (*See* Dkt. 39 at 3–4 (*citing* Opinion at 22).) The Court then proceeded to review solely the first item on that list (*i.e.*, likelihood of confusion).[2] Having determined that the first enumerated circumstance had been expressly denied by Action Care, the Court stopped the inquiry entirely – probably due to a misapprehension of the itemized list as being a set of requirements for standing. The Court did not proceed to examine the other listed examples (let alone unlisted grounds such as genericness). That is a misapplication of the law and canons of construction, which Action Care addressed in the Motion for Reconsideration. (Dkt. 39 at 3–4.)

Had the Court worked its way down the cited nonexclusive list, it would have had to analyze whether Action Care had asserted descriptiveness as grounds for cancellation. A cursory review of the trademark cancellation counterclaim shows that Action Care pleaded that MFB's PROOV trademark was descriptive (if not generic), as supported by dictionary definitions.[3]

---

[1] While Action Care did not cite Section 1052 in its response to MFB's motion to dismiss, Action Care did cite Section 1064. (*See* Dkt. 32 at 14.) More importantly, the Counterclaims expressly address both Section 1064 and Section 1052. (*See* Dkt. 15 at 21–22, ¶¶ 59–61.)

[2] Action Care's "allegation" of there being no likelihood of confusion was Action Care's nineteenth affirmative defense, not paragraph 19 of the Counterclaims. (*See* Dkt. 15 at 12, 15.) Regardless, as a defense to MFB's trademark infringement claim, Action Care certainly continues to maintain that there is no likelihood of confusion between the PROOV and OVUPROOF marks. The Court is welcome to take judicial notice of Action Care's position.

[3] Even at the pre-discovery stage, the Court can take judicial notice of dictionary definitions. *See Boden Prod., Inc. v. Doric Foods Corp.*, 552 F. Supp. 493, 496 (N.D. Ill. 1982) ("it is appropriate to take judicial notice of the meaning of words"); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th

(Dkt. 39 at 8 (*citing* Countercl. ¶¶ 55–61).) The Court's failure to review Action Care's allegations of descriptiveness is a clear misapplication of the law expressly cited in the Opinion.

### II. Action Care Timely and Properly Developed Its Arguments That Cancellation Was Appropriate Due to the Generic or Descriptive Nature of MFB's Trademark.

MFB alleges that Action Care introduces new arguments regarding genericness and mere descriptiveness in the Motion for Reconsideration. (MFB Resp. at 5–6.) That is absolutely false. Action Care first brought up genericness and descriptiveness as potential grounds for cancellation even before filing the Counterclaims, when Action Care filed its motion to dismiss. (*See* Dkt. 11 at 1 n.1 (maintaining that MFB's trademark infringement claim is subject to dismissal "because Plaintiff's trademark registration of the standard character mark 'PROOV' should be cancelled, as it is a misspelling of the words 'PROOF' or 'PROVE' – generic or descriptive terms with respect to the parties' products: fertility tests.").) Action Care then addressed genericness and descriptiveness explicitly in the Counterclaims, as well as in Action Care's affirmative defenses.[4] (*See* Dkt. 15 at 12, 20–22).

When MFB filed its motion to dismiss Action Care's Counterclaims, MFB's sole argument for dismissal of the trademark cancellation counterclaim related to standing. (*See* Dkt. 31-1 at 14.) As a result, Action Care focused on responding regarding standing. True, it would have been really

---

Cir. 1997) ("A court may take judicial notice of an adjudicative fact that is both not subject to reasonable dispute and either 1) generally known within the territorial jurisdiction of the trial court or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 782 (S.D. Ohio 2009) (holding that the court could take judicial notice of dictionary definitions without converting a motion to dismiss into a motion for summary judgment because "a dictionary is one of those sources whose accuracy cannot reasonably be questioned . . .").

[4] As discussed in footnote 2 above, the Court seemingly took judicial notice of Action Care's affirmative defense rejecting likelihood of confusion. While Action Care does not have any issue with the Court's doing so, the Court should also then take judicial notice of Action Care's seventeenth and eighteenth affirmative defenses, which address genericness and descriptiveness, respectively. (*See* Dkt. 15 at 12.) These allegations are, of course, also repeated in the Counterclaims themselves. (*See id*. at 21–22, ¶¶ 58–61.)

helpful if, in response to MFB's motion to dismiss, Action Care had provided the citation to the *DRL Enterprises* decision, as that opinion seemingly would have definitively disposed of MFB's standing-related arguments. (*See* Dkt. 39 at 5–6.) But just because Action Care did not cite *DRL Enterprises* in its response does not mean that Action Care did not advance the propositions contained in *DRL Enterprises*. It also certainly does not mean that the Court is prohibited from considering additional citations. *See Covenant Media of Ill.*, 496 F. Supp. 2d at 961 n.1.

Action Care still pressed the same points as those contained in *DRL Enterprises*. While *DRL Enterprises* used the phrase "real interest," Action Care had argued that "a petitioner for cancellation must have a legitimate interest." (Dkt. 32 at 15 (emphasis added).) Action Care also cited to the Lanham Act's explicit mention of genericness as grounds for cancellation at any time. (*Id*. at 14 (citing 15 U.S.C. § 1064(3)).) Action Care then argued that Action Care only needed to have a "requisite stake in the outcome" to have standing – a requirement satisfied by virtue of MFB's use of the PROOV registration to sue Action Care, thereby harming Action Care. (*See* Dkt. 32 at 15 (citing *Amerimax*, 600 F. Supp. 2d at 1009).) This aligns perfectly with Chief Judge Castillo's determination that "petitioner need only be something more than a gratuitous interloper or a vicarious avenger of someone else's rights." *DRL Enters.*, 301 F. Supp. 3d at 834 (internal quotation marks omitted). Considering that MFB used the PROOV registration to sue Action Care (not some third party), Action Care certainly cannot be labeled a "mere intermeddler" in seeking cancellation. *See id*. While the Court did not have any obligation to perform research for Action Care's benefit, Action Care still properly developed all of the relevant points, citing sufficient authority, and therefore did not waive any arguments. (*See* Dkt. 32 at 15.)

The Court should not ignore persuasive authority at this stage, especially considering the manifest errors in the Court's Opinion with respect to the trademark cancellation counterclaim.

6

(*See* discussion *supra* Part I.) Action Care did not file the Motion for Reconsideration just because it has now found new cases to cite. Rather, the Motion for Reconsideration is based on the Court's misapplication of the law in failing to consider Action Care's well-pleaded allegations regarding the generic or descriptive nature of MFB's PROOV trademark. Any additional authority cited by Action Care is provided solely for the Court's convenience.

### III. MFB Misstates the Legal Implications of Action Care's Recently Obtained OVUPROOF Registration.

MFB argues that Action Care pleaded itself out of the cancellation counterclaim by treating the OVUPROOF trademark (which obviously contains the word "PROOF") as distinctive enough to serve as a source identifier. (MFB Resp. at 5–6.) According to MFB, if Action Care or the USPTO viewed the word "PROOF" as generic or descriptive, then a disclaimer of the word would have been required. (*Id*.) To the extent that it is even remotely relevant to discuss the OVUPROOF registration at this stage, MFB's description of the steps Action Care or the USPTO purportedly should have taken contradicts the USPTO's Trademark Manual of Examining Procedure (TMEP).[5]

OVUPROOF is a compound word mark. *See* TMEP § 1213.05(a) (May 2024) ("A compound word mark is comprised of two or more distinct words <u>(or words and syllables) that are represented as one word</u>.") (emphasis added). "If a compound word mark consists of an unregistrable component and a registrable component combined into a single word, <u>no disclaimer</u> of the unregistrable component of the compound word will be required." *Id*. (emphasis added). Compound word marks are a type of "unitary marks." *See* TMEP § 1213.05 (May 2024). "The examining attorney should exercise discretion in determining whether a mark or portion of a mark is unitary, in which case a disclaimer of a nondistinctive component **must not** be required." *Id*.

---

[5] As of the filing date of this brief, the latest official version of the TMEP (published in May 2024) may be accessed at the following link: https://tmep.uspto.gov/. Archived versions of the TMEP may be accessed at the following link: https://www.uspto.gov/trademarks/guides-and-manuals/tmep-archives.

(emphasis added). Thus, upon determining that OVUPROOF was a unitary mark that contained the nondistinctive word "PROOF," the USPTO attorney examining Action Care's OVUPROOF application had the <u>obligation **not** to require disclaimer</u> of the word "PROOF." In fact, if Action Care had disclaimed "PROOF" from its application, the examiner would have been obligated to provide Action Care an opportunity to remove the disclaimer. *See* TMEP § 1213.01(c) (May 2024) ("An applicant may volunteer a disclaimer in the mistaken belief that a disclaimer would be required when, in fact, USPTO policy would not require a disclaimer. If this appears to be the case, the examining attorney must offer the applicant the opportunity to withdraw the disclaimer.").

Nothing about the registration of OVUPROOF serves to grant Action Care – same as with MFB and its PROOV mark – any sort of exclusive rights to use the word "PROOF" in conjunction with fertility tests. As a compound word mark, OVUPROOF is sufficiently distinctive to be protectable. There is no such thing as an "ovuproof" – certainly not in the dictionary. A person cannot "ovuproof" that she is ovulating. MFB's products are not an "ovuproof." The inability to use a mark as a word that identifies a competitor's goods makes the mark sufficiently distinctive, even when the mark contains otherwise nondistinctive elements. *See USPTO v. Booking.com B.V.*, 140 S. Ct. 2298, 2304–05 (2020) ("[I]f 'Booking.com' were generic, we might expect consumers to understand Travelocity – another such service – to be a 'Booking.com.'").

In contrast, MFB's PROOV mark has no components beyond the phonetic equivalent of a generic or descriptive term. Ovulation tests, including Action Care's products, are a type of "proof" and serve to "prove" whether someone is ovulating. Neither MFB nor Action Care can monopolize the words "proof," "prove," or any phonetic equivalents in association with ovulation tests. If MFB's PROOV registration is cancelled, MFB will still be able to sell PROOV-brand fertility tests. The cancellation will just preclude MFB from weaponizing a registration to harass

competitors who simply use the English language to describe their products. This by itself gives Action Care (and any other competitor of MFB) standing to seek cancellation of MFB's registration. *See DRL Enters.*, 301 F. Supp. 3d at 835 ("when a mark could be used to describe a competitor's own product, the competitor has standing <u>whether or not it has actually used the mark descriptively with its own products</u>.") (emphasis added).

Given that MFB deems it appropriate to introduce Action Care's recently issued OVUPROOF registration, it is worth noting that the issuance of the OVUPROOF registration on May 7, 2024, further reinforces the meritless nature of MFB's trademark infringement claim. The OVUPROOF application had been pending for the duration of this litigation, having been submitted on December 3, 2022 – over six months prior to MFB's initiation of this suit.[6] As a threshold matter, the USPTO did not identify MFB's PROOV registration or any other marks as being confusingly similar to OVUPROOF. *See* Trademark Application Serial No. 97702874, Office Action (Non-Final), at *2 (USPTO, Sept. 21, 2023) ("The trademark examining attorney searched the USPTO database of registered and pending marks and found no conflicting marks that would bar registration under [15 U.S.C. § 1052(d)]."). The OVUPROOF application was then published for opposition on December 12, 2023. This opened a thirty-day window during which any third party that believed it may be harmed by the registration of OVUPROOF could file an opposition (or an extension of time to do so), thereby delaying and potentially preventing the registration. *See* 15 U.S.C. § 1063(a). Neither MFB nor anyone else opposed the registration. MFB's failure to oppose the registration during the appropriate timeframe now accords Action Care's OVUPROOF mark the presumption of validity and other benefits that accompany a

---

[6] The prosecution history of Action Care's application to register the OVUPROOF trademark can be accessed using the USPTO's Trademark Status and Document Retrieval service at the following URL: https://tsdr.uspto.gov/#caseNumber=97702874&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch.

registration on the principal register. *See Booking.com*, 140 S. Ct. at 2302–03. Action Care expects to incorporate the prosecution history of OVUPROOF into Action Care's arguments at the summary judgment stage.

## **CONCLUSION**

Action Care appreciates the Court's time in reviewing the Opinion relating to the trademark cancellation counterclaim. This will result in the correction of manifest error. If the Court accurately applies its own cited authorities, it will see that Action Care has standing to pursue cancellation. Any additional citations provided by Action Care in its Motion for Reconsideration serve to facilitate the Court's task but are not essential for the grant of the Motion for Reconsideration. Action Care has standing to seek cancellation of the PROOV trademark, and the cancellation counterclaim should be reinstated.

Dated: June 2, 2024

Respectfully submitted,

ACTION CARE MOBILE VETERINARY CLINIC, LLC

By: /s/ Ilya G. Zlatkin
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Email: ilya@zce.law

*Attorney for Defendant Action Care Mobile Veterinary Clinic, LLC*