**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MFB FERTILITY INC., | |
| Plaintiff, | Case No. 1:23-cv-03854 |
| v. | Judge John J. Tharp, Jr.<br>Magistrate-Judge Gabriel A. Fuentes |
| ACTION CARE MOBILE VETERINARY CLINIC, LLC, | |
| Defendant. | |

**PLAINTIFF/COUNTER-DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
TO DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIMS**

Plaintiff/Counter-Defendant, MFB Fertility Inc. ("MFB") by and through its undersigned counsel, respectfully submits its Answer and Affirmative Defenses to Defendant/Counter-Plaintiff Action Care Mobile Veterinary Clinic, LLC's ("Action Care") Counterclaims as follows:

**ANSWER TO ACTION CARE'S COUNTERCLAIMS**

1. Capitalized terms used in these counterclaims ("Counterclaims") have the same definition set forth in Plaintiff's Complaint unless otherwise indicated.

**ANSWER:**

It is unclear as to what exact definition Action Care attributes to the "[c]apitalized terms" and what is meant by "[c]apitalized terms used in these counterclaims ("Counterclaims") have the same definition set forth in Plaintiff's Complaint unless otherwise indicated"; this allegation is therefore denied.

2. As set forth below, these Counterclaims are stated against MFB, who is the Plaintiff/Counter-Defendant in this case.

**ANSWER:**

Admitted that MFB is the Plaintiff/Counter-Defendant in this case; otherwise denied.

3.     The Counterclaims arise out of the same occurrences regarding digital properties and the sale of the parties' products through Amazon's marketplace, as alleged in the Complaint. Therefore, this Court has jurisdiction over the Counterclaims pursuant to 28 U.S.C. § 1367(a) and Fed. R. Civ. P. 13(a).

**ANSWER:**

Denied.

4.     In November 2022, Action Care's manager Diane Krasznay ("Krasznay") contacted Shanghai Eugene Biotech Co., Ltd. ("SEB"), a manufacturer based in China, to learn more about the Pregnanediol Glucuronide (PdG) -based ovulation test strips that SEB had developed previously ("SEB Strips"). Specifically, upon information and belief, SEB had been manufacturing the SEB Strips since at least 2019 and had been selling the SEB Strips in Europe.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

5.     In doing her due diligence on the SEB Strips, Krasznay inquired with SEB how SEB made the SEB Strips. Being aware of the products offered for sale by MFB, Krasznay specifically inquired with SEB how the SEB Strips were different from the products offered by MFB.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

6.     In addition, while conducting her due diligence on the SEB Strips, Krasznay engaged a patent agent to conduct an analysis of whether the SEB Strips could in any way be construed to violate the patent associated with MFB's products. After a substantive analysis, the

patent agent engaged by Action Care concluded that the SEB Strips did not in any way violate any patent owned by MFB or MFB's representatives.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

7.      Having received confirmation that the SEB Strips did not violate any patents associated with MFB's products, Action Care entered into an agreement with SEB, permitting Action Care to white label and distribute SEB Strips in the United States.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

8.      Action Care proceeded to start preparing to distribute the SEB Strips using the "OVUPROOF" mark.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

9.      Action Care engaged a website developer to develop the buyovuproof.com website, including the drafting of original text for the website. The buyovuproof.com website was published around March 22, 2023.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

10.     Action Care also proceeded to set up a profile on Amazon.com and develop a listing page for the sale of Action Care's products ("Action Care Amazon Product Listing Page"). On or

around March 15, 2023, Action Care joined Amazon's Brand Registry and FBA program, and ordered Action Care's first shipment of SEB Strips from overseas. In late April to early May 2023, Action Care shipped its first products to Amazon. Participation in the Amazon VINE review program resulted in consumers receiving free product starting in early May 2023 and providing product reviews. This also served to build Action Care's feedback rating and organic search ranking, as well as good account health.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

11.     Action Care's first sale of Action Care's products occurred on or around May 7, 2023, via Amazon, after which additional sales occurred exponentially.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

12.     On or around June 2, 2023, MFB, through one of MFB's authorized representatives, submitted a takedown notice to Amazon under the Digital Millennium Copyright Act ("DMCA" and such takedown notice, "DMCA Takedown Notice"). This resulted in the automatic, immediate takedown/removal of the Action Care Amazon Product Listing Page.

**ANSWER:**

Admitted that MFB has submitted to Amazon a takedown notice under the Digital Millenium Copyright Act ("DMCA"); otherwise denied.

13.     In addition to including language mandated by the DMCA and by Amazon for submission of takedown notices under the DMCA, MFB's DMCA Takedown Notice included the following statements: "They found a cheap Chinese manufacturer to copy our tests then used all

of our wording on the product page and product inserts. Copyrighted content: They copied all of our FAQs and product description from this product page https://amazon.com/proov-pdgprogesterone-metabolite-fda-cleared/dp/b08b698tdw They also took wording from our FAQ on our website: https://proovtest.com/products/proov-test-strips including the 'who might have a problem with ovulation, comment FAQ, when to test, and what is successful ovulation. ASIN: B0BYKF95LN."

**ANSWER:**

Denied.

14.     On or around June 2, 2023, Action Care submitted a counternotice under the DMCA ("Action Care's Counternotice").

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

15.     Upon information and belief, on or around June 14, 2023, Jeffrey Schell ("Schell"), who is a licensed patent attorney and a managing director of MFB, submitted an application to register the Copyrighted Work with the U.S. Copyright Office.

**ANSWER:**

Action Care has failed to define the term "Copyrighted Work"; therefore, MFB denies the allegation.

16.     On or around June 20, 2023, MFB filed the Complaint and forwarded the Complaint to Amazon via email.

**ANSWER:**

Action Care has failed to define the term "the Complaint"; therefore, MFB denies the allegation.

17.     The deactivation of the Action Care Amazon Product Listing Page on or around

June 2, 2023, resulted in Action Care's inability to distribute Action Care's products through Amazon.

**ANSWER:**

Denied.

18.     Deactivation of the Action Care Amazon Product Listing Page further resulted in at least 174 units of Action Care's products being stranded or lost.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

19.     Deactivation of the Action Care Amazon Product Listing Page also resulted in Action Care's Amazon storefront suffering significant negative impact on account health and complete loss of sales.

**ANSWER:**

Denied.

20.     On or around July 27, 2023, counsel for Action Care sent a letter to Amazon, explaining Action Care's position and why Action Care believed MFB's suit was baseless.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

21.     On or around August 5, 2023, Amazon reinstated the Action Care Amazon Product Listing Page.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

22.     On or around August 9, 2023, Amazon again deactivated the Action Care Amazon Product Listing Page, citing MFB's pending allegations of copyright infringement by Action Care as the reason for the delisting. Just prior to Amazon's second delisting of the Action Care Amazon Product Listing Page, Action Care shipped 450 additional units to Amazon, resulting in such additional units being stranded as well.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

23.     Meanwhile, as a result of the pending copyright infringement allegations, Amazon began shipping boxes of Action Care's products back to Action Care in multiple small envelopes, which caused physical damage to much of Action Care's inventory.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

**<u>First Claim for Relief</u>**

**<u>MISREPRESENTATION UNDER 17 U.S.C. § 512(F)</u>**

24.     The allegations of paragraphs 1 to 23 of the Counterclaims are incorporated as part of this claim.

**ANSWER:**

MFB reincorporates each of its answers set forth in the preceding paragraphs of this Answer to Action Care's Counterclaims; otherwise denied.

25.     MFB has an intellectual property attorney (Schell) as part of its management team.

**ANSWER:**

Jeffrey Schell was the Chief Operating Officer of MFB Fertility Inc. Jeffrey Schell is also an attorney licensed with the State of Colorado; otherwise denied.

26.     When MFB submitted the DMCA Takedown Notice, MFB stated, *inter alia*, that Action Care "used all of [MFB's] wording on the product page and product inserts. Copyrighted content: [Action Care] copied all of [MFB's] FAQs and product description from this product page https://amazon.com/proov-pdg-progesterone-metabolite-fda-cleared/dp/b08b698tdw [Action Care] also took wording from [MFB's] FAQ on our website: https://proovtest.com/products/proov-test-strips including the 'who might have a problem with ovulation, comment FAQ, when to test, and what is successful ovulation."

**ANSWER:**

Action Care has failed to define the term "DMCA Takedown Notice"; therefore, MFB denies the allegation.

27.     Upon information and belief, MFB's representative submitting the DMCA Takedown Notice knew that any content that may have been contained on the Action Care Amazon Product Listing Page did not contain the entirety of MFB's wording from MFB's product page and product insert.

**ANSWER:**

Denied.

28.     Upon information and belief, MFB's representative submitting the DMCA Takedown Notice also knew that any content that may have been contained on the Action Care Amazon Product Listing Page did not contain the entirety of the FAQs and product description from the product page https://amazon.com/proov-pdg-progesterone-metabolite-fdacleared/dp/b08b698tdw.

**ANSWER:**

Denied.

29.     Upon information and belief, MFB's representative submitting the DMCA Takedown Notice knew the meaning of the word "all," as showcased by the fact that, after using the word "all" with respect to the two items above, the DMCA Takedown Notice was completed with the statements "also took wording" (as opposed to "used all" or "copied all").

**ANSWER:**

Denied.

30.     Upon information and belief, MFB knew that material contained on the Action Care Amazon Product Listing Page did not infringe upon MFB's copyright.

**ANSWER:**

Denied.

31.     Accordingly, MFB violated 17 U.S.C. § 512(f) by knowingly and materially misrepresenting that the content contained on the Action Care Amazon Product Listing Page infringed upon MFB's copyrights.

**ANSWER:**

Denied.

32.     The DMCA Takedown Notice ultimately resulted in deactivation of the Action Care Amazon Product Listing Page and an inability to sell Action Care's products (including inventory in possession of Amazon's fulfilment center).

**ANSWER:**

Denied.

33.     As a direct and proximate result of MFB's actions, Action Care has been injured substantially and irreparably. Such injury includes, but is not limited to, the financial and personal

expenses associated with responding to the takedown notice, reputational damage resulting from a lower seller rating and lower account health, and lost revenues from an inability to sell Action Care's products through Amazon.

**ANSWER:**

Denied.

### Second Claim for Relief

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

34.     The allegations of paragraphs 1 to 23 of the Counterclaims are incorporated as part of this claim.

**ANSWER:**

MFB reincorporates each of its answers set forth in the preceding paragraphs of this Answer to Action Care's Counterclaims; otherwise denied.

35.     Action Care is in the business of selling fertility test strips under the mark "OVUPROOF."

**ANSWER:**

Denied.

36.     Having sold hundreds of units of Action Care's products through the Action Care Amazon Product Listing Page, Action Care had a reasonable expectation of entering into a valid business relationship with more consumers who would have purchased Action Care's products through the Action Care Amazon Product Listing Page.

**ANSWER:**

Denied.

37.     As an Amazon seller itself, MFB knew of Action Care's expectancy of selling

Action Care's products to consumers through Amazon's platform, and specifically through the Action Care Amazon Product Listing Page.

**ANSWER:**

Denied.

38.    MFB purposefully interfered with Action Care's business expectancy through numerous inappropriate actions, including without limitation falsely claiming to Amazon that Action Care violated MFB's intellectual property rights.

**ANSWER:**

Denied.

39.    Action Care suffered damages as a result of MFB's conduct, including without limitation deactivation of the Action Care Amazon Product Listing Page, lost revenues, physical damage to Action Care's inventory, and reputational damage.

**ANSWER:**

Denied.

40.    Additionally, MFB will continue to injure Action Care's business if MFB continues to falsely allege to third parties that Action Care has violated MFB's rights.

**ANSWER:**

Denied.

41.    Action Care has no adequate remedy at law because it is impossible to determine how much business Action Care will lose as a result of MFB conduct concerning Action Care.

**ANSWER:**

Denied.

**Third Claim for Relief**

**DEFAMATION *PER SE***

42.     The allegations of paragraphs 1 to 23 of the Counterclaims are incorporated as part of this claim.

**ANSWER:**

MFB reincorporates each of its answers set forth in the preceding paragraphs of this Answer to Action Care's Counterclaims; otherwise denied.

43.     Among the many false statements contained in the DMCA Takedown Notice was the assertion that "[Action Care] found a cheap Chinese manufacturer to copy [MFB's] tests," which is not a statement concerning alleged infringement of MFB's rights in the Copyrighted Work.

**ANSWER:**

Denied.

44.     Action Care did not engage SEB to copy MFB's products. In fact, SEB had been selling the SEB Strips since 2019 at the latest. When Action Care began communicating with SEB in November 2022, Action Care explicitly conducted due diligence with respect to how the SEB Strips were different from MFB's products, including ensuring that the manufacture of the SEB Strips did not infringe upon any patent(s) owned by MFB or MFB's representatives.

**ANSWER:**

MFB lacks sufficient knowledge and/or information sufficient to form a belief regarding the truth of this allegation, and therefore denies the allegation.

45.     MFB's statement that Action Care found anybody to copy MFB's products is false.

**ANSWER:**

Denied.

46. MFB published that false statement to a third party (*i.e.*, to Amazon) through the DMCA Takedown Notice.

**ANSWER:**

Denied.

47. MFB's false assertion of fact about Action Care's causing the copying of MFB's products prejudiced Action Care by imputing a lack of Action Care's ability in Action Care's trade, profession, or business, and/or Action Care's want of integrity in business.

**ANSWER:**

Denied.

<u>**Fourth Claim for Relief**</u>

<u>**DEFAMATION *PER QUOD***</u>

48. The allegations of paragraphs 1 to 23 of the Counterclaims are incorporated as part of this claim.

**ANSWER:**

MFB reincorporates each of its answers set forth in the preceding paragraphs of this Answer to Action Care's Counterclaims; otherwise denied.

49. Among the many false statements contained in the DMCA Takedown Notice was the assertion that "[Action Care] found a cheap Chinese manufacturer to copy [MFB's] tests," which is not a statement concerning alleged infringement of MFB's copyright.

**ANSWER:**

Denied.

50. Action Care did not engage SEB to copy MFB's products. In fact, SEB had been selling the SEB Strips since 2019 at the latest. When Action Care began communicating with SEB in November 2022, Action Care explicitly conducted due diligence with respect to how the SEB

Strips were different from MFB's products, including ensuring that the manufacture of the SEB

Strips did not infringe upon any patent(s) owned by MFB or MFB's representatives.

**ANSWER:**

Denied.

51.     MFB's statement that Action Care found anybody to copy MFB's products is false.

**ANSWER:**

Denied.

52.     MFB published that false statement to a third party (*i.e.*, to Amazon) through the

DMCA Takedown Notice.

**ANSWER:**

Denied.

53.     MFB's false assertion of fact about Action Care's causing the copying of MFB's

products caused damages to Action Care when Amazon removed the Action Care Amazon Product

Listing Page and subsequently lowered Action Care's account health.

**ANSWER:**

Denied.

<u>**Fifth Claim for Relief**</u>

<u>**CANCELLATION OF THE "PROOV" TRADEMARK**</u>

54.     The allegations of paragraphs 1 to 23 of the Counterclaims are incorporated as part

of this claim.

**ANSWER:**

MFB reincorporates each of its answers set forth in the preceding paragraphs of this Answer to

Action Care's Counterclaims; otherwise denied.

55.     MFB's standard character trademark "PROOV" is a misspelling of the words

"PROOF" and/or "PROVE" and is pronounced either identically or substantially similarly thereto. This is evidenced by the specimen that MFB submitted to the United States Patent and Trademark Office (USPTO) on or around August 9, 2018 ("Proov Specimen"), in which MFB includes the statement, "Stop guessing if you've ovulated. Proov$^{TM}$ it!" A true and correct copy of the Proov Specimen is attached hereto as Exhibit A.

**ANSWER:**

Denied.

56.     The products sold by MFB using the "PROOV" mark are ovulation tests. As evidenced by the Proov Specimen, MFB refers to its products as "progesterone ovulation tests" and "ovulation test strips." The URL for MFB's website is also www.proovtest.com.

**ANSWER:**

Admitted that the URL for MFB's website is www.proovtest.com; otherwise denied.

57.     Upon information and belief, the words "PROOF" and "TEST" are synonyms and/or are used to define each other. Specifically, and without limitation, definitions of the word "PROOF" in the Merriam-Webster dictionary include "the quality or state of having been tested or tried," "a test applied to articles or substances to determine whether they are of standard or satisfactory quality," "used in proving or testing or as a standard of comparison," and "to make or take a proof or test of." The definitions of the word "PROVE" in the Merriam-Webster dictionary include "to test the truth, validity, or genuineness of," "to test the worth or quality of," "to turn out especially after trial or test," and "to test by an experiment or a standard." Meanwhile, definitions of the word "TEST" in the Merriam-Webster dictionary include "to put to test or proof" and "the procedure of submitting a statement to such conditions or operations as will lead to its proof or disproof or to its acceptance or rejection."

**ANSWER:**

Denied.

58.     Upon information and belief, any mark that sounds like "PROOF" and/or "PROVE" is generic with respect to tests and testing products. Alternatively, at most, any mark that sounds like "PROOF" and/or "PROOV" is merely descriptive of tests and testing products.

**ANSWER:**

Denied.

59.     Because the "PROOV" mark is generic, it is subject to cancellation under 15 U.S.C. § 1064(3).

**ANSWER:**

Denied.

60.     Further, under 15 U.S.C. § 1052(e)(1), a merely descriptive mark is ineligible for registration on the USPTO's Principal Register.

**ANSWER:**

Denied.

61.     U.S. Registration No. 5,622,245 should be cancelled pursuant to 15 U.S.C. § 1064(3) because the "PROOV" mark is generic and is ineligible for trademark protection. Alternatively, U.S. Registration No. 5,622,245 should be cancelled because it is ineligible for registration on the USPTO's Principal Register.

**ANSWER:**

Denied.

62.     MFB is causing irreparable harm to Action Care for which there is no adequate remedy at law.

**ANSWER:**

Denied.

63.     In view of the foregoing, this Court should exercise its authority to order the USPTO to cancel U.S. Registration No. 5,622,245.

**ANSWER:**

Denied.

<u>**MFB'S AFFIRMATIVE DEFENSES**</u>

MFB hereby asserts the following affirmative defenses in this lawsuit:

**First Affirmative Defense**

1.      Action Care's Counterclaims, or one or more of the counts set forth therein, (D.I. 15) fail to state a claim upon which relief can be granted.

**Second Affirmative Defense**

2.      Action Care's claims are barred by the equitable doctrines of laches, waiver, estoppel, and/or acquiescence.

**Third Affirmative Defense**

3.      Action Care's claims are barred, in whole or in part, by the equitable doctrine of unclean hands, and/or bad faith conduct on the part of Action Care.

**Fourth Affirmative Defense**

4.      Action care cannot show irreparable injury and is therefore not entitled to injunctive relief.

**Fifth Affirmative Defense**

5.      Action Care's claims are barred, in whole or in part, by the First and Fourteenth Amendments to the U.S. Constitution and Article I, § 4 of the Illinois Constitution.

**Sixth Affirmative Defense**

6.      Action Care's claims are barred, in whole or in part, because it arises from speech and conduct in furtherance of free speech rights involving matters of legitimate concern to the

public, the publication and pursuit of which are privileged under the First and Fourteenth Amendments to the U.S. Constitution, and Article I, § 4 of the Illinois Constitution, and therefore cannot provide a basis for any recovery by Action Care.

### Seventh Affirmative Defense

7.    Action Care's claims for defamation and tortious interference are barred, in whole or in part, because MFB has not acted with the requisite degree of knowledge, intent, or fault.

### Eighth Affirmative Defense

8.    Action Care's claims for defamation and tortious interference are barred, in whole or in part, because MFB's conduct was reasonable, legally justified, and/or privileged and cannot give rise to any liability.

### Ninth Affirmative Defense

9.    Action Care's claims for defamation are barred, in whole or in part, because to the extent that any statements or alleged implications that form the basis for the claim could be interpreted as asserting verifiable facts, those facts are substantially true.

### Tenth Affirmative Defense

10.    Action Care's claim for defamation is barred, in whole or in part, because the subject matter of the alleged statements or alleged implications that form the basis for the claim involved matters of public interest, and MFB did not publish any false statement or implication about Action Care with constitutional actual malice.

### Eleventh Affirmative Defense

11.    Action Care's Counterclaims against MFB are barred, in whole, or in part, to the extent that they arise from conduct not attributable to MFB.

### Twelfth Affirmative Defense

12.     Action Care's Counterclaims against MFB are barred, in whole, or in part, because any damages allegedly suffered by Action Care were the result, in whole or in part, or Action Care's own legal fault, and any recovery should be reduced in proportion to their individual and collective fault.

### Thirteenth Affirmative Defense

13.     Action Care's Counterclaims against MFB are barred, in whole or in part, because to the extent any damages exist, Action Care failed to mitigate any alleged damages.

### Fourteenth Affirmative Defense

14.     Action Care's Cause of Action for misrepresentation of copyright claims under the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512(f) is barred by 17 U.S.C. § 512.

### Fifteenth Affirmative Defense

15.     Action Care's Cause of Action for misrepresentation of copyright claims under the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512(f) fails to state a claim for relief because MFB acted at all times in good faith and substantial compliance of 17 U.S.C. § 512 based upon the information available to it.

### Sixteenth Affirmative Defense

16.     The counterclaims are the subject of privileges and therefore barred.

### Seventeenth Affirmative Defense

17.     The counterclaims are preempted in whole or in part by Federal Law.


MFB reserves the right to Amend its Answer to raise additional affirmative defenses, as MFB does not yet have knowledge of all facts and evidence pertaining to this matter.

Respectfully submitted,

/s/ *Dean D. Niro*

Dean D. Niro (ARDC # 6208064)
Arthur A. Gasey (ARDC # 6210605)
VITALE, VICKREY, NIRO, SOLON & GASEY LLP
311 S. Wacker Dr., Suite 2200
Chicago, IL 60606
Tel.: (312) 236-0733
Fax: (312) 236-3137
dniro@vvnlaw.com
gasey@vvnlaw.com

Gary I. Blackman (ARDC # 6187914)
Erin M. Mayer (ARDC # 6313447)
LEVENFELD PEARLSTEIN, LLC
130 N. Riverside Plaza, Suite 1800
Chicago, IL 60606
Tel.: (312) 346-8380
Fax: (312) 346-8434
gblackman@lplegal.com
emayer@lplegal.com

*Attorneys for Plaintiff,*
*MFB Fertility, Inc.*