THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MFB Fertility, Inc.,<br><br>                         Plaintiff,<br><br>       v.<br><br>Action Care Mobile Veterinary Clinic, LLC,<br><br>                         Defendant. | Case No. 1:23-cv-03854<br><br>Dist. Judge John J. Tharp Jr.<br><br>Mag. Judge Gabriel A. Fuentes |

**MOTION FOR LEAVE TO FILE FIRST AMENDED COUNTERCLAIMS**

Defendant/Counter-plaintiff Action Care Mobile Veterinary Clinic, LLC ("Action Care"), by its counsel, respectfully submits this motion for leave to file Action Care's First Amended Answer, Affirmative Defenses, and Counterclaims ("Amended Counterclaims") to add certain counterclaims against Plaintiff/Counter-defendant MFB Fertility, Inc. ("MFB"). In addition, the Amended Counterclaims include limited modifications to the answer and affirmative defenses to MFB's original complaint ("Complaint"). These limited modifications are based on evolving circumstances since Action Care's initial filing of Action Care's original answer, affirmative defenses, and counterclaims. The proposed Amended Counterclaims are attached hereto as Exhibit A. For the Court's convenience, a redline comparing Action Care's original answer, affirmative defenses, and counterclaims to the proposed Amended Counterclaims is attached hereto as Exhibit G. The proposed Amended Counterclaims also incorporate by reference five new exhibits, which are submitted herewith as Exhibit B, Exhibit C, Exhibit D, Exhibit E, and Exhibit F.[1]

---

[1] If granted leave to file the Amended Counterclaims, Action Care will also incorporate by reference the same Exhibit A as was attached to the original answer, affirmative defenses, and counterclaims. [*See* ECF No. 15-1; *see also*, Am. Countercl., at 21 ¶ 59 ("A true and correct copy of the Proov Specimen is attached hereto as Exhibit A.")].

## RELEVANT BACKGROUND

MFB filed its Complaint on June 20, 2023 [ECF No. 6], asserting claims of copyright infringement and trademark infringement against Action Care. On September 15, 2023, Action Care filed a partial motion to dismiss [ECF No. 10], seeking dismissal of MFB's copyright infringement claim. The Court granted Action Care's motion to dismiss the copyright infringement claim on April 22, 2024. [ECF No. 35].

Action Care also had filed its original answer, affirmative defenses, and counterclaims on September 22, 2023. [ECF No. 15]. On February 2, 2024, MFB filed a motion seeking to dismiss all of Action Care's counterclaims. [ECF No. 31]. The Court has since proceeded to deny MFB's motion to dismiss in full, allowing all of Action Care's original counterclaims to survive. [*See* ECF No. 35, ECF No. 50]. Thus, the parties' surviving claims now consist of MFB's assertions that Action Care infringed upon MFB's "PROOV" trademark covered by U.S. Registration No. 5,622,245 ("PROOV Registration"), and of Action Care's counterclaims for misrepresentation under the DMCA, tortious interference with prospective economic advantage, defamation *per se*, defamation *per quod*, and cancellation of the PROOV Registration on the grounds that the "PROOV" trademark is either generic or merely descriptive.

Meanwhile, on November 26, 2024, during the pendency of this litigation, MFB caused the filing of a Combined Declaration of Use and Incontestability Under Sections 8 & 15 ("Combined Declaration") with the United States Patent and Trademark Office ("USPTO") in relation to the PROOV Registration. [*See* Exhibit E]. As set forth in more detail below, the Combined Declaration contained willful false statements. In reliance on MFB's verifiable false statements in the Combined Declaration, on March 20, 2025, the USPTO proceeded to issue a

Notice of Acceptance Under Section 8 and a Notice of Acknowledgment Under Section 15 (such combined notice, "Notice of Acceptance and Acknowledgment"). [*See* Exhibit F].

Action Care now respectfully requests leave to file the Amended Counterclaims. In addition to the original counterclaims, Action Care seeks declaratory relief based on MFB's willful false statements to the USPTO. Furthermore, the Amended Counterclaims include a new claim that MFB violated Section 2 of the Sherman Act by attempting to monopolize the U.S.-based market for in-home PdG ovulation test strips. As explained below, the Court's ruling dismissing MFB's copyright infringement claim and MFB's recent submission of willful false statements to the USPTO each serve as evidence that MFB has engaged in sham petitioning, thereby depriving MFB of any potential immunity from antitrust claims.

## ARGUMENT

Pursuant to Rule 13(e) of the Federal Rules of Civil Procedure, a court may "permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." *Lerman v. Turner*, No. 10 C 2169, 2012 WL 1409526, at *1 (N.D. Ill. Apr. 23, 2012) (quoting 27A Tracy Farrell et al., FEDERAL PROCEDURE, LAWYERS EDITION § 62:209 ("A defendant's motion to amend its answer to assert counterclaims against plaintiff is governed by Fed. R. Civ. P. 13(e) where defendant claims that it was not aware of the facts giving rise to the counterclaims at the time the original answer was served")). In addition, "the court should freely give leave [to amend a pleading] when justice so requires." FED. R. CIV. P. 15(a)(2). With respect to pleadings in general, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d). Courts generally apply a liberal standard to permit amendments to pleadings, unless

certain factors exist, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). None of the factors that would serve to prevent Action Care's proposed amendments exist here.

**I.  After Action Care's Filing of the Original Answer, Affirmative Defenses, and Counterclaims, MFB Submitted a Willful False Statement to the USPTO.**

On November 26, 2024, MFB, through its attorney of record with respect to the PROOV Registration, submitted the Combined Declaration to the USPTO. [Ex. E]. Submission of the Combined Declaration required MFB to declare, with respect to MFB's rights in the PROOV trademark, that "[t]here is no proceeding involving said rights pending and not finally disposed of either in the [USPTO] or in a court." [*Id*. at 6]. MFB also was required to declare that, "[t]o the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support." [*Id*.]. The Combined Declaration also required the signatory to declare that "willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity <u>of this submission **and the registration**</u>." [*Id*. (emphases added)]. Further, the signatory was required to declare that "all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true." [*Id*.].

Given that the instant litigation was pending with this Court regarding MFB's rights in the PROOV trademark at the time MFB submitted the Combined Declaration, MFB's submission clearly contained misrepresentations as to the absence of any proceedings. Seeking to maintain the

4

PROOV Registration and to secure incontestable status with respect to the PROOV Registration, MFB submitted the Combined Declaration to the USPTO. Through the making of these false statements, MFB succeeded in inducing the USPTO to issue the Notice of Acceptance and Acknowledgment. [*See* Ex. F]. Without MFB's misrepresentations, the USPTO would not have issued the Notice of Acceptance and Acknowledgment. *See* 15 U.S.C. § 1065(2).

MFB cannot reasonably controvert that it caused the submission of a false statement to the USPTO with respect to the PROOV Registration, regardless of whether the Combined Declaration was submitted by MFB's counsel. *See Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418, 427 (7th Cir. 2025) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)). MFB also cannot reasonably allege that it was unaware of the fact that it was engaged in this litigation at the time that the Combined Declaration was submitted. The USPTO has long deemed such fraud to be independent grounds for cancellation of a registration. *Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333, 1348–49 (Fed. Cir. 2024) (REYNA, J., *dissenting*); *see also*, *Crown Wallcovering Corp. v. Wall Paper Mfrs. Ltd.*, 188 U.S.P.Q. 141, 1975 WL 20837, at *4 (T.T.A.B. 1975). Admittedly, the Court of Appeals for the Federal Circuit has, in a split decision, recently rejected the premise that submitting false statements in the Section 15 portion of the Combined Declaration is sufficient, by itself, to cancel a registration in its entirety. *Great Concepts*, 90 F.4th at 1339. At the same time, the Federal Circuit has stated in no uncertain terms that this very scenario leads at a minimum to forfeiture of incontestable status in the registration. *Id*. at 1343–44. While the Amended Counterclaims request declaratory relief that MFB's false statement serve as independent grounds for cancellation of the PROOV Registration, the Amended Counterclaims also request, in the alternative, that the Court revoke the incontestability granted to the PROOV

5

Registration through the Notice of Acceptance and Acknowledgment. [*See* Am. Countercl., at 22–24 ¶¶ 68–80].

Furthermore, the Court does not need to wait until a later stage of this case to act upon MFB's false statements to the USPTO. *See* FED. R. EVID. 201(d). "A court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012); *see also*, FED. R. EVID. 201(b). Information from an official government website that is not subject to reasonable dispute qualifies as such. *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of records found online at a federal agency's website). In fact, the Court must do so upon the request of a party, as long as the requesting party supplies the necessary information. FED. R. EVID. 201(c)(2); *see also*, *Denius*, 330 F.3d at 926 (deeming information on a government website to be subject to mandatory judicial notice under Fed. R. Evid. 201 when requested by a party). Action Care has appended true and correct copies of the Combined Declaration and the Notice of Acceptance and Acknowledgment – both records from a website of the USPTO – to this motion. [*See* Ex. E, Ex. F]. The Court therefore must take judicial notice of MFB's Combined Declaration and the Notice of Acceptance and Acknowledgment.[2]

---

[2] Though not government records, dictionary definitions have also previously been found to be subject to judicial notice. *See Boden Prod. Inc. v. Doric Foods Corp.*, 552 F. Supp. 493, 496 (N.D. Ill. 1982) ("it is appropriate to take judicial notice of the meaning of words"); *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 782 (S.D. Ohio 2009) (holding that the court could take judicial notice of dictionary definitions without converting a motion to dismiss into a motion for summary judgment because "a dictionary is one of those sources whose accuracy cannot reasonably be questioned . . ."). The Court could, therefore, take judicial notice of the dictionary definitions of the words "PROOF," "PROVE," and "TEST," which serve to support Action Care's trademark cancellation counterclaim based on genericness or descriptiveness of the "PROOV" mark. [*See* Am. Countercl., at 21 ¶¶ 61]. Action Care now also provides copies of these definitions as part of the Amended Counterclaims. [Ex. B; Ex. C; Ex. D]. If the Court determines the "PROOV" mark to be a phonetic equivalent of a generic or common descriptive term, then MFB's "PROOV" mark would be invalid. *See, e.g.*, *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979) (affirming district court's cancellation of trademark "LITE" for beer, because "a generic term cannot be appropriated through the device of misspelling it."), *cert. denied*, 444 U.S. 1102 (1980); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977) ("A generic or common descriptive term is one which is

The Seventh Circuit has determined that:

> [15 U.S.C. § 1119] arms courts with the power to effectively put the public on notice of its trademark-related judgments. Because a court's decision may raise doubts about the validity of a trademark registration, § 1119 arms the court with the power to update the federal trademark register to account for a mark's actual legal status (or lack thereof) after it has been adjudicated, thereby reducing the potential for future uncertainty over the rights in a particular mark.

*Central Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007). Even if the Court elects to reserve judgment regarding MFB's false statements in the Combined Declaration until later, the Court should allow Action Care to include its sixth claim for relief in the Amended Counterclaims, requesting the declaratory relief.

### II. MFB Has Engaged in Sham Petitioning in an Attempt to Monopolize the Parties' Relevant Market, so the Court Should Permit Amendment of the Counterclaims to Include a Claim Under Section 2 of the Sherman Act.

Litigants whose implementation of governmental processes negatively impacts competitors are often shielded from claims for violation of antitrust laws by the *Noerr-Pennington* immunity. *See, generally, Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). This immunity is voided, however, when a party engages in sham petitioning. *Id*. Litigation is considered a "sham" if the litigation is (1) "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) used to conceal "an

---

commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances. Using the phonetic equivalent of a common descriptive word, i.e., misspelling it, is of no avail.") (internal citations omitted); *American Aloe Corp. v. Aloe Creme Laboratories, Inc.*, 420 F.2d 1248, 1253 (7th Cir. 1970) ("By using the phonetic equivalent of the generic name as the sole common and distinguishing mark of its products, [owner of ALO-family of marks] invited confusion."). In turn, **the Court's expedited determination that the "PROOV" mark is invalid would serve to promote judicial efficiency by eliminating the need for the parties and the Court to expend resources dealing with the likelihood-of-confusion element of MFB's trademark infringement claim**. *See Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 (7th Cir. 2019) (trademark validity and likelihood of consumer confusion are both required for trademark infringement to occur, and a plaintiff's failure to satisfy either element can serve as independent grounds for dismissing the trademark infringement claim). The general public would also benefit from an up-to-date trademark register – a result that the Seventh Circuit seemingly promotes. *See Central Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007) (affirming district judge's decision to cancel a trademark, because when "a registrant's asserted rights to a mark are shown to be invalid, cancellation is not merely appropriate, it is the best course."). Action Care therefore requests that the Court take judicial notice of these definitions at this stage.

attempt to interfere directly with the business relationships of a competitor through the use of the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon." *Id*. at 60–61 (cleaned up). Courts in this district have distilled this test to mean that "a suit is a sham when it is both objectively baseless and subjectively motivated by a desire to impose collateral, anti-competitive injury." *Avnet, Inc. v. Motio, Inc.*, No. 12 C 2100, 2015 WL 425442, at *7 (N.D. Ill. Jan. 30, 2015) (quoting *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1071 (Fed. Cir. 1998)) (cleaned up). The doctrine can apply not only to lawsuits, but also to administrative filings and legal processes. *See Tyco Healthcare Grp. LP v. Mutual Pharm. Co., Inc.*, 762 F.3d 1338, 1346 (Fed. Cir. 2014) (collecting cases). Even a single baseless claim may constitute sham petitioning. *Avnet, Inc. v. Motio, Inc.*, No. 12 C 2100, 2015 WL 5307515, at *6 (N.D. Ill. Sept. 9, 2015) (citing *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1154–55 (7th Cir. 1983)).

Further, the doctrine of copyright misuse, which often goes hand-in-hand with violation of antitrust laws, prohibits copyright owners from "leveraging their limited monopoly to allow them control of areas outside the monopoly." *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003). Either way, "for a copyright owner to use an infringement suit to obtain property protection . . . that copyright law clearly does not confer, hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, is an **abuse of process**." *Id*. (emphasis added).

Action Care has always claimed that MFB misused its copyright and abused the DMCA notice-and-takedown protocol.³ Since Action Care's initial filing, however, not only did the Court

---

³ Prior to dismissal of MFB's copyright infringement claim, Action Care claimed copyright misuse as an affirmative defense. [*See* ECF No. 15, at 11 ¶ 14.] Meanwhile, Action Care's counterclaims allege that MFB's DMCA takedown notification submitted against Action Care contained not only misrepresentations with respect to the content of Action Care's Amazon listing, but also misrepresentations relating to the products themselves, which are not copyrightable

deem Action Care to have sufficiently pleaded its counterclaims, but the Court also dismissed MFB's copyright infringement claim at the 12(b)(6) stage. [ECF No. 35 at 6–11]. The Court determined that MFB's copyright claim was meritless because MFB sought to "improperly claim[] intellectual property over" "functional, regulated language." [*Id*. at 11]. In fact, the Court decided, "under MFB's construction, Action Care would ostensibly be required to violate the FDA's labeling requirements for in vitro diagnostic products to bypass MFB's copyright." [*Id*. at 10]. Action Care's copying, to the extent that it may have occurred at all, was "limited to fragments that are descriptive of its product and is compelled by the legislature." [*Id*. at 11].[4]

By themselves, these determinations from the Court with respect to MFB's copyright infringement claim would be sufficient to render MFB's initiation of this lawsuit to contain objectively baseless claims, while the Court's acknowledgment of the sufficiency of Action Care's counterclaims would serve to support that MFB's litigation was subjectively intended to interfere with Action Care's business. Nevertheless, MFB also then proceeded to submit its fraudulent

---

subject matter, and which are not content posted online. [*See* Am. Countercl., at 18 ¶¶ 41–42, 19 ¶47, 20 ¶ 53]. Further, regardless of any misrepresentations as to infringement, the use of the DMCA protocol "to achieve non-copyright goals" is considered abusive of the process. *See* U.S. COPYRIGHT OFFICE, SECTION 512 OF TITLE 17: A REPORT OF THE REGISTER OF COPYRIGHTS, at 155 n.831 (May 2020), https://www.copyright.gov/policy/section512/section-512-full-report.pdf (citing stakeholder comments). DMCA abuse also includes using DMCA notices "for reasons other than copyright infringement . . . includ[ing] anti-competitive purposes." *Id*. at 76 n.398 (same).

[4] The Court deemed it appropriate to grant Action Care's motion to dismiss MFB's copyright infringement claim without any reply brief from Action Care and without allowing MFB to amend its complaint due to a lack of substantial similarity between Action Care's digital properties and either of the works provided by MFB. As a result, the Court did not have the opportunity to consider additional arguments from Action Care that MFB's proposed substitution of copyrighted works served as independent grounds for dismissing MFB's copyright infringement claim. Specifically, subject to certain carve-outs inapplicable here, Section 411(a) of the Copyright Act requires for a registration to be approved and issued before a copyright owner can institute an infringement claim. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019). Because legal proceedings are considered "instituted" at the time that an initial complaint is filed, the court may not allow leave to amend a complaint to cure a registration defect that existed at the time an initial complaint was filed. *Ambrosetti v. Oregon Cath. Press*, 458 F. Supp. 3d 1013, 1020 (N.D. Ind. 2020). MFB registered its substitute work with the U.S. Copyright Office after initiating this suit. Therefore, MFB's proposed amended copyright infringement claim would have been subject to dismissal for that reason as well, further reinforcing the objective unreasonableness of MFB's use of the litigation process.

Combined Declaration to the USPTO. These developments – all having taken place after Action Care's initial filing of its original counterclaims – reinforce that MFB has engaged in sham petitioning and has abused government processes in an anticompetitive manner. MFB has forfeited any shield from exposure to antitrust laws.

A claim for attempted monopolization under Section 2 of the Sherman Act (15 U.S.C. § 2) requires establishing that the would-be monopolist "(1) engaged in predatory or anticompetitive conduct, (2) with a specific intent to monopolize, and (3) there was a dangerous probability of achieving monopoly power." *Avnet, Inc. v. Motio, Inc.*, No. 12 C 2100, 2015 WL 5307515, at *3 (N.D. Ill. Sept. 9, 2015) (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)). Action Care's allegations in the Amended Counterclaims as to MFB's intentional and knowing misuse of its intellectual property rights and the DMCA notice-and-takedown process are sufficient to satisfy the first two elements of the claim at this stage of the litigation. [*See* Am. Countercl., at 25–26 ¶¶ 84–90]; *cf. Avnet*, 2015 WL 425442, at *6 ("[Antitrust-plaintiff] has already alleged anticompetitive conduct with specific intent to monopolize: the procurement of a patent – a government sanctioned monopoly – through the fraud.").[5]

"In order to determine whether there is a dangerous probability of monopolization, courts 'consider the relevant market and the defendant's ability to lessen or destroy competition in that market.'" *Id*. (quoting *Spectrum Sports*, 506 U.S. at 456). Relevant commercial markets, of which there may be multiple, consist of product-specific and geographic aspects. *Tiz, Inc. v. S. Glazer's Wine & Spirits, LLC,* No. 22 CV 1648, 2024 WL 2785142, at *6 (N.D. Ill. May 30, 2024)

---

[5] Based on allegations of other competitors of MFB, Action Care is neither the first nor last competitor against whom MFB has submitted DMCA takedown notifications. *See* Memorandum of Law in Support of Defendant Wondfo USA Co., Ltd.'s Motion to Dismiss, *MFB Fertility Inc. v. Wondfo USA Co., Ltd.*, Case No. 1:23-cv-17000, ECF No. 19 (N.D. Ill. May 8, 2024) ("MFB continues to abuse the litigation process in an attempt to preserve its monopoly over the market for a particular type of fertility test. Its tactic is simple: every time a competitive product appears in an online marketplace, MFB issues a DMCA takedown notice, requiring the platform to remove the listing. To keep the competing product out of the market, MFB must follow up with a copyright infringement lawsuit.").

(MALDONADO, J.). An antitrust-plaintiff has to attempt to explain why a market should be limited in a particular way, providing unique attributes that explain why the parties' products may be substitutes for each other, while at the same time explaining why products outside the market are not interchangeable with the parties' products. *Id*. at *7. Ultimately, however, "market definition is a deeply fact-intensive inquiry, which makes courts hesitant to grant motions to dismiss for failure to plead a relevant product market." *Id*. (internal quotation marks omitted). Within the Seventh Circuit, district courts have consistently determined that "dismissal is appropriate only where the plaintiff has not even attempted a plausible explanation of the proposed market, or it is apparent that the proposed market does not encompass all reasonable substitutable products." *Id*. at *8 (internal quotations omitted) (collecting cases).

Action Care has identified the geographic scope of the relevant market as the United States and the product market as in-home ovulation test strips measuring PdG that do not require the purchase of a separate monitoring device. [Am. Countercl., at 26–27 ¶ 91.] This determination is based not just on arbitrary demarcation by Action Care, but also on allegations of other would-be competitors against whom MFB has misused the DMCA protocol. (*See* footnote 5, *supra*, discussing "market for a particular type of fertility test" (emphasis added)). Even more telling, MFB's own statements tout the significant marginal benefits of testing for PdG, as opposed to the functionalities of other non-PdG ovulation tests. [Am. Countercl., at 27 ¶¶ 92–93; *see also*, ECF No. 35, at 4 (graphic containing statements from MFB's PROOV Copyrighted Works, including that "Understanding PdG levels provides insight into ovulation that can affect your chance at successful pregnancy – a key piece of the puzzle when you're trying to conceive.")]. Meanwhile, products that required the purchase of additional equipment and additional hormone

11

tests were offered at a much higher price point, and therefore were not reasonable substitutes for the test strips offered by MFB and Action Care. [Am. Countercl., at 26–27 ¶ 91].

An antitrust-plaintiff also must show that it "sustained an injury that is the type of injury that antitrust laws were intended to prevent and that flows from [antitrust-defendant's] unlawful conduct." *Avnet*, 2015 WL 425442, at *8 (citing *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)). Antitrust injury for attempted monopolization claims has been deemed sufficiently pleaded when the antitrust-plaintiff alleges that it has lost sales and incurred fees and costs in defending against the sham litigation. *Avnet*, 2015 WL 425442, at *8. The antitrust-defendant's pursuit of litigation to raise competitors' cost of doing business, drive competitors out of the marketplace, and deter customers from purchasing competitive products similarly suffices for antitrust injury. *Id*. Action Care has pleaded all of the above, as well as the fact that Action Care lost its exclusive distribution deal for SEB Strips as a result of being driven out of the marketplace through MFB's anticompetitive conduct. [Am. Countercl., at 27–28 ¶¶ 96–98].

For the reasons set forth above, Action Care's proposed claim alleging attempted monopolization stemming from MFB's sham petitioning would survive a motion to dismiss. The Court should therefore permit Action Care to include its seventh claim for relief, alleging that MFB has violated Section 2 of the Sherman Act, in the Amended Counterclaims. *See Avnet*, 2015 WL 425442, at *8 ("Because [antitrust-plaintiff] has sufficiently alleged the required elements for a sham litigation claim, this court finds that it would survive a motion to dismiss and thus is not futile.").

## CONCLUSION

Action Care respectfully requests that the Court grant leave for Action Care to file the proposed Amended Counterclaims. Action Care further requests that the Court exercise its

authority under 15 U.S.C. § 1119 and, at a minimum, revoke the incontestable status of the PROOV Registration procured through MFB's willful false statements submitted in the Combined Declaration, of which the Court must take judicial notice at this stage. Action Care also requests that the Court take judicial notice of the dictionary definitions proposed to be filed with the Amended Counterclaims.

Dated: May 7, 2025

                Respectfully submitted,

                ACTION CARE MOBILE VETERINARY CLINIC, LLC

                By: /s/ Ilya G. Zlatkin
                Ilya G. Zlatkin
                ZLATKIN CANN ENTERTAINMENT
                4245 North Knox Avenue
                Chicago, Illinois 60641
                Email: ilya@zce.law

                *Attorney for Defendant Action Care Mobile Veterinary Clinic, LLC*