**THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MFB Fertility, Inc., | |
| Plaintiff, | Case No. 1:23-cv-03854 |
| v. | Dist. Judge John J. Tharp Jr. |
| Action Care Mobile Veterinary Clinic, LLC, | Mag. Judge Gabriel A. Fuentes |
| Defendant. | |

**ACTION CARE'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST
AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

**TABLE OF CONTENTS**

Preliminary Statement ...............................................................................................................1

Argument ...................................................................................................................................2

    I.    Action Care's proposed claim for declaratory relief is not futile. .......................................2

        a.    The Federal Circuit's Great Concepts ruling is not binding on the Court. .......................2

        b.    Action Care properly seeks declaratory relief based on MFB's willful false statements
        to the USPTO. ...........................................................................................................4

    II.    Action Care's proposed Sherman Act claim is not futile. ...................................................5

        a.    Action Care has sufficiently alleged that there was a dangerous probability of achieving
        monopoly power..........................................................................................................5

        b.    Action Care has sufficiently alleged that MFB engaged in predatory or anticompetitive
        conduct. ....................................................................................................................7

    III.    All facts of which Action Care seeks judicial notice meet the necessary standard. .........9

        a.    Judicial notice is appropriate with respect to the USPTO's online records......................9

        b.    Judicial notice is appropriate with respect to dictionary definitions..............................11

Conclusion ...............................................................................................................................13

i

## TABLE OF AUTHORITIES

**Cases**

*Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022)..12

*Chutter, Inc.*, No. 91223018, 2021 WL 4494251 (T.T.A.B. Sept. 30, 2021)................................11

*Doherty v. City of Chi.*, 75 F.3d 318 (7th Cir. 1996).....................................................................9

*Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169 (7th Cir. 1996) ...............................11, 12

*DRL Enters., Inc. v. N. Atl. Operating Co., Inc.*, 301 F. Supp. 3d 824 (N.D. Ill. 2018) .................3

*G. Heileman Brewing Co. v. Anheuser-Busch Inc.*, 676 F. Supp. 1436 (E.D. Wis. 1987), *aff'd*, 873 F.2d 985 (7th Cir. 1989)..............................................................................................6

*Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333 (Fed. Cir. 2024)................................2, 3, 11

*Klessig v. Hamilton*, No. 17-CV-31-PP, 2017 WL 4797837 (E.D. Wis. Oct. 23, 2017) ...............8

*Lektro–Vend Corp. v. Vendo Co.*, 660 F.2d 255 (7th Cir. 1981).....................................................5

*Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934 (7th Cir. 1986)..............................11

*MFB Fertility Inc. v. Easy Healthcare Corp.*, No. 20-CV-07833, 2023 WL 2683469 (N.D. Ill. Mar. 29, 2023)................................................................................................................6

*MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, 730 F. Supp. 3d 740 (N.D. Ill. 2024) ..............................................................................................................................7

*Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153 (7th Cir. 1996) ...................................11, 12, 13

*Mobility Workx, LLC v. Unified Pats., LLC*, 15 F.4th 1146 (Fed. Cir. 2021) ................................9

*Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, 529 F. Supp. 3d 927 (E.D. Wis. 2021), *aff'd*, 33 F.4th 417 (7th Cir. 2022) ................................................................12

*RGB Plastic, LLC v. First Pack, LLC*, 184 F. Supp. 3d 649 (N.D. Ill. 2016) ................................3

*Safety Socket LLC v. Relli Tech., Inc.*, No. 18-CV-6670, 2023 WL 3455117 (N.D. Ill. May 15, 2023) ...............................................................................................................................2, 3

*Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423 (7th Cir. 1985) .......................................2

*Tsiolis v. Interscope Recs., Inc.*, 946 F. Supp. 1344 (N.D. Ill. 1996)...........................................11

*Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013) .................................................................1, 2

**Statutes**

15 U.S.C. § 1064.......................................................................................................................4

15 U.S.C. § 1065.....................................................................................................................10

15 U.S.C. § 1119.......................................................................................................................4

15 U.S.C. § 2.............................................................................................................................5

17 U.S.C. § 505.........................................................................................................................8

28 U.S.C. § 2201.......................................................................................................................4

**Rules**

FED R. CIV. P 12(b)(6) ..........................................................................................................1, 8, 9

FED R. CIV. P. 8(d)(3) ...............................................................................................................4

FED. R. CIV. P. 201(d) ...............................................................................................................9

FED. R. CIV. P. 8(d)(2) ..............................................................................................................4

FED. R. CIV. P. 8(e) ...................................................................................................................4

FED. R. CIV. P. 9(b)....................................................................................................................4

FED. R. EVID. 201(b)..................................................................................................................9

Defendant/Counter-plaintiff Action Care Mobile Veterinary Clinic, LLC ("Action Care"), by its counsel, respectfully submits this reply in support of its motion ("Motion to Amend") seeking leave to file a First Amended Answer, Affirmative Defenses, and Counterclaims ("Amended Counterclaims") [ECF No. 53]. Plaintiff/Counter-defendant MFB Fertility Inc. ("MFB") filed a response brief opposing the Motion to Amend ("Response") [ECF No. 56].

## PRELIMINARY STATEMENT

As Action Care acknowledged in the Motion to Amend, amendments to pleadings may be denied for one of a handful of reasons. [ECF No. 53 at 3–4]. This includes the futility of the contemplated amendments. [*Id*.]. MFB's Response focuses solely on futility as the reason to deny the Motion to Amend, so Action Care construes MFB's Response to mean that none of the other factors could serve to deny leave to amend.[1] MFB also agrees in its Response that an amendment is futile if the proposed claims would not survive a motion to dismiss. [ECF No. 56 at 2]. Therefore, the Amended Counterclaims must be assessed to determine whether they would be subject to dismissal pursuant to Rule 12(b)(6).

MFB generally states the correct standard for 12(b)(6) motions but omits a couple important aspects. First, the Court must accept the factual allegations in the Amended Counterclaims as true, granting Action Care "the benefit of every reasonable inference that may be drawn from those allegations." *Williamson v. Curran*, 714 F.3d 432, 435 (7th Cir. 2013). Second, the extent of information that the Court may consider at this stage is limited to the allegations set forth in the Amended Counterclaims, documents that are attached to the Amended Counterclaims, documents that are central to the Amended Counterclaims and are referred to

---

[1] Action Care also notes that MFB does not present any new arguments objecting to any of Action Care's prior claims, which the Court had permitted to survive. [*See* ECF. No. 35; ECF No. 50]. Similarly, MFB does not object to the limited amendments to the answer and affirmative defense portions of the Amended Counterclaims.

therein, and "information that is properly subject to judicial notice." *Id*. at 436. Once the Court evaluates the permissible information and construes all well-pleaded allegations in a light most favorable to Action Care, it will become clear that both of Action Care's proposed new claims must survive. Further, Action Care has presented certain materials and the rationale for why those materials are properly subject to judicial notice. If the Court agrees, then it would be entirely appropriate for the Court to consider the materials at this stage of the litigation.

## ARGUMENT

### I.      Action Care's proposed claim for declaratory relief is not futile.

According to MFB, "Action Care's argument to Amend the Sixth Claim for Relief is frivolous." [ECF No. 56 at 4]. MFB's "support" for this incendiary statement is, at best, floundering. For the reasons below, Action Care's sixth claim for relief is not futile.

### a.   The Federal Circuit's *Great Concepts* ruling is not binding on the Court.

MFB accuses Action Care of attempting to mislead the Court by "[i]gnoring the law" and citing the dissent in a recent Federal Circuit case as "binding precedent." [ECF No. 56 at 3–4]. This "law" that Action Care purportedly misstates is the majority opinion in *Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333 (Fed. Cir. 2024). Not for the first time in this litigation, MFB is mistaken. The Federal Circuit's decisions – even those from the majority – are not binding on district courts for trademark matters. *Safety Socket LLC v. Relli Tech., Inc.*, No. 18-CV-6670, 2023 WL 3455117, at *4 n.4 (N.D. Ill. May 15, 2023) (citing *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428 (7th Cir. 1985)). Action Care never alleges otherwise.

To be clear, Action Care certainly does not dispute the Federal Circuit's significant experience with intellectual property laws or that its decisions can serve as persuasive authority. *See Safety Socket*, 2023 WL 3455117, at *4 n.4. Courts in this district have also been deferential to the USPTO's Trademark Trial and Appeals Board ("TTAB"). *DRL Enters., Inc. v. N. Atl.*

2

*Operating Co., Inc.*, 301 F. Supp. 3d 824, 838 (N.D. Ill. 2018); *RGB Plastic, LLC v. First Pack, LLC*, 184 F. Supp. 3d 649, 657 (N.D. Ill. 2016) (collecting cases). Neither the Federal Circuit's nor TTAB's decisions, however, are binding on district courts. *Safety Socket*, 2023 WL 3455117, at *4 n.4; *DRL Enters.*, 301 F. Supp. 3d at 838. Given that one of the three circuit judges deciding the *Great Concepts* case felt compelled to file a detailed dissent, Action Care believes it is appropriate to provide both positions for the Court's consideration. Action Care did so, correctly distinguishing between the majority opinion and the dissenting opinion. [*See* ECF No. 53 at 5].

As the dissent noted, it is a matter of fact that the USPTO's and TTAB's policy since at least the 1970s had been to cancel registrations when a declaration for incontestability contained fraudulent statements. *See Great Concepts*, 90 F.4th at 1348–49 (REYNA, J., *dissenting*). The two-judge majority in *Great Concepts* deemed that to be an inappropriate stance. *See* 90 F.4th at 1339. Unlike with decisions from the Seventh Circuit, the Court is not obligated to follow the majority opinion in *Great Concepts*. The Court may instead find Circuit Judge Reyna's dissent more convincing, in which case the Amended Counterclaims provide the avenue for the Court to cancel the PROOV Registration based on MFB's fraudulent Section 15 submission.

Action Care concedes that, if the Court elects to side with the *Great Concepts* majority, an amendment to add a claim would be futile if it amounted to a petition for cancellation solely on the basis of MFB's fraudulent statements in the Section 15 portion of the Combined Declaration. That is not, however, the extent of Action Care's proposed sixth claim for relief. Instead, Action Care pleads that, <u>in the alternative</u>, the Court should provide declaratory relief that the PROOV Registration's incontestability status be revoked – a position endorsed by the *Great Concepts* majority. *See* 90 F.4th at 1343–44. As discussed in more detail below, Action Care's approach to pleading its sixth claim for relief conforms to all pleading requirements.

3

**b. Action Care properly seeks declaratory relief based on MFB's willful false statements to the USPTO.**

A party may plead two or more statements in the alternative in a single count. FED. R. CIV. P. 8(d)(2). "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id*. Consistency is not required. FED R. CIV. P. 8(d)(3). "Pleadings must be construed so as to do justice." FED. R. CIV. P. 8(e). Action Care has chosen to set out two alternative statements in a single count. [*See* ECF No. 53-1 at 24 ¶¶ 77–78]. Yes, cancellation-for-fraud and revocation solely of incontestable status are not entirely consistent with each other. The Federal Rules of Civil Procedure, however, permit Action Care to do so. If the Court determines that the revocation of incontestability is the sole sufficient aspect of the declaratory relief sought by Action Care, then the sixth claim is nevertheless sufficiently pleaded, regardless of any inconsistencies or insufficiency with respect to the cancellation-for-fraud claim.[2]

By now, it should be amply clear that there is an "actual controversy" between Action Care and MFB, such that Action Care may seek declaratory relief pursuant to 28 U.S.C. § 2201. A trademark cancellation claim is effectively a type of declaratory judgment action, in that the claimant petitions a court to exercise its authority under 15 U.S.C. § 1119 to cancel a registration. The Court's authority under that provision of the Lanham Act, however, is not limited solely to cancellation of a trademark pursuant to 15 U.S.C. § 1064. The Court may also "rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. Action Care's sixth claim for relief requests that the Court cancel the PROOV Registration due to MFB's fraudulent statements in the Combined Declaration or, in the alternative, rectify the USPTO's register to eliminate MFB's fraudulently obtained incontestability status for the PROOV Registration.

---

[2] Claims alleging fraud must be stated with sufficient particularity about the circumstances constituting fraud. FED. R. CIV. P. 9(b). MFB does not argue that Action Care has failed to plead the sixth claim for relief with sufficient particularity, but regardless, Action Care has met its burden. [*See* ECF No. 53-1 at 22–24 ¶¶ 68–80].

MFB nevertheless argues that Action Care has failed to sufficiently seek relief even for revocation of incontestability of the PROOV Registration. MFB seeks to label Action Care's Motion to Amend as a "motion for declaratory relief" or a motion subject to the summary judgment standard. MFB seemingly forgets that the Court has already granted Action Care "leave to file motion regarding incontestability." [ECF No. 52]. The Motion to Amend is that motion. Taking into account not just Action Care's allegations, but also the documents attached and incorporated by reference into the Amended Counterclaims, it becomes clear that Action Care has sufficiently pleaded the sixth claim for relief.

## II. Action Care's proposed Sherman Act claim is not futile.

In arguing for the dismissal of Action Care's proposed attempted monopolization claim under Section 2 of the Sherman Act, 15 U.S.C. § 2, MFB identifies only two elements as being potentially problematic. Action Care therefore construes an absence of arguments regarding the other elements (including existence of antitrust injury) to signify MFB's acquiescence that Action Care sufficiently pleaded those aspects. As discussed below, Action Care's allegations in the Amended Counterclaims are sufficient to survive a motion to dismiss.

### a. Action Care has sufficiently alleged that there was a dangerous probability of achieving monopoly power.

MFB deploys an entirely disingenuous argument relating to whether there was a dangerous probability of achieving monopoly power. Even though Action Care's claim is for attempted monopolization, MFB tries to make it seem as if MFB actually needed to have succeeded in securing a monopoly for the claim to survive. [*See* ECF No. 56 at 9–10]. MFB's ineptitude at ultimately creating a monopoly does not change the fact that MFB attempted to accomplish the task. *See Lektro–Vend Corp. v. Vendo Co.*, 660 F.2d 255, 270 (7th Cir. 1981) ("[T]he Sherman Act's prohibition against attempted monopolization does not require that the attempt in fact ripen

into an actual monopoly. It is the attempt which is the offense."). "The dangerous probability should be evaluated <u>as of the time the alleged anticompetitive events occurred</u>." *G. Heileman Brewing Co. v. Anheuser-Busch Inc.*, 676 F. Supp. 1436, 1474 (E.D. Wis. 1987) (emphasis added), *aff'd*, 873 F.2d 985 (7th Cir. 1989).

When Action Care entered the relevant market in the spring of 2023, there were no other competitors except MFB. [ECF No. 53-1 at 25–26 ¶¶ 82-83, 91]. At least part of the reason for that was MFB's having filed suit against a competitor in 2020, including a copyright infringement claim. *See MFB Fertility Inc. v. Easy Healthcare Corp.*, No. 20-CV-07833, 2023 WL 2683469, at *2 (N.D. Ill. Mar. 29, 2023). The case was stayed because the parties were ordered to proceed with arbitration. *See id*. at *6. As became clear from the subsequent *Wondfo* filing referenced in the Motion to Amend, MFB had submitted a DMCA takedown notification against Easy Healthcare before proceeding with the litigation.[3] [*See* ECF No. 53 at 10 n.5]. After Action Care entered the market and was removed through MFB's conduct, Wondfo tried to do the same, only to be met with the same fate. [*Id*.]. While MFB tries to find significance in the fact that the *Wondfo* litigation ultimately settled, Action Care notes that this happened only after Wondfo in fact filed a copyright infringement counterclaim against MFB. *See* Defendant Wondfo USA Co., Ltd.'s Answer, Affirmative Defenses, and Counterclaim, *MFB Fertility Inc. v. Wondfo USA Co., Ltd.*, Case No. 1:23-cv-17000, ECF No. 27, at *31–41 (N.D. Ill. Oct. 15, 2024).

MFB is welcome to argue that Action Care's definition of the relevant market is too narrow. That does not change the fact that Action Care has provided a plausible explanation of the proposed market, and why it encompasses all reasonable substitutable products. [ECF No. 53-1 at 26–27

---

[3] Importantly, both Easy Healthcare and Wondfo were represented by the same counsel, who presumably could attest accurately about the facts pertaining to both cases, and subject to duties of candor within submissions to the tribunal.

¶¶ 91–93]. As the case law that Action Care has provided supports, such allegations are sufficient to withstand a motion to dismiss in the Seventh Circuit. [ECF No. 53 at 11].

       **b.  Action Care has sufficiently alleged that MFB engaged in predatory or anticompetitive conduct.**

MFB's arguments regarding the sufficiency of allegations about MFB's predatory or anticompetitive conduct are similarly off-base. Action Care has provided support that, in the Seventh Circuit, even a single baseless claim may constitute sham petitioning. [ECF No. 53 at 8]. Prior to filing its meritless copyright infringement claim, MFB submitted its process-abusing DMCA takedown notice. [ECF No. 53-1 at 25 ¶ 84]. That distinguishes this case from all of the other cases in which the sole alleged basis for abuse of process was the filing of a copyright infringement claim in district court. As Action Care has previously averred, MFB could have filed a copyright infringement claim seeking preliminary injunctive relief. [*See* ECF No. 32 at 10]. The Court would have denied the request, but Amazon would not have removed Action Care from the marketplace, and MFB would not have exposed itself to Action Care's counterclaims. [*Id.*].

As addressed above, prior to submitting the DMCA takedown notice against Action Care to Amazon, MFB had done so against at least one other competitor. [*See also* ECF No. 53-1 at 27 ¶ 93]. MFB was therefore well aware of the consequences of submitting such a notice, and that Amazon would proceed to remove Action Care's listing. MFB nevertheless proceeded to submit its meritless DMCA takedown notice. MFB can argue all it wants about how it was engaged in "a good faith effort to enforce non-protectable elements of a valid copyright." [ECF No. 56 at 13]. A reason why Action Care's DMCA misrepresentation and tortious interference counterclaims survived is specifically because Action Care sufficiently pleaded that MFB did not act in good faith. *See MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, 730 F. Supp. 3d 740, 752, 755 (N.D. Ill. 2024). MFB is not a paragon of a "reasonable litigant."

In an effort to make itself seem reasonable, MFB brazenly mischaracterizes the prior posture of this litigation. Action Care chose not to oppose MFB's motion to amend MFB's complaint, because Action Care believed that to be "in the interests of the most efficient adjudication of this case." [ECF. No. 24 at 1]. Action Care was explicit in its position that the amendment would still be futile and reserved all rights to assert "any potential claims and defenses," including moving for attorneys' fees. [*Id*. at 1–2]. The Court deemed it even more efficient to dismiss the copyright infringement claims in MFB's complaint and proposed amended complaint without Action Care even having to file a reply brief. As for Action Care's motion for attorneys' fees for dismissal of the copyright infringement claim, admittedly, the motion was premature. [*See* ECF No. 38]. Premature motions are denied without prejudice. *See Klessig v. Hamilton*, No. 17-CV-31-PP, 2017 WL 4797837, at *2 (E.D. Wis. Oct. 23, 2017) (denying motion "without prejudice because it is premature") (emphasis added). Whenever a final judgment is rendered in this case, Action Care's claims for attorneys' fees under 17 U.S.C. § 505 will ripen.

Finally, MFB also conveniently disregards the standard for Rule 12(b)(6) motions. Specifically, MFB incorporates correspondence between the parties' principals into its Response. [*See* ECF No. 56 at 12]. While Action Care certainly rejects any insinuation of untoward conduct by Action Care's principal Diane Krasznay, under a Rule 12(b)(6) standard, the Court cannot consider that correspondence. The communications are not referenced in the Amended Counterclaims, are not central to the Amended Counterclaims, and – unlike the materials presented for the Court's consideration by Action Care – are not appropriately subject to judicial notice. If the communications between the parties' agents are actually relevant to Action Care's proposed antitrust claim, then MFB is welcome to present the evidence at the summary judgment phase.

**III. All facts of which Action Care seeks judicial notice meet the necessary standard.**

As addressed above, Action Care's proposed claims undoubtedly survive when Action Care has the benefit of presumptions granted to the nonmovant at the 12(b)(6) stage. Separate from the question of whether the Amended Counterclaims are sufficiently pleaded, however, Action Care's requests for judicial notice seek to expedite adjudication of certain rulings. Action Care concedes that, with respect to the Court's analysis of the materials subject to judicial notice, Action Care does not have the benefit of plaintiff-friendly standards for 12(b)(6) motions. At the same time, a court may take judicial notice of matters of public record on a motion to dismiss without converting it to a motion for summary judgment. *Doherty v. City of Chi.*, 75 F.3d 318, 324 (7th Cir. 1996). In fact, judicial notice can be taken at any stage of the litigation. FED. R. CIV. P. 201(d). Judicial notice is indeed a powerful tool that should not be implemented unless a fact is beyond reasonable dispute. Action Care nevertheless avers that the Court may appropriately take judicial notice of the presented information, and MFB's Response does nothing to contradict that premise.

**a. Judicial notice is appropriate with respect to the USPTO's online records.**

Action Care has provided the proper standard for the types of materials that qualify for judicial notice. [*See* ECF No. 53 at 6]. Those materials include online records of the federal government, including USPTO records. [*Id.*]; *see also Mobility Workx, LLC v. Unified Pats., LLC*, 15 F.4th 1146, 1151–52 (Fed. Cir. 2021) (taking judicial notice of documents published on the USPTO's website). Of course, MFB was perfectly happy to ask the Court to take judicial notice of the USPTO's online records when it suited MFB's purposes. [*See* ECF No. 43 at 5 ("the Court can take judicial notice of [Action Care's trademark application for the OVUPROOF mark] pursuant to Fed. R. Evid. 201(b), which is in the Trademark Office online records.")].

Regardless of the status of Action Care's trademark cancellation counterclaim, MFB filed its Combined Declaration <u>while MFB's own trademark infringement claim was still pending</u>. The

9

required representation in the Combined Declaration is not limited to an absence of proceedings attacking a party's trademark rights. Rather, MFB represented that there was, as of November 26, 2024, an absence of any ongoing court proceeding "**involving** said rights." [ECF. No. 53-5 (emphasis added)]. Therefore, even if Action Care had never sought cancellation in the first place, MFB would have still been precluded from filing a Section 15 declaration for as long as MFB's trademark infringement claim was pending.

The fact that MFB's submission of the Combined Declaration occurred during the pendency of MFB's trademark infringement claim in this case is not subject to reasonable dispute, and the Court can accurately and readily determine that. The same can be said about the fact that MFB had actual knowledge of MFB's pending trademark infringement claim. Because the USPTO's online records are subject to judicial notice, the Court can also accurately determine that MFB represented that there was no pending proceeding involving MFB's rights in the PROOV mark, and that MFB made the representation despite an obligation to reasonably inquire as to the truth of the declarations, and subject to penalties for false statements. [ECF No. 53-5].

The USPTO granted incontestability status with the understanding that the PROOV Registration met all requirements of 15 U.S.C. § 1065. [ECF No. 53-6]. This includes the requirement that there is no proceeding involving the rights in question. *See* 15 U.S.C. § 1065(2). The USPTO is not obligated to verify whether statements made in declarations are true, and reckless disregard of truth is sufficient for classifying the statements as willful. As the TTAB noted when it issued its ruling initially cancelling the trademark at issue in the *Great Concepts* litigation:

> In matters of trademark registration and maintenance, where the USPTO relies on declarations to be complete, accurate, and truthful, we hold that reckless disregard is equivalent to intent to deceive and satisfies the intent to deceive requirement. The vast volume of trademark application and registration maintenance filings made with the USPTO is such that the agency typically cannot actively investigate the truth or falsity of individual declarations. The agency, as well as applicants and

registrants, and all who rely on the accuracy of the Registers of marks and the submissions made to the USPTO in furtherance of obtaining or maintaining registration, must be able to rely on declarations and the truth of their contents. The applicable law cannot be read to permit applicants and registrants to recklessly disregard the contents of sworn declarations and sign them without consequence for the inclusion of false statements that will be relied on by the USPTO.

*Chutter, Inc.*, No. 91223018, 2021 WL 4494251, at \*12 (T.T.A.B. Sept. 30, 2021), *overruled on other grounds*, 90 F.4th 1333. MFB would not have received incontestable status for the PROOV Registration without MFB's willful false representation.

### b. Judicial notice is appropriate with respect to dictionary definitions.

"Whether a term is generic is a question 'of linguistic usage,' and the Seventh Circuit sanctions the dictionary as a useful approach." *Tsiolis v. Interscope Recs., Inc.*, 946 F. Supp. 1344, 1352 (N.D. Ill. 1996) (quoting *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996)); *see also Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986) ("Because a generic term is one commonly used to denote the product, a common source of evidence is the dictionary."). The definition in question does not have to be the primary definition to find genericness. *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1158–59 (7th Cir. 1996). "The question is whether the term is being *used* in a common or generic sense, not whether a *particular* use represents the most common use of that term." *Id*. at 1159 (emphases in original).

MFB argues that it is "premature for the Court to adopt Action Care's proposed dictionary definitions which are subject to reasonable dispute." [ECF No. 56 at 8]. Timing-wise, it is within the Court's discretion whether dictionary definitions are appropriate for judicial notice at this stage. *Cf. Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, 529 F. Supp. 3d 927, 933 (E.D. Wis. 2021) (taking judicial notice of definitions from the Merriam-Webster's Online Dictionary in granting motion to dismiss breach-of-contract claim), *aff'd*, 33 F.4th 417 (7th Cir.

2022). In the Motion to Amend, Action Care has provided support for why it would be appropriate for the Court to do so. [ECF No. 53 at 6 n.2].[4]

Action Care presents the definitions as evidence that overrides any presumption of validity of the PROOV Registration. *See Door Sys.*, 83 F.3d at 172 ("The presumption of validity that federal registration confers evaporates <u>as soon as</u> evidence of invalidity is presented.") (emphasis added) (internal citation omitted). In contrast, while arguing that there is a "reasonable dispute," MFB does not deny the relevance of the definitions, nor does MFB mention any potential evidence that it would be able to present to contradict the dictionary. [*See* ECF No. 56 at 8–9]. MFB's argument is, essentially, "it's too early to consider the evidence." The Seventh Circuit does not require waiting until summary judgment to determine that a mark is generic. *See Mil-Mar Shoe*, 75 F.3d at 1161–62 (finding mark generic when reversing grant of preliminary injunction).

If the Court chooses to take judicial notice of the definitions, the question then becomes whether the Court deems these definitions as dispositive evidence to determine that "PROVE" or "PROOF" are generic (as opposed to descriptive) terms for tests.[5] If not, then the matter is subject to reasonable dispute and would need to be addressed at a later stage. However, if the Court determines the definitions conclusive, and that MFB's "PROOV" mark is a phonetic equivalent of

---

[4] MFB criticizes Action Care for use of footnotes in its Motion to Amend. [ECF No. 56 at 5]. Notably, the Motion to Amend was less than 13 pages long, well below Action Care's page limit for the pleading. True, the footnote pertaining to judicial notice of dictionary definitions contains substantive arguments. [*See* ECF No. 53 at 6 n.2]. Action Care placed those arguments in the footnote because the dictionary definitions did not pertain to either of the new claims for relief in the Amended Counterclaims, but rather to the previously pleaded trademark claims (*i.e.*, MFB's trademark infringement claim and Action Care's trademark cancellation counterclaim). The placement of the argument does not, however, change the argument's merits, nor that the Court may choose to consider it. *See Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *7 (N.D. Ill. Mar. 1, 2022) ("Contrary to Chiappetta's contention, we need not disregard Kellogg's argument merely because it was made in a footnote. It is within our discretion to consider arguments made in footnotes or to deem them to be waived.") (internal citations omitted).

[5] Prior to revisions made to the Lanham Act in 1988, the Seventh Circuit regularly referred to generic terms as "common descriptive" terms, as distinguished from "merely descriptive" terms, which are now simply designated as "descriptive." *Mil-Mar Shoe*, 75 F.3d at 1157. Therefore, findings from earlier cases as to marks being deemed "common descriptive" are actually determinations that the terms were generic. *See id.*

a generic term for the parties' products, then the mark is invalid. [ECF No. 53 at 6 n.2]. Even setting aside the question surrounding phonetic equivalency (and, by extension, cancellation of the PROOV Registration), if the word "PROOF" is deemed generic, then Action Care cannot have infringed on the PROOV mark by incorporating a generic term into its own mark. *See Mil-Mar Shoe*, 75 F.3d at 1159–60 ("Shonac is correct that 'Shoe Warehouse,' like 'Shoe Outlet' or 'Shoe Mart,' definitely qualifies as generic . . . As such, it would appear that Shonac's right to use the term generically in the name 'DSW Shoe Warehouse' should be unfettered."). In either instance, MFB's trademark infringement claim could then be definitively disposed, thereby promoting judicial efficiency by allowing the parties to avoid wasting their own and the Court's resources arguing over the likelihood-of-confusion element of trademark infringement. [ECF No. 53 at 6 n.2]. Furthermore, having an up-to-date federal trademark register is in the public interest. [*Id*.].

## CONCLUSION

For the reasons set forth above, both of Action Care's proposed new counterclaims would survive a motion to dismiss and therefore are not futile. The Court should therefore permit Action Care to file the Amended Counterclaims. The Court also has the authority to take judicial notice of facts that are not subject to reasonable dispute and are either generally known or are capable of accurate and ready determination through sources whose accuracy cannot be questioned. Action Care respectfully requests that the Court take judicial notice of the materials and facts that qualify in that capacity. Doing so would be appropriate procedurally and would be in the interests of justice, judicial efficiency, and the public interest.

Dated: June 11, 2025

Respectfully submitted,

ACTION CARE MOBILE VETERINARY CLINIC, LLC

By: /s/ Ilya G. Zlatkin
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Email: ilya@zce.law

*Attorney for Defendant Action Care Mobile Veterinary Clinic, LLC*