THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MFB Fertility Inc., <br><br> Plaintiff, <br><br> v. <br><br> Action Care Mobile Veterinary Clinic, LLC, <br><br> Defendant. | Case No. 1:23-cv-03854 <br><br> Dist. Judge John J. Tharp Jr. <br><br> Mag. Judge Gabriel A. Fuentes |

## ACTION CARE'S MOTION TO COMPEL DISCOVERY RESPONSES

Defendant/Counter-plaintiff Action Care Mobile Veterinary Clinic, LLC ("Action Care" or "Defendant"), by its counsel, hereby moves this Court pursuant to Rules 37 (a)(1) and 37(a)(3)(B)(iii)-(iv) of the Federal Rules of Civil Procedure to enter an Order requiring Plaintiff/Counter-defendant MFB Fertility Inc. ("MFB" or "Plaintiff") to fully respond to Action Care's First Set of Interrogatories and First Set of Requests for Production of Documents. In support of this Motion, Action Care states as follows:

**INTRODUCTION**

1. On October 4, 2025, Action Care served MFB with Action Care's First Set of Requests to Admit ("Action Care's Requests to Admit"), Action Care's First Set of Interrogatories ("Action Care's Interrogatories"), and Action Care's First Set of Requests for Production of Documents ("Action Care's Requests to Produce" and, together with Action Care's Requests to Admit and Action Care's Interrogatories, "Action Care's Requests").

2. On November 3, 2025, MFB provided answers and objections to Action Care's Requests to Admit and Action Care's Interrogatories. (*See* Declaration of Ilya G. Zlatkin, ¶ 3, Ex. A–B.) On November 5, 2025, MFB provided answers and objections to Action Care's

1

Requests to Produce. (*See id*., ¶ 3, Ex. C.) On December 4, 2025, MFB proceeded to provide certain documents that MFB deemed responsive to Action Care's Requests to Produce. (*Id*., ¶ 3.)

## ACTION CARE'S INTERROGATORIES AND REQUESTS FOR PRODUCTION

3. Action Care's Interrogatories included the following:

    a. **Interrogatory No. 13**: For the period beginning on May 1, 2022 through May 6, 2023, please provide a detailed account of the financial performance of MFB's At-Home PdG Products, including without limitation, the following: (a) the total sales revenue for MFB's At-Home PdG Products; (b) gross and net profit figures for MFB's At-Home PdG Products; (c) any financial statements or reports reflecting profits generated by MFB from MFB's At-Home PdG Products; and (d) a breakdown of costs and expenses associated with generating these profits from MFB's At-Home PdG Products.

    b. **Interrogatory No. 14**: For the period beginning on May 7, 2023 through June 2, 2023, please provide a detailed account of the financial performance of MFB's At-Home PdG Products, including without limitation, the following: (a) the total sales revenue for MFB's At-Home PdG Products; (b) gross and net profit figures for MFB's At-Home PdG Products; (c) any financial statements or reports reflecting profits generated by MFB from MFB's At-Home PdG Products; and (d) a breakdown of costs and expenses associated with generating these profits from MFB's At-Home PdG Products.

    c. **Interrogatory No. 15**: For the period beginning on June 3, 2023 through the present, please provide a detailed account of the financial performance of MFB's At-Home PdG Products, including without limitation, the following: (a) the total sales revenue for MFB's At-Home PdG Products; (b) gross and net profit figures for MFB's At-Home PdG Products; (c) any financial statements or reports reflecting profits generated by MFB from MFB's At-Home PdG Products; and (d) a breakdown of costs and expenses associated with generating these profits from MFB's At-Home PdG Products.

4. The sole difference between the three interrogatories was the time period for which the three requests pertained.

5. In addition, Action Care's Requests to Produce included a request to produce the following:

- a. **Request to Produce No. 20**: All documents referred to or relied on in connection with your answers to any of Action Care's First Set of Interrogatories served by Action Care contemporaneously herewith.

**MFB'S RESPONSES TO THE ABOVE REQUESTS**

6. MFB responded to *each* of the above interrogatories as follows:

    a. MFB objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, insofar as it seeks company-wide financial statements, cost data, or other financial information unrelated to the limited period of alleged infringement. MFB's damages are limited because following MFB's Amazon takedown notice, Action Care's "OvuProof" listing was promptly removed and Action Care has not resumed sales of that product and does not anticipate doing so at this time. As a result, and currently, any damages are confined to lost sales (based on Action Care's actual sales) arising from the brief period when the infringing listing was active. MFB further objects to the extent the Interrogatory seeks confidential and commercially sensitive information that is not relevant to the subject matter of this litigation.

7. Given MFB's objections to Interrogatories 13, 14, and 15, MFB did not provide any documents relating to the information requested in Interrogatories 13, 14, and 15.

**COMPLIANCE WITH LOCAL RULE 37.2**

8. Action Care has, through counsel, including in writing as well as during meet-and-confer telephonic discussions with MFB's counsel, requested that MFB produce the requested information at issue in this motion. Specifically, on December 22, 2025, Action Care's undersigned counsel (Ilya Zlatkin) first emailed MFB's counsel Gary Blackman regarding these matters. (Zlatkin Decl., ¶ 4.) Mr. Blackman and the undersigned then exchanged emails regarding the matter between December 22, 2025, and January 5, 2026. (*Id*. ¶¶ 4–5.) Blackman and Zlatkin then discussed the matter via telephone on January 8, 2026, without resolution. (*Id*. ¶ 6.) Zlatkin subsequently followed up with Blackman via email on January 20, 2026, mentioning additional arguments that Action Care intended to make regarding the matter. (*Id*. ¶ 7.) Blackman responded via email on the same day that Action Care's additional arguments would not sway MFB's position

with respect to the discovery dispute. (*Id*. ¶ 8.) As part of meeting and conferring, Action Care's counsel has even proposed to narrow the scope of the requested information to particular product lines and trade channels. (*Id*. ¶ 4.) Each time, MFB has refused to produce any portion of such requested information. (*Id*. ¶¶ 4–8.)

## ARGUMENTS FOR MOTION TO COMPEL

9. For the reasons set forth below, MFB's objections to Interrogatories 13, 14, and 15 are improper, and, in addition to compelling proper comprehensive, good-faith answers to Interrogatories 13, 14, and 15, Action Care seeks to compel MFB's production of documents that would serve to support MFB's answers to Interrogatories 13, 14, and 15, as requested in Request to Produce No. 20.

10. As of the date of this Motion to Compel, the following counterclaims asserted by Action Care have survived MFB's motion to dismiss: (i) misrepresentation under Section 512(f) of the Digital Millennium Copyright Act ("DMCA"); (ii) tortious interference with prospective economic advantage; (iii) defamation *per se*; (iv) defamation *per quod*; and (v) cancellation of MFB's federal registration ("PROOV Registration") of the PROOV standard character trademark due to such mark's status as a phonetic equivalent of a generic or descriptive term for the parties' products. [*See* Dkt. 35; Dkt. 50]. In addition, Action Care has filed a motion for leave to file amended counterclaims ("Motion to Amend") to include additional counterclaims for: (vi) cancellation or revocation of incontestability status of the PROOV Registration based on misrepresentations submitted by MFB in MFB's declaration of incontestability and (vii) attempted monopolization by MFB in violation of Section 2 of the Sherman Act. [*See* Dkt. 53]. The Motion to Amend has been fully briefed with the Court since June 2025.

11. As an initial matter, MFB's responses to Action Care's Interrogatories 13, 14, and 15 seemingly suggest that MFB is the sole party that has any claim to damages whatsoever. MFB in effect argues that, because MFB's financials are not relevant to MFB's pending trademark infringement claim against Action Care, the financials are not otherwise relevant to the case. MFB seemingly chooses to ignore that these interrogatories are actually for the purpose of supporting damages recoverable under Action Care's counterclaims, rather than under MFB's trademark infringement claim.

12. As a general rule, any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case is discoverable. FED. R. CIV. P. 26(b)(1). "[C]ourts have found information bearing on potential damages relevant for purposes of discovery." *In re Subpoena to the CME Grp., Inc.*, No. 10 C 4675, 2010 WL 3998093, at *2 (N.D. Ill. Oct. 7, 2010) (collecting cases). In addition, discovery standards are the same for claims asserted by plaintiffs as for counterclaims asserted by defendants. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978) ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party."); *DeGeer v. Gillis*, No. 09 C 6974, 2010 WL 3732132, at *4 (N.D. Ill. Sept. 17, 2010) ("Under Rule 26(b)(1), Defendants are entitled to discover any non-privileged matter that is relevant to their counterclaims."). Therefore, information relevant for damages calculations on a defendant's counterclaims is just as subject to discovery as information relevant for calculation of a plaintiff's damages.

13. Furthermore, under Rule 26(b)(1), relevant information does not need to be admissible at trial in order for it to be discoverable nevertheless, so the scope of relevance for

discovery purposes is necessarily broader than for trial evidence. *Batchelor v. City of Chicago*, No. 18 CV 8513, 2020 WL 13647794, at *2 (N.D. Ill. Nov. 17, 2020). "If relevance is in doubt, courts should err on the side of permissive discovery." *Id*. (internal quotation marks omitted).

14. Action Care has five counterclaims that have survived MFB's attempts to dismiss under the Rule 12(b)(6) standard, as well as two additional counterclaims that are currently the subject of the pending Motion to Amend. As Action Care's counsel has repeatedly explained to MFB's counsel, MFB's financials are relevant for determining the ill-gotten gains derived by MFB through MFB's wrongful conduct, as alleged by Action Care. MFB's financials are also important for determining the economic loss suffered by Action Care as a result of MFB's conduct. This information is relevant for calculation of damages for at least several of Action Care's counterclaims.

15. First, for Action Care's DMCA counterclaim, if liability is found, the violator "shall be liable for <u>any damages</u>, including costs and attorneys' fees, incurred by the alleged infringer . . . as the result of the service provider relying upon such misrepresentation . . ." 17 U.S.C. § 512(f) (emphasis added.) "In drafting the statute, Congress did not limit damages to monetary loss or other forms of specific relief even though such limitations are included in other sections of the DMCA." *Signal 23 Television v. Anthony*, No. 1:17-CV-01452-SDG, 2020 WL 11206863, *3 (N.D. Ga. Sept. 1, 2020) (citing *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1156 (9th Cir. 2016)). "As a result, the damages an alleged infringer may recover under § 512(f) from 'any person' are broader than monetary relief." *Lenz*, 815 F.3d at 1156. Because "any damages" is broadly construed, such damages have been interpreted as being calculated by considering many different impacts, including lost revenues, loss of following, loss of ability to advertise and grow

6

its audience, and the value of the time and effort spent responding to issues stemming from a takedown. *See Signal 23 Television*, 2020 WL 11206863, at *3.

16. Given that Section 512(f) entitles the injured party to "any damages," that necessarily includes economic losses. In turn, under Illinois law, economic losses include not only lost profits but also diminished business value. *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 828 (N.D. Ill. 2005), *amended*, No. 01 C 9389, 2005 WL 8178971 (N.D. Ill. Sept. 8, 2005). Projection of business value can make use of the financial performance of comparable businesses and business lines in similar markets. *See* Second Amend. Arms v. City of Chicago, No. 10-CV-4257, 2020 WL 1157347, at *10 (N.D. Ill. Mar. 10, 2020). "Exact correlation is not necessary" for such calculations, "but the samples must be fair congeners." *Id*. With respect to the products at issue in this litigation, MFB's products were the most comparable to Action Care's, and the parties sold them through the same trade channel on Amazon. (After all, the similarity of the parties' respective products and trade channel is at the core of MFB's own trademark infringement claim against Action Care.) MFB's financial performance preceding Action Care's entry into Amazon's marketplace, during Action Care's existence in Amazon's marketplace, and after removal of Action Care through MFB's wrongful takedown is therefore relevant for purposes of such a calculation.

17. In addition, under Illinois law, remedies for tortious interference and defamation claims include punitive damages. *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1138 (7th Cir. 1987) (punitive damages available as remedy for defamation claims under Illinois law); *In re Haas*, 36 B.R. 683, 692 (Bankr. N.D. Ill. 1984) (under Illinois law, "punitive damages may be awarded in connection with the tort of intentional interference with prospective economic advantage"). A party does not need to have specifically requested punitive

damages in a pleading, as long as the facts alleged in the pleading are sufficient to support a punitive damages award. *Thuet v. Bd. of Educ. of City of Chicago*, No. 20 C 1369, 2022 WL 17098223 (N.D. Ill. Nov. 21, 2022) (collecting cases).

18. When punitive damages may be awarded, the wrongdoer's "net worth and pecuniary position is directly relevant." *Cripe v. Leiter*, 291 Ill. App. 3d 155, 161, 683 N.E.2d 516, 520 (1997); *see also*, *Koehler v. Packer Grp., Inc.*, 2016 IL App (1st) 142767, ¶ 106, 53 N.E.3d 218, 253 ("Evidence of the individual defendants' financial status was certainly relevant to an award of punitive damages in this case."). This makes the wrongdoer's financial information admissible at trial and therefore discoverable under Rule 26(b)(1) of the Federal Rules of Civil Procedure. *Challenge Aspen v. King World Prods. Corp.*, No. 00 C 6868, 2001 WL 1403001, at *3 (N.D. Ill. Nov. 9, 2001); *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 322, 324 (N.D. Ill. 2010) ("Since evidence of a defendant's wealth may be admissible at trial, as it relates to punitive damages, courts have allowed the discovery of financial information on those grounds."), *aff'd*, 654 F.3d 748 (7th Cir. 2011). Indeed, the Seventh Circuit has determined that a court "***must*** first gauge the financial position of the wrongdoer" before it can gauge the award of punitive damages. *Douglass v. Hustler Mag., Inc.*, 769 F.2d 1128, 1145 (7th Cir. 1985) (emphasis added).

19. Finally, while the Court has not yet ruled on the Motion to Amend, discovery may still cover information relevant for Action Care's proposed counterclaims, which arise from the same common nucleus of operative facts. *See Oppenheimer Fund*, 437 U.S. at 351 ("[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.") (internal citations omitted).

20. "The antitrust laws were enacted for the protection of competition, so the injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *In re Surescripts Antitrust Litig.*, No. 19-CV-06627, 2024 WL 4851539 (N.D. Ill. Nov. 21, 2024) (THARP, J.) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488–89 (1977)) (cleaned up). One effect resulting from MFB's anticompetitive conduct is an increase in MFB's revenues and valuation resulting from having one less competitor in the marketplace. MFB's financial performance after the anticompetitive conduct is therefore relevant for calculating Action Care's antitrust injury. Action Care's Interrogatory No. 15 seeks to ascertain such effects from MFB's anticompetitive activity.

21. Similarly, "damages in antitrust cases are often calculated by showing the before-and-after effect of a defendant's anticompetitive conduct: thus, a plaintiff is entitled to discovery for some period before the defendant's anticompetitive conduct allegedly began." *IsoNova Technologies LLC v. Ovainnovations, LLC*, 2021 WL 7185073, at *1 (N.D. Iowa Oct. 8, 2021), *quoted by*, *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21 C 305, 2023 WL 4181198 (N.D. Ill. June 26, 2023). Courts in this District have allowed for a look-back period of two years from the time of the anticompetitive conduct. *See, e.g.*, *In re. Outpatient Med. Ctr.*, 2023 WL 4181198, at *5. Here, through Interrogatories No. 13 and No. 14, Action Care requested MFB's financials for barely over one year from the time that Action Care entered the market and for the roughly three-week period during which Action Care was in the market.

22. Action Care's Request to Produce No. 20 properly seeks production of documents that MFB would use to respond to Action Care's Interrogatories No. 13, 14, and 15. *See Porter v. Casino Queen, Inc.*, No. CIV. 09-24-WDS, 2009 WL 4823925, at *2 (S.D. Ill. Dec. 10, 2009)

(rejecting respondent's objection that a request to produce "documentation relied upon in responding to interrogatories" is overly broad and unduly burdensome).

23. For all of the above reasons, comprehensive, good-faith responses and document production are required from MFB.

**WHEREFORE**, Action Care respectfully requests that the Court grant Action Care's Motion and order MFB (i) to provide complete responses to Action Care's First Set of Interrogatories and First Set of Requests for Production of Documents, and (ii) to furnish all requested documents and supplemental answers to interrogatories, within seven (7) days.

Dated: February 13, 2026

Respectfully submitted,

**ZLATKIN CANN ENTERTAINMENT**

By: /s/ *Ilya G. Zlatkin*
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Tel: (312) 809-8022
Fax: (312) 809-6918
ilya@zce.law

*Attorney for Defendant/Counter-plaintiff Action Care Mobile Veterinary Clinic, LLC*