**THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MFB Fertility Inc., | |
| Plaintiff, | Case No. 1:23-cv-03854 |
| v. | |
| Action Care Mobile Veterinary Clinic, LLC, | Dist. Judge John J. Tharp Jr. |
| Defendant. | Mag. Judge Gabriel A. Fuentes |

<u>**ACTION CARE'S MOTION FOR COURT APPROVAL TO USE SKRIBE.AI FOR
DEPOSITIONS AND TO COMPEL DEPOSITION OF DR. AMY BECKLEY USING
SKRIBE.AI**</u>

Defendant/Counter-plaintiff Action Care Mobile Veterinary Clinic, LLC ("Action Care" or "Defendant"), by its counsel, hereby moves this Court ("Motion") to approve the use of the software Skribe.AI ("Skribe") for purposes of conducting depositions in this case and to compel Plaintiff/Counter-defendant MFB Fertility Inc. ("MFB") to cause MFB's founder, Dr. Amy Beckley ("Beckley"), to participate in a properly noticed deposition using such software on June 22, 2026 ("Beckley Deposition"), as follows:

**INTRODUCTION**

1. In the fall of 2025, during a phone conversation between MFB's counsel Gary Blackman ("Blackman") and Action Care's counsel Ilya Zlatkin ("Zlatkin"), the parties agreed to conduct depositions using videoconferencing software. Since then, the parties have been generally in agreement over the use of videoconferencing software for depositions.

2. As Action Care sought to schedule the Beckley Deposition, Action Care had to make repeated requests regarding the availability of Beckley and MFB's counsel. (Declaration of Ilya G. Zlatkin, ¶ 6, Ex. A.) Without having received any meaningful response regarding the matter from MFB's counsel between April 8, 2026, and May 16, 2026, Action Care, through Zlatkin,

1

noticed the Beckley Deposition for June 9, 2026. (*Id.*, ¶ 4, Ex. A.) At that point, MFB's counsel Patrick Moran ("Moran") informed Zlatkin of Moran's lack of availability on that date, and the parties' respective counsel agreed to schedule the Beckley Deposition for June 22, 2026. (*Id.*, ¶ 5.) Zlatkin proceeded to send MFB's counsel an amended notice of deposition on May 20, 2026. (*Id.*) In the amended notice for the Beckley Deposition, Action Care made clear its intended use of Skribe for purposes of conducting the Beckley Deposition – an intention that Zlatkin had first stated to MFB's counsel as early as May 1, 2026. (*Id.*, ¶¶ 3, 5.)

3.      Skribe (https://skribe.ai/) is a digital court reporting company that uses human digital reporters to create the deposition record. It also provides its customers with artificial intelligence analytics.

4.      Around the same time as the scheduling of the Beckley Deposition, the parties also proceeded to schedule the deposition of Action Care's principal, Diane Krasznay ("Krasznay Deposition"). The parties, through counsel, initially agreed to conduct the Krasznay Deposition on June 3, 2026. (Zlatkin Decl., ¶ 12.) Moran's assistant proceeded to send out a link for the deposition, which would seemingly be conducted using the Remote Counsel platform (https://remotecounsel.com/).

5.      Remote Counsel describes itself as "an integrated technology solution designed for Court Reporters."

6.      On May 22, 2026, Blackman expressed concern about Action Care's use of Skribe and Skribe's functionalities. (Zlatkin Decl., ¶ 7, Ex. B.)

7.      Zlatkin proceeded to reach out to representatives of Skribe to obtain responses to Blackman's list of concerns. (*Id.*, ¶ 8.) As verified by Zlatkin through communications with Skribe's representatives (and as provided by Zlatkin to Blackman), Skribe does not use generative

AI to create the official record. Skribe's deliverables include a video recording, a real-time rough transcript, and a final certified transcript, with certification by a commissioned notary digital reporter. Depositions are recorded via Zoom with a Recall backup recording. Deposition materials are stored using Amazon Web Services (AWS) and Box. Optional AI analytics (if used) operate through Anthropic's enterprise API, do not create or alter the record, and are not part of the official proceedings. Only the ordering client has access to the deliverables through Skribe's platform (with other parties able to purchase copies). Skribe is SOC 2 and HIPAA compliant with certification in progress, and it does not analyze, store, or utilize voiceprints, voice characteristics, or biometric information. (*See id.*, Ex. B.)

8.      On May 27, 2026, Zlatkin provided Skribe's responses to Blackman. (*Id.*, Ex. B) Zlatkin further requested that Blackman explain how Blackman's data privacy, maintenance, and security concerns were absent with respect to the Remote Counsel platform evidently intended to be used by MFB for the Krasznay Deposition. (*Id.*, ¶ 9, Ex. B.) Blackman did not respond to Zlatkin's question regarding Remote Counsel and instead indicated that MFB intended to object to Action Care's use of Skribe, citing continued concerns as to data privacy. (*Id.*, ¶ 10, Ex. B (correspondence from June 4, 2026).) Blackman stated, however, that Action Care "will need to seek leave of court" or Action Care could "just use a court reporter." (*Id.*, Ex. B). After Zlatkin noted that Blackman had not responded regarding the Remote Counsel question and seemed to view "the use of a court reporter as a cure-all," Blackman responded that he was "not sure why you want to fight this particular fight instead of just getting a traditional reporter." (*Id.* (correspondence from June 8, 2026).) Blackman finished by reiterating that Action Care would have to file a motion for leave to use Skribe. (*Id.*)

3

9. Meanwhile, Action Care and its counsel have been continuously deferential and flexible in the scheduling of the Krasznay Deposition. For example, on the evening of June 1, 2026, less than 38 hours before the scheduled start of the Krasznay Deposition, Moran informed Zlatkin that Moran had a conflict and therefore needed to reschedule the Krasznay Deposition. (Zlatkin Decl., ¶ 13, Ex. C.) On June 2, 2026, Zlatkin asked Moran why the Krasznay Deposition needed to be rescheduled despite the fact that Blackman was seemingly available to conduct the Krasznay Deposition on the initially scheduled date, even if Moran was not. (*Id.*, ¶ 13) Moran informed Zlatkin that it was Moran's deposition. (*Id.*)

10. During the same discussion, Zlatkin asked Moran whether Moran, who had indicated that he was in charge of MFB's depositions, actually objected to Action Care's use of Skribe. (*Id.*) Zlatkin indicated to Moran that Action Care would view it as a sign of good faith in rescheduling the Krasznay Deposition if MFB did not object to Action Care's use of Skribe. (*Id.*) Moran stated to Zlatkin that he would speak with Blackman regarding the matter. (*Id.*)

11. Action Care and Zlatkin agreed on June 2, 2026, to reschedule the Krasznay Deposition for June 15, 2026, in deference to Moran's scheduling conflicts, and with the understanding that Moran was the driving force behind depositions on MFB's side. (*Id.*)

12. Nevertheless, Blackman still proceeded to continue objecting to Action Care's use of Skribe, as set forth above.

13. From Action Care's perspective, Skribe is a platform that would enable Action Care and Action Care's counsel to leverage technology in a cost-efficient manner, while still complying with all professional and ethical requirements with respect to the Beckley Deposition, as well as with all applicable laws, including the Federal Rules of Civil Procedure.

4

**COMPLIANCE WITH LOCAL RULE 37.2**

14.     As evidenced through the attached declaration of Zlatkin and incorporated correspondences, Action Care has satisfied the meet-and-confer requirement of Local Rule 37.2.

15.     In addition to the attached correspondences, in the first half of June 2026, Zlatkin has had phone conversations with Moran, seeking to understand whether Moran – who is seemingly in charge of depositions – cosigns Blackman's objections to Action Care's use of Skribe. (Zlatkin Decl., ¶¶ 13, 15.) Moran has not expressed objections to Action Care's use of Skribe but has been deferential to Blackman in Blackman's making of such objections. (*Id*.)

16.     Action Care, through Zlatkin, has repeatedly sought to avoid having to waste the parties' and the Court's resources in the preparation and filing of this Motion but at this point believes that MFB is being obstructionist in its continued and baseless objection to Action Care's use of Action Care's preferred deposition platform.

**ARGUMENT**

17.     In its standing order for civil cases,[1] the Court encourages the use of videoconferencing software for purposes of conducting depositions. In the standing order, the Court references Judge Gilbert's rulings in *In re Broiler Chicken Antitrust Litigation*, No. 1:16-CV-08637, 2020 WL 3469166 (N.D. Ill. June 25, 2020) ("*Broiler Chicken*"), as well as Docket Entry 3729 from *Broiler Chicken*, setting forth a protocol for depositions conducted via videoconference ("*Broiler Chicken* Protocol").

18.     Action Care notes that, while the *Broiler Chicken* Protocol presumes the use of a court reporter, the *Broiler Chicken* Protocol was developed almost six years ago in July 2020, and

---

[1] Accessible at
https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/Fuentes/Standing%20order%20for%20civil%20cases%20beofre%20Magistrate%20Judge%20Fuentes%20with%20appendix.pdf.

that nothing in Judge Gilbert's opinion or the *Broiler Chicken* Protocol prohibits the use of nonstenographic means to conduct a deposition.

19. Indeed, *Broiler Chicken* could not possibly be construed as prohibiting the omission of court reporters from depositions. The Federal Rules of Civil Procedure explicitly account for the potential of depositions being conducted through nonstenographic means. *See* FED. R. CIV. P. 30(b)(3)(A) ("Unless the court orders otherwise, testimony may be recorded by audio, audiovisual, **or** stenographic means.") (emphasis added). Furthermore, Rule 30(b) was explicitly updated so that "parties will be authorized to record deposition testimony by nonstenographic means without first having to obtain permission of the court or agreement from other counsel." FED. R. CIV. P. 30(b) advisory committee's note to 1993 amendment. In fact, to the extent that a party believes that it is inappropriate to conduct a deposition without a court reporter, it is that objecting party's obligation to file a motion to that effect. *See id.* ("***Objections*** to the nonstenographic recording of a deposition, when warranted by the circumstances, can be presented to the court under Rule 26(c).") (emphasis added).

20. In fact, Judge Gilbert's opinion in *Broiler Chicken* acknowledges that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." 2020 WL 3469166, at *1 (quoting FED. R. CIV. P. 1).

21. Action Care believes that Skribe implements many of the same types of features as those used by court reporting companies, such as, for example, court reporting companies using Remote Counsel. Insofar as questions arise relating to the use of court reporters, the sole difference in using Skribe is that Skribe uses a notary public rather than a court reporter to administer audiovisual depositions.

6

22. Illinois law explicitly empowers notaries public to swear in deponents. *See* 5 ILCS 255/2 (enumerating who may administer oaths and take depositions in Illinois, including notaries public); 5 ILCS 312/6-101 (defining "notarial act" to include taking an acknowledgment, administering an oath or affirmation, taking a verification upon oath or affirmation, and witnessing or attesting a signature).

23. For purposes of remote depositions, the deposition is deemed to take place where the deponent is located. FED. R. CIV. P. 30(b)(4) (for purposes of depositions taken by remote means, "the deposition takes place where the deponent answers the questions."). Action Care acknowledges that MFB is based in Colorado and, to Action Care's knowledge, Beckley is a resident of Colorado. Colorado law also places notaries on equal footing with court reporters in administering the oath for deponents. *See* Colo. Rev. Stat. § 24-12-103(1)–(2) (listing notaries public as having the power to administer oaths or affirmations to witnesses, as well as taking affidavits and depositions).

24. As evidenced in Blackman's email correspondence, Blackman's objections to Action Care's intention to use Skribe are based solely on Action Care's intention to avoid the use of a court reporter, rather than any genuine data privacy, maintenance, or security concerns. *See* Zlatkin Decl., Ex. B (correspondence between June 4, 2026 and June 8, 2026). Blackman's objection explicitly contradicts the Federal Rules of Civil Procedure.

25. Meanwhile, to the extent that Blackman raised any concerns about Action Care's use of Skribe's artificial intelligence features, Action Care believes that the use of such features is proper.

26.     The Court's standing order for civil cases incorporates the Illinois Supreme Court's policy on artificial intelligence use effective January 1, 2025 ("AI Policy").[2] While flagging potential risks with using artificial intelligence, including with respect to privacy and confidentiality, the AI Policy "[e]mbrac[es] the advancements of artificial intelligence (AI)" and acknowledges that "[t]he integration of AI with the courts is increasingly pervasive, offering potential efficiencies and improved access to justice." The Illinois Supreme Court's AI Policy further states that "[t]he use of AI by litigants, attorneys, judges, judicial clerks, research attorneys, and court staff providing similar support may be expected, should not be discouraged, and is authorized provided it complies with legal and ethical standards."

27.     Action Care wishes to make use of Skribe's additional AI features. This will enable Action Care to leverage technology in a manner that helps at least partially ameliorate the disparity in resources of the parties. Action Care notes that, during this litigation, MFB has had six different attorneys appear on its behalf, including, at one time during this litigation, five attorneys simultaneously. Meanwhile, throughout this litigation, Action Care has had a single attorney, Zlatkin. Despite this disparity, Action Care has been successful in securing favorable rulings regarding the merits of this case. [*See* ECF No. 35; ECF No. 50]. This has been made possible due to Action Care's counsel's conscientious leveraging of ethically compliant technology during the case in a cost-efficient manner. Action Care's intended use of Skribe is another example of Action Care's counsel's intentions to do the same.

28.     Action Care's counsel has carefully reviewed the Illinois Supreme Court's AI Policy, has corresponded with Skribe's representatives relating to data security, and has assessed the same with respect to the protective order in this case. Action Care's counsel believes that the

---

[2] Available at https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/e43964ab-8874-4b7a-be4e-63af019cb6f7/Illinois%20Supreme%20Court%20AI%20Policy.pdf.

use of Skribe's artificial intelligence features will comport with all applicable rules and counsel's obligations.

29.     Skribe has previously been used by parties in other federal courts for similar purposes. *See, e.g.*, Defendant David Walls-Kaufman's Motion in Limine to Exclude Testimony of Plaintiffs' Expert Witness Dr. Patrick J. Sheehan, *Smith v. Kaufman*, Case No. 1:21-CV-02170 (FYP), ECF No. 86, at *2–3 (D.D.C. May 16, 2025) (providing links to relevant portions of depositions recorded using Skribe); Non-Stenographic Videotaped Deposition of Fernando Techy, M.D., Volume 1 of 1, July 30, 2024, *Ledesma v. Canty*, No. 4:23-CV-01983, ECF No. 34-7 (S.D. Tex. Oct. 4, 2024) (deposition transcript created using Skribe).

30.     Action Care believes that Blackman's continued objections to Action Care's intended use of Skribe is obstructionist, seeks to unnecessarily create hurdles and impose burdens on Action Care and Action Care's counsel, and is not driven by any genuine concern over data privacy.

**WHEREFORE**, Action Care respectfully requests that the Court grant Action Care's Motion, permit Action Care's use of all features made available by Skribe for all depositions, and compel MFB to cause Beckley's participation in the Beckley Deposition, as noticed by Action Care. Action Care further respectfully requests that the Court assess sanctions against MFB for forcing Action Care to file this Motion, in accordance with Rule 37.

Dated: June 13, 2026

Respectfully submitted,

**ZLATKIN CANN ENTERTAINMENT**

By: /s/ *Ilya G. Zlatkin*
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Tel: (312) 809-8022
Fax: (312) 809-6918
ilya@zce.law

*Attorney for Defendant/Counter-plaintiff Action Care Mobile Veterinary Clinic, LLC*

10