**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MFB Fertility Inc., | |
| Plaintiff, | Case No. 1:23–cv–03854 |
| v. | Hon. John J. Tharp, Jr. |
| Action Care Mobile Veterinary Clinic, LLC, | Hon. Gabriel A. Fuentes |
| Defendant. | |

**BRIEF OF *AMICI CURIAE* U.S. LEGAL SUPPORT, INC.,
ESQUIRE DEPOSITION SOLUTIONS, VERITEXT, LLC,
<u>AND MAGNA LEGAL SERVICES</u>**

## INTERESTS OF THE *AMICI*

U.S. Legal Support, Inc., Esquire Deposition Solutions, LLC, Veritext, LLC, and Magna Legal Services (collectively, "Amici") are among the nation's leading providers of deposition and litigation support services, including throughout Illinois.[1] They collectively furnish a broad range of deposition reporting services, including stenographic court reporting, transcription services, and, where legally authorized, non-stenographic deposition recording and transcript preparation performed by qualified and certified professionals. Amici compete vigorously in the marketplace with one another and with the provider at issue in this case, Skribe.AI. Amici nonetheless share a common interest in the proper interpretation and application of the Federal Rules of Civil Procedure governing record transcription and preparation.

The Court invited amicus briefing, seeking input from interested parties regarding Action Care Mobile Veterinary Clinic, LLC's motion to approve the use of Skribe.AI to record deposition testimony non-stenographically. Dkt. 106; *see also* Dkt. 103.[2] The resolution of the issue presented here extends beyond the interests of any individual market participant, bearing directly on the continued availability of recording methods that the Federal Rules expressly authorize and that litigants, attorneys, and courts have long relied upon in federal practice. Amici thus submit this brief to assist the Court by providing industry perspective regarding the reliability, accuracy, and procedural integrity of non-stenographic deposition recording methods. Based on their extensive experience administering and preserving testimony in countless proceedings nationwide, Amici are well positioned to explain that modern non-stenographic recording methods—when conducted

---

[1] No party's counsel authored any part of this brief. No person or entity, other than Amici and their counsel, paid for the brief's preparation and submission.

[2] To be clear, Amici take no position on the merits of the parties' claims and defenses. Amici simply wish to assist the Court's decision making with respect to the reliability of non-stenographic deposition recording and transcript preparation services.

by notary publics in accordance with the Federal Rules and applicable professional standards—produce an accurate, reliable, and trustworthy record of witness testimony. Recognizing these methods as comparable and competent substitutes for stenographic recordation is consistent with the Federal Rules and their longstanding technology-neutral approach to preserving the record.

## INTRODUCTION

Non-stenographic deposition recording produces a reliable and trustworthy record of witness testimony when conducted pursuant to established professional protocols and the safeguards prescribed by the Federal Rules. While the term "non-stenographic" encompasses a range of recording methods that differ materially in their procedures and safeguards, the methods employed by Amici share common characteristics that ensure the integrity of the record and distinguish them from other forms of electronic recording.

Amici's digital reporting services are conducted by trained, qualified professionals commissioned as notary publics. These professionals are physically present during the deposition and perform most of the same essential functions traditionally entrusted to licensed stenographic reporters. They administer oaths, manage and monitor the recording process, mark exhibits, ensure the orderly preservation of testimony, and prepare or oversee the preparation of the transcript using established computer-assisted transcription technology. Consistent with industry standards, Amici require their digital reporters to maintain their notary public commission, to hold certifications issued by independent credentialing organizations, and to adhere to rigorous professional and ethical standards governing the creation and certification of deposition transcripts.

Stenographic and non-stenographic recording methods thus both involve proceedings supervised by trained professionals and authorized methods of capturing the spoken word. Both methods preserve testimony under oath, subject to the procedural safeguards established by Rule 30, and reduced to a certified transcript through the work of qualified professionals. The main

difference lies in the recording technology employed. But professional non-stenographic methods share the same commitment to accuracy, impartiality, and the integrity of the resulting record.

That understanding is reflected in the text and spirit of the Federal Rules. For instance, Rule 30 expressly authorizes depositions to be recorded by "audio, audiovisual, or stenographic means," and prescribes safeguards designed to ensure the reliability of the record regardless of the recording medium. Fed. R. Civ. P. 30(b)(3)(A). The Rules thus adopt a technology-neutral framework, recognizing that the trustworthiness of a deposition record depends upon adherence to appropriate procedural protections rather than any single method of recording testimony.

The continued availability of professionally administered non-stenographic deposition services also serves substantial practical interests. In Illinois—like many jurisdictions—the demand for deposition services frequently exceeds the supply of licensed stenographic court reporters. Professionally supervised digital reporting has become an important means of ensuring that litigants can obtain timely depositions without unnecessary delay while preserving the accuracy and integrity required for use in federal litigation. Interpreting the Federal Rules to encompass such services advances the Rules' directive that civil proceedings be conducted in a manner that is "just, speedy, and inexpensive." Fed. R. Civ. P. 1.

As discussed below, the Court should find that professionally administered non-stenographic deposition reporting, when conducted in accordance with the Federal Rules and appropriate professional standards, is a permissible and reliable means of preserving testimony. At minimum, the Court should recognize the material distinctions among non-stenographic recording methods and make clear that any disposition of the issue in this case does not cast doubt upon professionally supervised digital reporting services—such as those provided by Amici—which have become an established and widely accepted component of modern federal discovery practice.

3

**ARGUMENT**

**I.    Non-stenographic deposition transcripts produce a trustworthy and reliable record.**

There can be no serious dispute that the value of any deposition transcript—whether stenographic or non-stenographic—lies in its accuracy. The utility of deposition testimony, and confidence in the judicial process itself, depends upon a faithful verbatim record. Recognizing that imperative, Amici's certified reporters and transcribers devote substantial professional efforts to ensure that every word is accurately preserved. Attorneys have thus increasingly chosen non-stenographic reporting services because they consistently deliver accurate transcripts, prompt turnaround times, and professional in-room reporting. *See* The Brand Consultancy, *Court Reporting Industry 2025 Trends Report* at 21, Am. Ass'n of Elec. Reporters & Transcribers (2025), available at https://aaert.org/wp-content/uploads/2025/04/2025-Court-Reporting-Industry-Trends-Report.pdf (last accessed Aug. 10, 2026).

To dispel any potential misconception that non-stenographic deposition reporting consists merely of an unattended recording later processed by artificial intelligence, Amici begin by explaining what their reporting services entail. The non-stenographic reporting methods employed by Amici produce transcripts that are just as accurate, reliable, trustworthy, impartial, confidential, and secure as those produced through stenographic reporting. As with the transition from the handwritten word to the printing press centuries ago, the difference lies not in the quality or integrity of the record, but only in the means by which it is captured. Far from relying on AI alone, Amici employ trained, certified professionals who exercise the same judgment, adhere to the same professional obligations, and are subject to the same standards of accuracy and accountability that govern stenographic reporters.

The process begins with the reporter physically present at the deposition. Every deposition conducted through Amici's reporting systems requires the continuous, hands-on participation of a

trained, competent, and certified reporter. That reporter's role extends far beyond operating recording equipment. Throughout the proceeding, the reporter performs critical real-time functions essential to preserving an accurate record, including identifying speakers during rapid exchanges, clarifying testimony when necessary, monitoring the integrity of the proceedings, and ensuring that exhibits and other components of the record are properly handled. That role is fundamental, distinguishing Amici's reporting methods from those that rely solely on unattended recording devices or subsequent automated processing. Any legal rule that fails to recognize the significance of a trained reporter's continuous presence risks sweeping within its ambit fundamentally different methods of creating the record.

Amici's reporters are not uncredentialed technicians. Amici instead require that their reporters hold certifications issued by the American Association of Electronic Reporters and Transcribers ("AAERT"), the nationally recognized credentialing organization for professionals engaged in digital reporting and transcription that maintains a Code of Ethics to ensure its professionals conform to high standards for accuracy, professionalism, confidentiality, and impartiality. *See* https://aaert.org/about/code-of-ethics/. AAERT administers rigorous certification programs for each stage of record creation, including Certified Electronic Reporter, Certified Deposition Reporter, and Certified Electronic Transcriber credentials. Those certifications verify that the holder has demonstrated the knowledge, skill, and professional competence necessary to preserve testimony accurately, impartially, and in accordance with accepted legal standards. Amici's reporters are not passive technology operators but are rather trained professionals whose qualifications have been independently established through nationally recognized certification standards. Further, Amici's reporters are all notaries public in the states in which they operate and

are therefore considered "officer[s] authorized to administer oaths either by federal law or by the law in the place of examination." Fed. R. Civ. P. 28, 30(b)(5).

Those professional qualifications are reflected throughout the reporting process itself. Reporters ordinarily arrive well before counsel to configure sophisticated multi-channel recording equipment, position dedicated microphones for each participant, and adapt the recording environment to the unique conditions of the proceeding. Achieving a complete and intelligible record requires continual professional judgment. Reporters must account for variables such as background noise, room acoustics, air-conditioning systems, and soft-spoken witnesses to ensure that every participant can be clearly heard.

The reporter's critical role becomes apparent once testimony begins. After swearing the witness, the reporter continuously monitors multiple audio channels to confirm that each channel is functioning properly, a process commonly known as confidence monitoring. The reporter simultaneously creates detailed, contemporaneous annotations identifying speakers, marking significant portions of testimony, and recording information that later assists in transcript preparation. These responsibilities become particularly important during the inevitable moments when participants speak over one another. Although deposition participants are instructed to avoid interrupting one another, experienced litigators know that overlapping speech is commonplace and unavoidable. Because Amici's systems independently capture each participant's audio, trained reporters can isolate speakers and ensure that each person's testimony is accurately attributed notwithstanding simultaneous speech. Reporters also perform the same practical functions throughout depositions that have been long associated with stenographic reporters, including clarifying the record when necessary and managing exhibits.

In these respects, Amici's reporters perform substantially the same core functions as licensed stenographic reporters. The principal distinction lies only in how the spoken testimony is initially captured. Stenographic reporters employ shorthand to create a contemporaneous record that is later translated into transcript form using computer software. Amici's reporters instead preserve testimony through professionally managed digital recording, supported by contemporaneous annotations and established transcription methodologies. Notably, stenographic reporters themselves frequently rely upon backup audio recordings during transcript preparation. Both methods thus ultimately depend upon a combination of professional judgment, recorded audio, contemporaneous notes, and technology to produce an accurate verbatim transcript.

The reporter's work continues after the deposition concludes. Certified transcription professionals prepare the transcript using the reporter's annotations, the digitally recorded testimony, and long-established computer-assisted technologies, including speech-recognition software that has been employed within the profession for decades. The resulting transcript is then carefully compared against the recorded audio, reviewed, corrected, proofread, and ultimately certified for accuracy. Each transcript is subjected to multiple layers of professional quality control before certification. The end product is a verbatim transcript prepared according to established professional standards and certified as an accurate record of the testimony.

Equally important, the reporting methods employed by Amici should not be conflated with fundamentally different approaches that may rely principally upon generative artificial intelligence or other emerging technologies. Amici's reporting systems require the continuous presence of trained, certified professionals with current notary commissions throughout the deposition and employ proven technologies that have long been accepted within the profession. Whatever processes may have been employed by other vendors—including the vendor involved in this case,

Skribe.AI—those practices neither define nor represent traditional non-stenographic reporting as performed by Amici. Accordingly, if the Court concludes that the issues presented turn upon the manner in which technology is used to create or transcribe deposition testimony, its decision should distinguish the professional reporting methods described here. At a minimum, the Court should either uphold the longstanding non-stenographic reporting practices employed by Amici or reserve any broader questions concerning materially different technologies for another case.

In the end, the methods employed by Amici unquestionably produce an accurate record through trained certified reporters, nationally recognized professional standards, rigorous quality-control procedures, and established transcription practices. There is thus no sound basis to question the reliability, accuracy, or trustworthiness of the resulting transcripts. The method of capture differs, but the integrity of the record does not.

## II. The Federal Rules of Civil Procedure allow—and expressly contemplate—-recording deposition testimony through non-stenographic means.

As discussed, the reliability of Amici's non-stenographic deposition transcription services is not up for serious debate. Nor is their importance to the efficient administration of federal discovery. For decades, the Federal Rules of Civil Procedure have expressly authorized parties to record depositions by non-stenographic means, reflecting a considered judgment that advances in recording technology can reduce the costs of discovery without sacrificing accuracy or fairness. That settled understanding should not be disturbed, particularly where parties agree to employ a non-stenographic recording method.

The Federal Rules now unequivocally authorize the use of non-stenographic methods to record depositions. *See* Fed. R. Civ. P. 30(b)(3)(A); *see also Wilson v. Olathe Bank*, 184 F.R.D. 395, 397 (D. Kan. 1999) (What is now Rule 30(b)(3) "specifically permits depositions to be recorded by nonstenographic means, unless the court orders otherwise."). Indeed, federal courts

8

have long recognized that recording depositions by non-stenographic means "is a routine practice." *Ott v. Stipe Law Firm*, 169 F.R.D. 380, 380 (E.D. Okla. 1996). This was not always the case but instead represents the culmination of a series of deliberate amendments to Rule 30, each reflecting the Advisory Committee's considered decision to encourage—not impede—the use of evolving recording technologies.

The original Federal Rules took a markedly different approach. From 1938 to 1970, the Federal Rules provided that, unless the parties agreed otherwise, depositions could only be taken stenographically by a certified court reporter. Rebecca White Berch, *A Proposal to Amend Rule 30(b) of the Federal Rules of Civil Procedure: Cross-Disciplinary & Empirical Evidence Supporting Presumptive Use of Video to Record Depositions*, 59 Fordham L. Rev. 347, 351 (1990). Because unanimous agreement was rarely forthcoming, non-stenographic depositions were correspondingly rare. *Id.* Courts likewise concluded that, absent the deponent's consent, they lacked authority to compel participation in a non-stenographically recorded deposition. *Id.* (citing *U.S. Steel Corp. v. United States*, 43 F.R.D. 447 (S.D.N.Y. 1968)).

That changed more than half a century ago when what was Rule 30(b)(4) was amended to permit depositions to be recorded by "other than stenographic means," including mechanical, electronic, and photographic recording. *See* Fed. R. Civ. P. 30, advisory committee's note to 1970 amend.; *Rice's Toyota World, Inc. v. Se. Toyota Distribs., Inc.*, 114 F.R.D. 647, 648 (M.D.N.C. 1987). The Advisory Committee explained that the amendment was intended, in part, to reduce the costs of discovery. Fed. R. Civ. P. 30, advisory committee's note to 1970 amend. At the same time, because the available recording technologies were relatively new, the Committee required parties seeking to employ novel recording methods to obtain prior judicial approval—a safeguard born

9

not of hostility to non-stenographic recording, but of prudence while those technologies matured. *Rice's Toyota*, 114 F.R.D. at 648-49.

The Rules moved further in the same direction a decade later. The 1980 amendments authorized non-stenographic recording upon the parties' stipulation, reflecting the Advisory Committee's recognition that technological innovation warranted "freer experimentation" with alternative recording methods. *Id.* at 648 (citing *Roberts v. Homelite Div. of Textron, Inc.*, 109 F.R.D. 664, 667 (N.D. Ind. 1986) & *Jahr v. IU Int'l Corp.*, 109 F.R.D. 429, 431 (M.D.N.C. 1986)). As part of that broader effort to modernize discovery practice, the Rules also authorized telephonic depositions upon court order. *Id.* Courts accordingly understood then-Rule 30(b)(4) to embody an "invitation to experiment." *Id.* (quoting *Lucas v. Curran*, 62 F.R.D. 336, 338 (E.D. Pa. 1974)).

The decisive step then came in 1993. The Advisory Committee identified the "primary change" to Rule 30 as authorizing parties to record deposition testimony by non-stenographic means "without first having to obtain permission of the court or agreement from other counsel." Fed. R. Civ. P. 30, advisory committee's note to 1993 amend. Since the 1993 amendments, "any party has had a right to use nonstenographic recording by giving prior notice to the deponent and the other parties." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2115.[3] Courts have thus "encouraged liberal interpretation of rules authorizing nonstenographic recording of discovery proceedings" and have adopted "a policy of promoting rather than blocking the practice." *Gillen v. Nissan Motor Corp.*, 156 F.R.D. 120, 122 (E.D. Pa. 1994) (collecting cases).

The evolution of Rule 30 reveals a consistent trajectory. The Federal Rules progressively expanded the use of non-stenographic recording technologies because they proved reliable and

---

[3] The Rules specifically contemplate that a party that is not satisfied with the recording method specified in the deposition notice "may designate another method for recording the testimony in addition to" the method chosen by the noticing party. Fed. R. Civ. P. 30(b)(3)(B).

economical. What started off as a carefully supervised exception became an accepted feature of ordinary federal practice and, ultimately, a right available upon notice alone. That history forecloses any suggestion that non-stenographic deposition transcripts are somehow suspect or disfavored. To the contrary, federal law affirmatively embraces their use as a legitimate and routine means of creating an accurate record of deposition testimony.[4] In fact, the U.S. Courts' Federal Court Reporting Program recognizes non-stenographic electronic recording as an appropriate method for creating the statutorily required record of in-court proceedings. *See* https://www.uscourts.gov/court-programs/federal-court-reporting-program) ("By law, each session of court and every proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, stenotype, stenomask, *or electronic sound recording equipment*.") (emphasis added).

### III. Non-stenographic deposition services are needed in Illinois to combat the effects of statewide court reporter shortages.

The continued availability of professionally administered non-stenographic deposition reporting is critical not only because it produces reliable transcripts, but because it serves the practical needs of the federal legal system throughout the country and in Illinois. As courts and litigants confront an increasing shortage of licensed stenographic reporters, professionally conducted non-stenographic reporting has become an essential complement to traditional stenography. And, more broadly, the responsible use of established technology has long advanced—rather than undermined—the efficient administration of justice.

---

[4] For example, the Middle District of Florida's Civil Discovery Handbook specifically advises that Rule 30(b) allows deposition transcripts to be prepared through "non-stenographic means without first obtaining permission of the Court or agreement of counsel." U.S. Dist. Ct. for the Middle Dist. Fla., *Middle District Discovery*, §III(D) at p. 11, https://www.flmd.uscourts.gov/civil-discovery-handbook/chapter02/d-non-stenographic-recording-of-depositions.

Non-stenographic reporting helps address a growing and well-documented shortage of licensed stenographic reporters. The profession has experienced a precipitous decline in recent years, with reports estimating a nationwide 21% decrease in stenographic reporters since 2015. *See* The Brand Consultancy, *Court Reporting Industry 2025 Trends Report* at 11, *supra*. Illinois has experienced a similar decline for more than a decade. *See* Matthew Hector, *The Looming Court-Reporter Shortage*, Ill. State Bar Ass'n (Oct. 2015), https://www.isba.org/ibj/2015/10/lawpulse/loomingcourt-reportershortage. Illinois metropolitan and rural communities alike feel the impact, but it is especially acute in areas where qualified reporters are already in short supply. *See* Collin Schopp, *Court Reporters Face Exponentially Increasing Demand and a Shrinking Pool of Professionals*, WCBU.org (Apr. 30, 2024), https://www.wcbu.org/local-news/2024-04-30/court-reporters-face-exponentially-increasing-demand-and-a-shrinking-pool-of-professionals.

The substantial time, expense, and limited educational opportunities required to obtain stenographic licensure compounds the problem, with only a small number of schools offering the necessary training. Indeed, one study estimated that the nine years from 2015 to 2024 saw an estimated 74% drop in enrollment and 42% drop in available schools for professional stenographers. *See* The Brand Consultancy, *Court Reporting Industry 2025 Trends Report* at 8, *supra*. Illinois cannot simply rely on neighboring jurisdictions to fill the gap because the shortage is national in scope. Indeed, some institutions view the court reporter shortage in Illinois so seriously that they are offering free court reporting educational opportunities to solve the problem. *See* Sam Matheny, *Illinois is Short 100 Court Reporters, but a Free Training Program Could be the Fix*, 25 News (Feb. 13, 2025), https://www.25newsnow.com/2025/02/13/illinois-is-short-100-

court-reporters-free-training-program-could-be-fix/. Non-stenographic reporting provides an important, responsible, and unquestionably necessary response to this reality.

By expanding the pool of trained, certified professionals capable of producing accurate, reliable, and admissible deposition transcripts, Amici increase the capacity of the legal system to meet the demands of litigants without compromising the integrity of the record. That increased capacity benefits courts as well as private litigants. Trial courts across Illinois have struggled to secure sufficient court reporters for hearings and trials, particularly in rural communities but increasingly in urban jurisdictions as well. For example, Wheaton and Urbana, Illinois, have both publicly reported significant difficulties stemming from the shortage of court reporters. *See* State of Illinois offering tuition-free court reporter training program in Urbana, Wheaton, Shaw Local (Feb. 8, 2025), https://www.shawlocal.com/sauk-valley/2025/02/08/state-of-illinois-offering-tuition-free-court-reporter-training-program-in-urbana-wheaton/. When qualified non-stenographic reporters assume responsibility for deposition work, they relieve pressure on the limited pool of stenographic reporters available for in-court proceedings. Professionally conducted non-stenographic reporting thus supplements—not supplants—the existing reporting profession and strengthens the judicial system's overall ability to serve courts and litigants.

Moreover, this case should not cast doubt on the benefits of non-stenographic recording methods. The history of court reporting reflects the profession's consistent adoption of technological advances that improve efficiency while preserving accuracy. As explained above, the technologies employed by Amici are neither novel nor dependent upon generative artificial intelligence operating without human oversight. They instead consist of longstanding digital-recording methods, computer-assisted transcription tools, and professional workflows that have

13

been accepted within the industry for decades and are substantially similar to those employed by stenographers.

The question therefore is not whether technology has a role in creating the record. It plainly does. Stenographic reporters themselves rely extensively on technology, including computer-assisted transcription software and backup digital recordings during transcript preparation. The relevant question is instead whether that technology is employed under the supervision of trained professionals in a manner that preserves the accuracy, reliability, and integrity of the record. Amici's reporting methods satisfy that standard.

The responsible use of proven technology advances objectives the legal system has long embraced. By expanding reporting capacity, reducing scheduling bottlenecks, improving transcript turnaround times, and increasing the availability of qualified reporting services throughout the state, professionally administered non-stenographic reporting promotes the efficient administration of justice. Those practical benefits help reduce litigation costs and improve access to the courts without sacrificing the quality or trustworthiness of the official record.

The Court's decision in this matter should therefore recognize what experience has already demonstrated: professionally conducted non-stenographic reporting is not a departure from the standards that have long governed the creation of deposition transcripts. It is an established, reliable, and increasingly indispensable means of ensuring federal courts and litigants in Illinois continue to have access to accurate records as the demands on the judicial system continue to grow.

## CONCLUSION

The non-stenographic deposition services provided by Amici produce accurate and reliable transcripts of deposition testimony while reducing both the cost and delay associated with traditional stenographic reporting. These technologies have become an established feature of modern federal practice precisely because they advance the objectives that have long animated the

14

Federal Rules of Civil Procedure, securing the just, speedy, and inexpensive determination of every action. Their widespread adoption has likewise helped mitigate the growing shortage of certified court reporters, a problem that increasingly threatens the efficient administration of justice in Illinois and across the Nation. Action Care Mobile should therefore be permitted to employ non-stenographic recording in this case, consistent with both the text and purpose of the Federal Rules.

At a minimum, if the Court resolves the issues presented on narrower grounds, it must take care not to cast doubt on the broader category of non-stenographic deposition services that are commonplace in federal litigation and critical to the continued functioning of the modern legal system. The record demonstrates that not all non-stenographic recording methods are alike. The technologies employed by Amici (discussed above) produce accurate, dependable transcripts that are fully consistent with the Federal Rules and the longstanding federal policy favoring innovation in discovery. Any opinion should therefore make clear that its reasoning neither prohibits nor calls into question the continued use of such services in cases where the Rules permit their use.

Dated: August 10, 2026

Respectfully submitted,

**U.S. LEGAL SUPPORT, INC., ESQUIRE DEPOSITION SOLUTIONS, VERITEXT, LLC,** and **MAGNA LEGAL SERVICES**, *Amici Curiae*

By: _/s/ Ian H. Fisher_
One of Their Attorneys

Ian H. Fisher
Jonathan B. Amarilio
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
(312) 527-4000
ifisher@taftlaw.com
jamarilio@taftlaw.com

*Counsel for Amici Curiae*

15

## CERTIFICATE OF SERVICE

The undersigned, an attorney, does hereby certify that he caused a true and correct copy of the foregoing to be served upon all parties by electronic mail and this Court's ECF System, this 10th day of August, 2026.

*/s/ Ian H. Fisher*
Ian H. Fisher