**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MFB FERTILITY INC., | Case No. **1:23-cv-03854** |
| Plaintiff, | **BRIEF OF AMICUS CURIAE** |
| v. | **COUNCIL FOR THE ADVANCEMENT** |
| | **OF PROFESSIONALS,** |
| ACTION CARE MOBILE VETERINARY | **TECHNOLOGY, AND UNBIASED** |
| CLINIC, LLC, et al., | **REPORTING (CAPTUR)** |
| | **IN RESPONSE TO THE COURT'S** |
| Defendants. | **SOLICITATION OF AMICUS BRIEFING** |
| | **REGARDING ACTION CARE'S** |
| | **SECOND MOTION (DKT. 103)** |

**TABLE OF CONTENTS**

INTEREST OF AMICUS CURIAE………………………………………………………..1

SUMMARY OF ARGUMENT………………………………………………………….2

ARGUMENT…………………………………………………………………………….4

    I.     DIGITAL COURT REPORTERS ARE COURT REPORTERS…………………..4

         A.    *The CERand CDR Certification Standard*……………………………...…..6

             1.    Legal procedure. …………………………………………………..6

             2.    Court reporting protocols. ………………………………………6

             3.    Digital reporting software and equipment. ………………………..6

             4.    Legal vocabulary and ethical and professional standards. ………...7

         B.    *The Distinction Between Oath Authority and Record-Making Competency*……………………………………………...……………7

    II.    CREATION OF A CERTIFIED DEPOSITION RECORD IN COMPLIANCE WITH RULES 28 AND 30 (COURT QUESTION 1)…………………………..8

             1.    The certifying officer's role in the transcript production process. ………...9

             2.    The transcript production workflow. ……………………………...9

    III.    THE DEPOSITION OFFICER AND PROFESSIONAL QUALIFICATIONS (COURT QUESTION 2)……………………………………………………....10

    IV.    THE OFFICIAL RECORD, ITS FORM, AND CERTIFICATION (COURT QUESTION 3)………………………………………………………………12

         A.    *Certification of the Recording Versus the Transcript Requires Different Professional Judgments*……………………………………………..13

         B.    *The Practical Implications of Designating the Recording as the Official Record*……………………………………………………………14

    V.    INDICIA OF RELIABILITY (COURT QUESTION 4) …………………………...14

         A.    *Accuracy Rates: AI-Assisted Transcription Versus Certified Court Reporters*………………………………………………………15

i

B. *Handling of Complex Terminology*……………………………………15

C. *Speaker Identification in Multi-Party Proceedings*………………………16

D. *Record Integrity and Chain of Custody*………………………………..17

VI. POTENTIAL SAFEGUARDS THE COURT MAY

CONSIDER……………….17

1. CER/CDR certification or equivalent credential for the digital reporter. ..18

2. Preservation of the complete recording. …………………………………18

3. Fallback mechanism. …………………………………………….…18

CONCLUSION …………………………………………………………….…19

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Co-op City Dep't of Pub. Safety*,
 21-CV-2675-DEH-BCM, 2024 WL 1478897 (S.D.N.Y. Apr. 5, 2024)……………13, 14

*Alcorn v. City of Chicago*,
 336 F.R.D. 440, 442-43 (N.D. Ill. 2020)………………………………………4, 10, 12, 13

*Black v. City of San Diego*,
 21-CV-01990-RBM-JLB, 2025 WL 1287747 (S.D. Cal. May 2, 2025)………………….9

*Heard v. Cnty. of San Bernardino*,
 5:20-CV-02335-JWH-KK, 2024 WL 4328896 (C.D. Cal. Mar. 25, 2024)………….13, 14

*In re Broiler Chicken Antitrust Litig.*,
 1:16-CV-08637, 2020 WL 3469166 (N.D. Ill. June 25, 2020)…………………….....17

*Snyder v. Lindblad Expeditions LLC*,
 2:25-CV-01753-LK, 2026 WL 145503 (W.D. Wash. Jan. 20, 2026)……………………..8

*Thompson v. Collins*,
 23-CV-00499-GKF-SH, 2025 WL 1467439 (N.D. Okla. May 21, 2025)……………….10

**Statues**

5 ILCS 255/2……………………………………………………………………..7, 10

**Rules**

Federal Rule of Civil Procedure 28………………………………………………………6, 8, 10

Federal Rule of Civil Procedure 28(a)……………………………………………...3, 7, 10

Federal Rule of Civil Procedure 30………………………………………………………6, 8, 10

Federal Rule of Civil Procedure 30(b)……………………………………………………….4

Federal Rule of Civil Procedure 30(b)(3)(A)……………………………………………...2, 4

Federal Rule of Civil Procedure 30(b)(5)(A)……………………………………………2, 4, 11

Federal Rule of Civil Procedure 30(b)(5)(A)-(C)……………………………………………….6

Federal Rule of Civil Procedure 30(f)(1)……………………………………………...7, 8, 11

iii

**INTEREST OF AMICUS CURIAE**

The Council for the Advancement of Professionals, Technology, and Unbiased Reporting ("**CAPTUR**") is a national certifying body for court reporters, transcribers, and related professionals who create official records of legal proceedings. CAPTUR was formed earlier this year via the merger of the American Association of Electronic Reporters and Transcribers ("AAERT") and the Society for the Technological Advancement of Reporting ("STAR"). Together, these organizations have spent decades developing certification programs, ethical standards, and best practices for the professionals who create, support, and protect the legal record. CAPTUR respectfully submits this brief in response to the Court's solicitation of amicus briefing (Dkt. 106, filed June 22, 2026) from interested persons and organizations, including professional court reporters or court-reporting firms, and providers of services related to the creation of a deposition record without the use of a court reporter, concerning Action Care's Second Motion (Dkt. 103).

CAPTUR's institutional mission is to establish, maintain, and advance professional standards for all individuals and technologies involved in capturing the official record of legal proceedings. For more than 30 years, CAPTUR, and one of its predecessor organizations, AAERT, have tested and certified digital court reporters to carry out the essential functions of creating the legal record. CAPTUR administers nationally recognized certification programs, including the Certified Electronic Reporter ("CER") and Certified Deposition Reporter ("CDR") credentials, and sets competency benchmarks for professionals who produce verbatim records. CAPTUR's certifications are recognized by courts, agencies, and legal professionals throughout the United States as markers of demonstrated proficiency in creating accurate, reliable, and complete verbatim records.

1

CAPTUR takes no position on the parties or the company involved, but writes to clarify several important matters regarding the use of digital audio recording as a tool by certified court reporters. CAPTUR offers its subject-matter expertise on professional standards, certification requirements, and the functional competencies that have historically ensured the accuracy, reliability, and integrity of the deposition record, so that the Court may evaluate the proposed process in light of those established benchmarks.

No party or party's counsel authored this brief in whole or in part, and no party or party's counsel contributed money that was intended to fund the preparation or submission of this brief. No person other than amicus curiae, its members, or its counsel contributed money intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

CAPTUR notes that Federal Rule of Civil Procedure 30(b)(3)(A) expressly permits nonstenographic deposition recording, and that the Federal Rules do not mandate the use of a certified court reporter for depositions. As such, CAPTUR agrees with Defendant's arguments in favor of the motion and writes to clarify several important matters regarding the use of digital audio recording as a tool by certified court reporters.

CAPTUR offers the following core observations from its institutional expertise. First, a digital court reporter *is* a court reporter and has been treated as such in federal courts for decades. The reporter administers the oath, identifies the witness, makes the statements required by Rule 30(b)(5)(A), monitors the record as it is made and intervenes in the case of any problems, keeps log notes, and carries out all necessary functions. For more than 30 years, CAPTUR, and one of its predecessor organizations, AAERT, have tested and certified digital court reporters to carry out these roles.

2

Second, CAPTUR objects in the most emphatic terms to the concept of attempting to produce a record without a human court reporter. While AI can be a powerful tool in the hands of a certified court reporter, AI platforms lack the human judgment and accountability essential to making, protecting, and preserving a quality legal record. Furthermore, nothing in the Federal Rules permits a deposition record made without a qualified officer. A recording device cannot swear a witness, and software cannot certify a transcript.

Third, the reliability of a legal record should be evaluated based on the qualifications, training, ethics, and accountability of the professional responsible for creating it, rather than the particular technology used in the process. Certain docket entries in this case describe a party's or parties' intention to use "an artificial intelligence platform in lieu of a court reporter." Nothing in the record CAPTUR has reviewed suggests any party is asking the Court to allow a record without a human officer administering the oath and reviewing the transcript, and previous filings appear to confirm that what is being proposed would not be an unmonitored recording or a transcript produced by technology absent human oversight.

Fourth, the question before the Court therefore appears to be not whether a platform or technology may replace a human professional, but what qualifications the professionals making the record should hold, and CAPTUR has provided the answer to that question for the last several decades. While being authorized to administer oaths establishes that a person may serve as an officer under Rule 28(a), a notary license does not by itself demonstrate the competencies relevant to the reliability the Court has asked about. Certification specifically designed to test those competencies, such as CAPTUR's CER and/or CDR credentials, is the strongest available evidence that a proposed officer can meet the reliability standard the Court has identified as a concern.

CAPTUR's position is that an accurate, impartial legal record depends on the qualifications of the professional making it, not the method or tools being used. CAPTUR concludes by identifying the CER and CDR credentials and the professional standards they represent as the appropriate framework for evaluating officer qualifications, and by identifying potential safeguards the Court might consider.

**ARGUMENT**

**I.      DIGITAL COURT REPORTERS ARE COURT REPORTERS**

Before addressing the Court's four specific questions, CAPTUR wishes to establish a foundational point: a digital court reporter is a court reporter and has been treated as such in federal courts for decades. The reporter administers the oath, identifies the witness, makes the statements required by Rule 30(b)(5)(A), monitors the record as it is made and intervenes in the case of any problems, keeps log notes, and carries out all necessary functions. For more than 30 years, CAPTUR, and one of its predecessor organizations, AAERT, have tested and certified digital court reporters to carry out these roles. Rule 30(b)(3)(A) expressly permits testimony to be "recorded by audio, audiovisual, or stenographic means," and nonstenographic recording has been permitted "without first having to obtain permission of the court or agreement from other counsel" since the 1993 amendments. *See* Fed. R. Civ. P. 30(b) advisory committee's note to 1993 amendment. Courts have long recognized nonstenographic methods as a legitimate means of creating the deposition record. *See, e.g.*, *Alcorn v. City of Chicago*, 336 F.R.D. 440, 442-43 (N.D. Ill. 2020) (analyzing the distinct certification functions involved in nonstenographic depositions).

CAPTUR's certification standards are not merely aspirational. They reflect existing industry practice. Other amici in this case, including some of the nation's largest providers of

4

deposition and litigation support services, have represented to this Court that they require their digital reporters to hold certifications issued by AAERT (now CAPTUR), the nationally recognized credentialing organization for professionals engaged in digital reporting and transcription. *See* Brief of Amici Curiae U.S. Legal Support, Inc., Esquire Deposition Solutions, Veritext, LLC, and Magna Legal Services (Dkt. 126) at 5 (stating that amici "require their digital reporters to . . . hold certifications issued by [AAERT]"); Brief of Amicus Curiae Remote Legal Court Reporting, LLC (Dkt. 127) at 4 (stating that Remote Legal's "personnel must be certified by the American Association of Electronic Reporters and Transcribers"). That leading market participants already require CER or equivalent certification as a condition of employment confirms that this standard is neither novel nor burdensome; it is the established baseline for professional nonstenographic deposition reporting.

The importance of certification standards is amplified by the growing shortage of licensed stenographic court reporters. The profession has experienced a significant decline nationwide, with industry data estimating a 21% decrease in stenographic reporters since 2015, a 74% drop in enrollment in stenography schools from 2015 to 2024, and the closure of nearly half of available stenography programs. *See* The Brand Consultancy, *Court Reporting Industry 2025 Trends Report* at 8, 11, Am. Ass'n of Elec. Reporters & Transcribers (2025), available at https://aaert.org/wp-content/uploads/2025/04/2025-Court-Reporting-Industry-Trends-Report.pdf. Illinois has experienced similar declines. *See* Sam Matheny, *Illinois is Short 100 Court Reporters, but a Free Training Program Could be the Fix*, 25 News (Feb. 13, 2025). As the pool of professionals conducting depositions expands to include nonstenographic reporters, the need for rigorous, nationally recognized certification standards becomes more critical—not less. CAPTUR's CER

and CDR certifications provide precisely the quality assurance framework that an expanding market requires.

### A.   *The CER and CDR Certification Standard*

CAPTUR's Certified Electronic Reporter (CER) and Certified Deposition Reporter (CDR) certifications test and certif the professional's ability to capture the record by digitally recording court and non-court proceedings, including trials, hearings, depositions, EUOs, statements on the record, aids of execution, meetings, and arbitrations. The CER exam blueprint, for example, is publicly available on CAPTUR's website and includes four knowledge domains, 31 subdomains, and 110 individual topics, including:

1. **Legal procedure.** CER candidates must demonstrate knowledge of the legal procedural framework governing the proceedings they record, including rules of civil procedure, rules of evidence, and the specific requirements governing depositions under Rules 28 and 30 of the Federal Rules of Civil Procedure.

2. **Court reporting protocols.** CER candidates must demonstrate proficiency in the protocols specific to court reporting, including administering oaths, managing the record in real time, identifying speakers, handling interruptions and overlapping speech, requesting clarification of unclear testimony, and making the on-the-record statements required by Rule 30(b)(5)(A)-(C).

3. **Digital reporting software and equipment.** CER candidates must demonstrate competency in the operation of digital recording equipment and software used to capture the record, including monitoring audio quality, managing backup recordings,

ensuring recording integrity, and using the technology tools essential to producing a reliable record.

4. **Legal vocabulary and ethical and professional standards.** CER candidates must demonstrate familiarity with legal vocabulary and adherence to ethical and professional standards that impose duties of impartiality, confidentiality, and accuracy. These ethical frameworks provide additional assurance of record integrity beyond the ministerial act of recording and transcribing.

## B.     *The Distinction Between Oath Authority and Record-Making Competency*

The Federal Rules draw a critical distinction between the *authority* to administer oaths and take depositions and the *competency* to produce a reliable verbatim record. Under Rule 28(a), any person "authorized to administer oaths" may serve as the deposition officer; but the Rules impose additional substantive obligations on that officer, including the duty to certify that "the deposition accurately records the witness's testimony." Fed. R. Civ. P. 30(f)(1). Under Illinois law, 5 ILCS 255/2, notaries public and certified court reporters have equal authority to administer oaths and take depositions. CAPTUR does not dispute this legal authority.

However, while being authorized to administer oaths establishes that a person may serve as an officer under Rule 28(a), a notary license does not by itself demonstrate the competencies relevant to the reliability the Court has asked about. The question before the Court is therefore not whether a platform or technology may replace a human professional, but what qualifications the professionals making the record should hold, and CAPTUR has provided the answer to that question for the last several decades. Certification specifically designed to test those

7

competencies, such as CAPTUR's CER and CDR credentials, is the strongest available evidence that a proposed officer can meet the reliability standard the Court has identified as a concern.

This distinction matters because Rule 30(f)(1) requires the officer to certify that "the witness was duly sworn and that the deposition accurately records the witness's testimony." When a certified court reporter (whether stenographic or digital) makes this certification, it is backed by demonstrated professional competency in evaluating transcript accuracy, tested through the rigorous certification process described above. An accurate, impartial legal record depends on the qualifications of the professional making it, not the method or tools being used.

## II.     CREATION OF A CERTIFIED DEPOSITION RECORD IN COMPLIANCE WITH RULES 28 AND 30 (COURT QUESTION 1)

The Court asked how the proposed process creates a deposition record that can or will be certified in compliance with Rules 28 and 30 of the Federal Rules of Civil Procedure. *See* Order (Dkt. 102) at 1-3 (quoting *Snyder v. Lindblad Expeditions LLC*, No. 2:25-CV-01753-LK, 2026 WL 145503, at *3 (W.D. Wash. Jan. 20, 2026)). CAPTUR offers the following observations based on its expertise in the professional standards governing record certification.

Action Care's Second Motion and the Skribe Declaration describe a process in which: (1) a digital reporter who is a commissioned notary public administers the oath; (2) the testimony is recorded audio visually; (3) a transcript is prepared through "human review by trained personnel for accuracy, completeness, speaker identification, and conformity with the audiovisual recording" (Skribe Decl. ¶ 17); and (4) the notary digital reporter certifies both the recording and the transcript. *See* Skribe Decl. ¶¶ 7-10.

8

CAPTUR notes that this process differs materially from traditional court reporter certification in the following two respects:

1. **The certifying officer's role in the transcript production process.** In traditional court reporting (whether stenographic or digital) the certifying officer is the professional who captured and managed the record. The certification "this is a true and accurate record" is thus a first-person attestation based on the officer's own professional work product. *Cf. Black v. City of San Diego*, No. 21-CV-01990-RBM-JLB, 2025 WL 1287747, at \*3 (S.D. Cal. May 2, 2025) (observing that a reporter's role "is more complex and nuanced than . . . proofreading" an automated transcript). Under the Skribe model, the certifying officer (the notary digital reporter) was present during testimony and managed recording logistics. The Skribe Declaration states that the transcript is produced through a workflow involving "human review by trained personnel" (Skribe Decl. ¶ 17), and the notary digital reporter verifies the transcript. CAPTUR observes that the strength of this certification depends on the qualifications of the professional making it. The CER and CDR certificationsare designed to verify precisely these competencies: the ability to capture, manage, and certify the record of proceedings.

2. **The transcript production workflow.** The Skribe Declaration states that the transcript is produced through a workflow involving automatic speech recognition ("ASR") technology followed by human review. Skribe Decl. ¶ 17. CAPTUR notes that AI can be a powerful tool in the hands of a certified court reporter. The critical question is whether the professionals involved in this workflow (both the digital reporter managing the deposition and the personnel reviewing the transcript) hold qualifications that

9

provide a basis for confidence in the resulting record. CAPTUR's CER and CDR certifications, which cover digital reporting software and equipment as well as court reporting protocols, are designed to test these competencies.

CAPTUR does not contend that the described process is necessarily insufficient to create a certified record under Rules 28 and 30. The Rules do not prescribe how a transcript must be produced, only that the officer must be able to certify its accuracy. *See Alcorn*, 336 F.R.D. at 442-43. However, CAPTUR submits that requiring the certifying officer to hold CER certification or an equivalent credential would provide the Court with meaningful assurance that the certification process is grounded in demonstrated professional competency rather than solely in notarial authority.

## III.   THE DEPOSITION OFFICER AND PROFESSIONAL QUALIFICATIONS (COURT QUESTION 2)

The Court asked who serves as the deposition officer. *See* Order (Dkt. 102) at 3 (citing *Thompson v. Collins*, No. 23-CV-00499-GKF-SH, 2025 WL 1467439, at *2 (N.D. Okla. May 21, 2025)). Action Care's answer is that the Skribe "digital reporter," a commissioned notary public, serves as the deposition officer. Skribe Decl. ¶¶ 4-6.

CAPTUR does not dispute that a commissioned notary public is "authorized to administer oaths" under Rule 28(a) and thus may serve as a deposition officer. Under 5 ILCS 255/2, notaries public have this authority. The question CAPTUR raises is not one of legal authority but of professional competency. While being authorized to administer oaths establishes that a person may serve as an officer under Rule 28(a), a notary license does not by itself demonstrate the competencies relevant to the reliability the Court has asked about. Recent filings indicate that the deposition would not be recorded by an unattended device, that the certified transcript is not an

10

unreviewed automated transcript, and that the deposition officer for the proposed process would be a notary.

Rule 30(b)(5)(A) requires the officer to state at the beginning of the deposition the officer's name, the date, time, and place, and the deponent's name; to administer the oath; and to record the testimony. Rule 30(f)(1) then requires the officer to certify that "the witness was duly sworn" and "the deposition accurately records the witness's testimony." These functions encompass both administrative acts (identity verification, oath administration) and a substantive professional judgment (attesting to accuracy of the record).

The Skribe Declaration describes the digital reporter's functions as including: making on-the-record statements, confirming stipulations, ensuring appearances are not distorted, requesting speakers not talk over one another, clarifying and spelling names, tracking examination time, and marking exhibits. Skribe Decl. ¶¶ 11-14. These functions parallel some (but not all) of the duties of a certified court reporter. Notably absent from the record is any indication that the digital reporter possesses: (a) Certification from any nationally recognized certifying body for court reporters or transcribers; (b) Training in verbatim transcription or transcript review to the standards required for national court reporting certification; (c) Demonstrated proficiency in identifying and resolving ambiguities in spoken testimony; (d) Training in the handling of complex technical, scientific, or medical terminology commonly encountered in depositions; or (e) Experience or competency in evaluating whether a transcript produced by AI-assisted means is in fact "true, verbatim, and accurate" as required by the certifications described in Skribe Decl. ¶ 9.

The question before the Court appears to be not whether a platform or technology may replace a human professional, but what qualifications the professionals making the record should

11

hold, and CAPTUR has provided the answer to that question for the last several decades. While the Rules do not require the deposition officer to be a certified court reporter, certification specifically designed to test those competencies, such as CAPTUR's CER or CDR credential, is the strongest available evidence that a proposed officer can meet the reliability standard the Court has identified as a concern.

CAPTUR notes that this position is shared by other amici in this case. The nation's leading providers of nonstenographic deposition services have represented to this Court that their digital reporters hold AAERT (now CAPTUR) certifications, and have expressly distinguished their professionally supervised reporting methods from the process described in the Skribe Declaration. *See* Brief of Amici Curiae U.S. Legal Support, Inc., et al. (Dkt. 126) at 8 (stating that "[w]hatever processes may have been employed by other vendors—including the vendor involved in this case, Skribe.AI—those practices neither define nor represent traditional non-stenographic reporting"). The fact that industry-leading companies draw this distinction underscores the importance of the qualification question CAPTUR raises and confirms that nationally recognized certification is the appropriate measure of professional competency for the deposition officer.

## IV. THE OFFICIAL RECORD, ITS FORM, AND CERTIFICATION (COURT QUESTION 3)

The Court asked whether the official record is the recording, the transcript, or both, and who certifies each. *See* Order (Dkt. 102) at 2 (quoting *Alcorn v. City of Chicago*, 336 F.R.D. 440, 442-43 (N.D. Ill. 2020)). Action Care responds that the official record is the audiovisual recording, with the written transcript verified as a "true and verbatim record" of that recording, and both certified by the same notary officer. Skribe Decl. ¶¶ 7-10.

CAPTUR offers the following observations on the dual-record framework:

12

**A.** *Certification of the Recording Versus the Transcript Requires Different Professional Judgments*

As this Court recognized in *Alcorn*, certifying a recording and a transcript "can involve distinct functions." 336 F.R.D. at 442-43. CAPTUR agrees. *See also* Order (Dkt. 102) at 3 (citing *Adams v. Co-op City Dep't of Pub. Safety*, No. 21-CV-2675-DEH-BCM, 2024 WL 1478897, at *5 n.4 (S.D.N.Y. Apr. 5, 2024), and *Heard v. Cnty. of San Bernardino*, No. 5:20-CV-02335-JWH-KK, 2024 WL 4328896, at *4 (C.D. Cal. Mar. 25, 2024), for the principle that the resulting record must carry sufficient indicia of reliability). Certifying an audiovisual recording involves attesting that the recording equipment operated properly, captured an undistorted record of the proceedings, and was not tampered with; essentially a chain-of-custody and technical integrity attestation. A notary who was present throughout the deposition and monitored the recording equipment is well positioned to make this certification.

Certifying a *transcript*, however, involves a fundamentally different professional judgment: attesting that the written words on the page are a true, verbatim, and accurate representation of the spoken words on the recording. This requires the certifying individual to evaluate whether the transcript correctly captures every word spoken, properly identifies each speaker, accurately records technical terms, and appropriately reflects the form and content of the testimony. The reliability of a legal record should be evaluated based on the qualifications, training, ethics, and accountability of the professional responsible for creating it, rather than the particular technology used in the process. In CAPTUR's professional standards framework, this certification requires demonstrated competency in transcript review and verification sufficient to support the accuracy attestation: competencies that CAPTUR's certifications are specifically designed to test.

**B.** *The Practical Implications of Designating the Recording as the Official Record*

If the audiovisual recording is the official record, CAPTUR notes that this framework has practical implications the Court should consider.

The Skribe Declaration states that the notary digital reporter executes a "declaration of verbatim transcript" certifying that the transcript is "a true, verbatim, and accurate record of the testimony." Skribe Decl. ¶ 9(b). CAPTUR observes that the strength of this certification depends entirely on the qualifications and process of the individual making it. Certification specifically designed to test those competencies, such as CAPTUR's CER or CDR credential, is the strongest available evidence that a proposed officer can meet the reliability standard the Court has identified as a concern. If the certifier did not produce the transcript and relies on review of a technology-generated draft, the Court should understand the basis for that individual's confidence that the transcript is in fact verbatim and accurate.

## V.     INDICIA OF RELIABILITY (COURT QUESTION 4)

The Court asked whether the resulting record carries sufficient indicia of reliability to serve as the official record. *See* Order (Dkt. 102) at 3 (citing *Adams v. Co-op City Dep't of Pub. Safety*, No. 21-CV-2675-DEH-BCM, 2024 WL 1478897, at *5 n.4 (S.D.N.Y. Apr. 5, 2024); *Heard v. Cnty. of San Bernardino*, No. 5:20-CV-02335-JWH-KK, 2024 WL 4328896, at *4 (C.D. Cal. Mar. 25, 2024)). The Court identified "indicia of reliability" as a key concern, and CAPTUR addresses reliability from the perspective of its expertise in professional standards for verbatim record creation.

14

A.      *Accuracy Rates: AI-Assisted Transcription Versus Certified Court Reporters*

Current automatic speech recognition (ASR) technology, while substantially improved in recent years, presents known accuracy limitations in the deposition context when not reviewed by a qualified human court reporter. Published research and industry data indicate that ASR systems on their own typically achieve word error rates (WER) ranging from 5% to 15% in controlled environments, with significantly higher error rates in challenging acoustic conditions, with non-standard accents, or with specialized vocabulary. In contrast, certified court reporters (many of whom use ASR as a tool) produce final transcripts with accuracy rates consistently exceeding 99%; a standard CAPTUR's certification examinations are designed to verify.

The Skribe model incorporates human review to address ASR limitations. However, the record does not establish: (a) the baseline accuracy of the ASR-generated draft that human reviewers receive; (b) the training, certification, or demonstrated accuracy of the human reviewers; (c) whether the reviewers achieve accuracy rates comparable to certified reporters; or (d) the error rate of the final delivered transcript. Without this information, the Court cannot fully evaluate whether the proposed process produces transcripts with reliability comparable to those produced by certified reporters.

B.      *Handling of Complex Terminology*

Depositions in litigation frequently involve complex terminology drawn from science, medicine, technology, finance, or other specialized fields. In the present case (a dispute between a fertility company and a veterinary clinic) depositions are likely to involve specialized medical, scientific, and technical vocabulary.

15

Certified court reporters prepare for depositions by reviewing relevant case materials and creating custom dictionaries for specialized terms they expect to encounter. During the deposition itself, reporters can: (a) interrupt to request spelling of unfamiliar terms; (b) use context and real-time research to identify correct spellings; (c) recognize when a term has been misheard and flag it for verification; and (d) draw on training that specifically addresses medical, scientific, and technical vocabulary.

ASR systems on their own, by contrast, may struggle with terms that are not in their training data or that are phonetically similar to common words. The Skribe Declaration states that the digital reporter clarifies and spells names and unfamiliar terms (Skribe Decl. ¶ 14). It is essential that the digital reporter possesses the subject-matter familiarity to recognize when a technical term has been incorrectly transcribed by ASR, and that the human reviewers who prepare the final transcript have the specialized knowledge needed to catch such errors.

### C.     *Speaker Identification in Multi-Party Proceedings*

Accurate speaker identification is essential to a reliable deposition record. When multiple attorneys are present, when witnesses and counsel have similar vocal characteristics, or when participants speak in rapid succession, correctly attributing statements to the right speaker is critical. Misattribution of testimony can have serious consequences for the evidentiary record.

Certified court reporters identify speakers through a combination of visual observation, voice recognition, and contextual cues developed through training and experience. ASR systems on their own cannot reliably identify speakers, but may attempt speaker diarization (separating audio by speaker). This technology has known limitations in multi-party settings, particularly with remote depositions conducted over videoconference platforms where audio quality may vary.

16

The Skribe Declaration states that the digital reporter "identif[ies] speakers" as part of managing the record. Skribe Decl. ¶ 14. If ASRmis-attributes speech segments, the human reviewer must independently re-identify speakers from the recording; a task that is significantly more difficult after the fact than in real time, particularly in multi-party remote depositions.

### D.     *Record Integrity and Chain of Custody*

CAPTUR acknowledges that the Skribe Declaration describes a robust chain-of-custody protocol including redundant backup recording and security features. Skribe Decl. ¶¶ 15-16. With respect to the integrity of the audiovisual recording itself, these measures appear to address the Court's reliability concerns. The recording is less susceptible to transcription errors than the written transcript because it captures the actual spoken testimony.

## VI.     POTENTIAL SAFEGUARDS THE COURT MAY CONSIDER

Should the Court grant Action Care's motion, CAPTUR respectfully identifies the following safeguards that the Court might impose, drawn from CAPTUR's expertise in professional standards for record creation. The Skribe Declaration indicates that Skribe is "prepared to follow any additional remote-deposition protocol the Court may order." Skribe Decl. ¶ 20. This District has recognized the Court's authority to impose such protocols. *See In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 3469166 (N.D. Ill. June 25, 2020) (establishing remote deposition procedures). CAPTUR offers these suggestions in the interest of ensuring record reliability regardless of the Court's ultimate disposition of the motion.

1. **CER/CDR certification or equivalent credential for the digital reporter.** The Court could require that the digital reporter assigned to the deposition hold, at a minimum, the Certified Electronic Reporter (CER) or Certified Deposition Reporter (CDR) credential from CAPTUR or an equivalent certification from a nationally recognized certifying body for court reporters or transcribers. A number of Skribe personnel carry the CER certification or are in the process of becoming certified. The CER exam tests four knowledge domains, 31 subdomains, and 110 individual topics specifically designed to verify the competencies needed to capture, manage, and certify the record of legal proceedings. This would provide the strongest available assurance that the certifying officer possesses professional competencies relevant to record reliability beyond notary authority alone.

2. **Preservation of the complete recording.** The Court could require that the complete, unedited audiovisual recording be preserved for the duration of the litigation and any appeals, and that it be made available to any party for comparison to the transcript upon reasonable request. This provides an ultimate check on transcript accuracy and ensures that any errors can be identified and corrected.

3. **Fallback mechanism.** The Court could provide that if the final transcript contains material errors identified by either party upon comparison to the recording, the deposing party shall bear the cost of having the recording professionally transcribed by a certified court reporter or transcriber, ensuring that the record can be corrected without undue burden on the non-noticing party.

**CONCLUSION**

CAPTUR takes no position on the parties or the company involved, and asks the Court not to prohibit nonstenographic depositions, which the Federal Rules expressly permit. Rather, CAPTUR submits that the question before the Court is not whether a platform or technology may replace a human professional, but what qualifications the professionals making the record should hold, and CAPTUR has provided the answer to that question for the last several decades.

CAPTUR objects in the most emphatic terms to the concept of attempting to produce a record without a human court reporter. While AI can be a powerful tool in the hands of a certified court reporter, AI platforms lack the human judgment and accountability essential to making, protecting, and preserving a quality legal record. Furthermore, nothing in the Federal Rules permits a deposition record made without a qualified officer. A recording device cannot swear a witness, and software cannot certify a transcript. However, nothing in the record CAPTUR has reviewed suggests that any party is asking this Court to allow a record without a human officer administering the oath and reviewing the transcript, and previous filings appear to confirm that what is proposed would not be an unmonitored recording or a transcript produced by technology absent human oversight.

CAPTUR's position is that an accurate, impartial legal record depends on the qualifications of the professional making it, not the method or tools being used. Certification specifically designed to test those competencies, such as CAPTUR's CER and CDR credentials, is the strongest available evidence that a proposed officer can meet the reliability standard the Court has identified as a concern. CAPTUR respectfully requests that the Court allow the deposition in question to proceed, consider the CER certification and the professional standards it represents when evaluating the qualifications of the professionals involved in the proposed

19

process, and that the Court consider imposing appropriate safeguards to ensure that the resulting

deposition record reliably serves its function as the official evidentiary record of witness

testimony. CAPTUR thanks the Court for the opportunity to submit this information.

Dated: August 10, 2026             Respectfully submitted,

            **LEWIS, BRISBOIS, BISGAARD & SMITH**

            By: */s/ Bryan P. Sugar*
            Bryan P. Sugar (ARDC No. 6276016)
            **LEWIS BRISBOIS BISGAARD & SMITH LLP**
            550 West Adams Street, Suite 300
            Chicago, Illinois 60661
            P: (312) 345-1718
            F: (312) 345-1778
            Bryan.Sugar@lewisbrisbois.com
            *Attorneys for Council for the Advancement of*
            *Professionals, Technology, and Unbiased Reporting*

20

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, does hereby certify that they caused a true and correct copy of the foregoing to be served upon all parties by electronic mail and this Court's ECF system, this 10th day of August, 2026.

/s/ Bryan P. Sugar