**THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MFB Fertility Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Action Care Mobile Veterinary Clinic, LLC,<br><br>Defendant. | Case No. 1:23-cv-03854<br><br>Dist. Judge John J. Tharp Jr.<br><br>Mag. Judge Gabriel A. Fuentes |

**Action Care's Reply to the Amicus Briefs on its Second Motion for Court Approval to Use Skribe.AI for Depositions and to Compel Deposition of Dr. Amy Beckley Using Skribe.AI**

Pursuant to leave granted by the Court [Dkt. 129], Defendant/Counter-plaintiff Action Care Mobile Veterinary Clinic, LLC ("Action Care" or "Defendant"), by its counsel, respectfully submits this reply to the amicus briefs filed on its Second Motion for Court Approval to Use Skribe.AI ("Skribe") for Depositions and to Compel the Deposition of Dr. Amy Beckley ("Second Motion") [Dkt. 103]. Three sets of amici curiae responded to the Court's solicitation for briefs [Dkt. 106]: the Council for the Advancement of Professionals, Technology, and Unbiased Reporting ("CAPTUR") [Dkt. 128]; the group of U.S. Legal Support, Inc., Esquire Deposition Solutions, LLC, Veritext, LLC, and Magna Legal Services (collectively, "Service-Provider Amici") [Dkt. 126]; and Remote Legal Court Reporting, LLC ("Remote Legal") [Dkt. 127].

## PRELIMINARY STATEMENT

The amicus briefing settles the points that the Court had identified in its prior order ("Order") [Dkt. 102]. All amici agree that the Federal Rules permit a deposition to be taken before a qualified notary officer and recorded and transcribed by nonstenographic means. A leading national credentialing organization for digital reporters says so. CAPTUR Br. at 2. Several of Skribe's competitors say so. Service-Provider Br. at 2–3. Meanwhile, Remote Legal – a fellow

remote deposition platform provider and a direct competitor of Skribe – also says so and asks the Court to grant the Second Motion outright. Remote Legal Br. at 6.

No amicus asks the Court to deny the Second Motion. The lone remaining opponent is MFB, which never argued that the Skribe procedure fails Rule 28 or Rule 30 and never moved for a protective order. Action Care submits this reply to make four points: (1) all amici confirm the proposed deposition method is permitted; (2) CAPTUR's questions about officer qualifications are answered through the record and do not justify a categorical credentialing rule; (3) any efforts by amici to differentiate Skribe's offerings from their own is a competition-driven market position, not a legal standard; and (4) MFB's objection to Skribe's optional AI features draws no meaningful support from amici. The Court should grant the Second Motion in full, including by approving Action Care's use of Skribe's optional features.

## ARGUMENT

### *I. The Amici Uniformly Confirm That the Federal Rules Permit the Proposed Deposition Method, Leaving MFB Alone in Opposition.*

The Second Motion has seemingly presented a false dichotomy. The Court's framing – whether a party may "use an artificial intelligence platform in lieu of a court reporter to conduct depositions" – assumes that an AI platform and a court reporter are mutually exclusive. Dkt. 106. To the extent that "court reporting" had become synonymous with "stenography," admittedly, Action Care itself had fallen into that trap. The amici help convey that this is a mistake. As CAPTUR puts it, "a digital court reporter is a court reporter." CAPTUR Br. at 4. The Service-Provider Amici regularly refer to depositions recorded stenographically and nonstenographically alike as having occurred before reporters. *See, e.g.*, Service-Provider Br. at 12 ("Non-stenographic reporting helps address a growing and well-documented shortage of licensed stenographic reporters."). Recognizing digital reporting for what it is, Remote Legal urges the Court to confirm

that "federal law permits modern court reporting technologies, including nonstenographic methods." Remote Legal Br. at 1.

Therefore, Action Care's preferred use of Skribe is not offered in lieu of using a court reporter. Based on the feedback from all amici, Skribe actually provides a court reporter. Skribe conducts depositions before a trained, commissioned notary digital reporter who performs the officer's functions, and separately, Skribe offers optional analytical tools with the use of AI. Sometimes, those services are provided simultaneously, but the latter does not affect the integrity and compliance of the former. Remote Legal succinctly reframes the Court's inquiry as really involving "two separate issues: First, before whom may a deposition proceed? Second, how can a deposition be recorded and transcribed?" Remote Legal Br. at 2.

The amici emphasize different aspects, but there is no disagreement about the governing rules. CAPTUR states that Rule 30(b)(3)(A) "expressly permits nonstenographic deposition recording," that the Rules "do not mandate the use of a certified court reporter," and that CAPTUR "agrees with Defendant's arguments in favor of the motion." CAPTUR Br. at 2. It asks the Court to allow the deposition to proceed. *Id*. at 4, 19. The Service-Provider Amici, competitors of Skribe and of one another, agree that professionally administered nonstenographic reporting "produce[s] an accurate, reliable, and trustworthy record" consistent with the Rules' "longstanding technology-neutral approach." Service-Provider Br. at 2. They further conclude that "Action Care [ ] should therefore be permitted to employ non-stenographic recording in this case, consistent with both the text and purpose of the Federal Rules." *Id*. at 15. Remote Legal agrees that a notary satisfies Rule 28 and urges that "[t]his Court should grant Defendant's motion." Remote Legal Br. at 2, 6.

That alignment narrows the field. When a certifying body for the profession and Skribe's own competitors, including providers of traditional stenographic services, agree that Action Care's

contemplated deposition method is permitted, MFB stands alone. Furthermore, MFB reached this point without contesting the only issues the Court identified in its prior Order. MFB did not argue noncompliance with Rules 28 or 30, and it never sought a protective order under Rule 26(c). Considering that Skribe's own competitors decline to endorse MFB's position, MFB cannot carry its burden in opposing Action Care's chosen deposition method.

### *II. CAPTUR's Concerns About Officer Qualifications Are Satisfied Here and Form No Basis to Impose a Categorical Credentialing Rule.*

CAPTUR's central theme is that "an accurate, impartial legal record depends on the qualifications of the professional making it, not the method or tools being used." CAPTUR Br. at 8. Action Care agrees with the principle and does not oppose reasonable, record-directed safeguards. Indeed, Action Care chose Skribe as its vendor based in part on Action Care's comfort with Skribe's ability to create and protect the record properly through the constant involvement of human digital reporters. As Skribe has previously attested, each of its digital reporters is "a trained, neutral record professional who is present and active throughout the deposition." Dkt. 103-1, ¶ 6. The deposition is not recorded using an "unattended device." *Id*.

CAPTUR does not allege that the Skribe procedure is inadequate. It acknowledges that the Rules "do not prescribe how a transcript must be produced, only that the officer must be able to certify its accuracy," and CAPTUR "does not contend that the described process is necessarily insufficient to create a certified record under Rules 28 and 30." CAPTUR Br. at 9–10. CAPTUR's submission is not an objection but rather a set of refinements as to the benefits that individuals acting as deposition officers may bring if they hold certain worthwhile skills.

Action Care respectfully believes that CAPTUR's concerns are already addressed by the existing record. One of the previously submitted declarations by Skribe's CEO establishes that "[t]he official record of the deposition is the audiovisual recording of the testimony," which is

captured nonstenographically before a human digital reporter. Dkt. 103-1, ¶¶ 7, 17, 19. The final written transcript is then prepared through human review from the recording, and the same digital reporter then proceeds to certify both the recording and the transcript. *Id*. The final transcript is not an unreviewed, automatically generated product. *Id*., ¶ 17. As noted above, Skribe's digital reporters are trained, neutral record professionals. *Id*., ¶ 6. On the matter of credentials, CAPTUR itself reports that "[a] number of Skribe personnel carry the CER certification or are in the process of becoming certified." CAPTUR Br. at 18. Action Care does not dispute the merits of employing personnel holding such credentials.

The Court should not, however, adopt a categorical credentialing prerequisite for nonstenographic reporting. CAPTUR concedes that "the Rules do not require the deposition officer to be a certified court reporter." CAPTUR Br. at 12. That concession is well taken, and CAPTUR's emphasis on the value of the CER and CDR certifications should be read with its own interest in mind. CAPTUR is a professional membership and credentialing organization that offers the very certifications it urges the Court to treat as measures of a qualified reporter. The credentials offered by CAPTUR are surely useful. Both the Service-Provider Amici and Remote Legal have indicated that all of their reporters hold certifications from one of CAPTUR's predecessor organizations, the American Association of Electronic Reporters and Transcribers (AAERT). Service-Provider Br. at 5; Remote Legal Br. at 4. Nevertheless, AAERT (*i.e.*, CAPTUR) is not the only body that credentials reporters. No rule makes CAPTUR's (or any single organization's) credential the exclusive marker of a qualified deposition officer.

The Rules require at least one disinterested individual to serve as an officer, who is: (i) legally authorized to administer oaths, (ii) capable of performing the on-the-record duties Rule 30 prescribes, and (iii) capable of certifying the accuracy of the record. *See* FED. R. CIV.

P. 28(a), 28(c), 30(b)(5), 30(c)(1), 30(e)(2), 30(f)(1), 30(f)(3). At the risk of stating the obvious, the officer – regardless of any training as a court reporter – also must be willing to perform the necessary functions. *See Alcorn v. City of Chicago*, 336 F.R.D. 440, 443–44 (N.D. Ill. 2020) (court reporter hired to record deposition stenographically was unwilling to certify litigant's own proposed Zoom video recording, which drove the need for a second individual, a videographer, to serve as the officer for the audiovisual deposition recording). Here, a single officer, the notary digital reporter, is both willing and able to perform all duties under Rule 30, including certifying the audiovisual recording and the transcript alike. *See* Dkt. 103-1, ¶¶ 9–10. In general, Skribe's trained digital reporter meets all Rule 28 requirements and performs all Rule 30 duties. *See id.*, ¶¶ 4–6, 11–14, 19. The Rules do not impose any further requirement for a deposition officer to have received any particular license or other credentials.

If a party is unsatisfied with a digital reporter, the litigant still has recourse. The Federal Rules already address the potential of objections based on the qualifications of the deposition officer. *See* FED. R. CIV. P. 30(c)(2) ("An objection at the time of the examination . . . to the officer's qualifications . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection."). Objections to the officer's qualifications are deemed waived unless they are made prior to the deposition or "promptly after the basis for disqualification becomes known or, with reasonable diligence, could have been known." FED. R. CIV. P. 32(d)(2). On the other hand, if a party timely objects to the officer's qualifications, it can then deal with the situation as it would with any other objection under Rule 30(c)(2). To the extent that the objection is driven by the officer's handling of the deposition, the objecting party can file a timely motion to suppress. FED. R. CIV. P. 32(d)(4). In turn, such potential motions to suppress, like all filings with the court, must not be baseless, lest they expose the objecting party to sanctions. *See Meeks*

*v. Jewel Companies, Inc.*, 845 F.2d 1421, 1422 (7th Cir. 1988) ("The attitude seems to be, it can't hurt to ask. It can. Any frivolous motion, pleading, or request is subject to sanctions."). Because of these preexisting mechanisms, the Court can permit Action Care's proposed deposition method without imposing a credentialing rule.

### *III. Amici's Effort to Distinguish Skribe Is Market Positioning, Not a Legal Standard.*

Action Care is grateful to all three sets of amici for confirming that the Federal Rules permit nonstenographic digital reporting. The Service-Provider Amici and Remote Legal support that method even though, as the Service-Provider Amici acknowledge, they "compete vigorously in the marketplace with one another and with [Skribe]." Service-Provider Br. at 1. The Service-Provider Amici are also not solely nonstenographic providers. By their own account, they "furnish a broad range of deposition reporting services, including stenographic court reporting," alongside nonstenographic recording. *Id*. Their interest in drawing a line between "traditional" reporting and platforms like Skribe is thus commercial as much as rhetorical. They sell the very stenographic services that a lower-cost nonstenographic competitor threatens to displace. *See* Remote Legal Br. at 4 ("[N]onstenographic remote deposition platforms outcompete traditional stenographic reporting on price. On average, Remote Legal's nonstenographic services are 45% cheaper than comparable stenographic offerings."). They acknowledge this dynamic. *See* Service-Provider Br. at 14 ("The non-stenographic deposition services provided by Amici produce accurate and reliable transcripts of deposition testimony while reducing both the cost and delay associated with traditional stenographic reporting."). The Service-Provider Amici's menu of services helps explain their apparent reticence to align with Skribe's offerings on the same level as Remote Legal.

The Service-Provider Amici attempt to distinguish themselves from Skribe, stating that "[Skribe's] practices neither define nor represent traditional non-stenographic reporting as performed by Amici." Service-Provider Br. at 8. In general, they wish to ensure that "the reporting

methods employed by Amici [are not] conflated with fundamentally different approaches that may rely principally upon generative artificial intelligence <u>or other emerging technologies</u>." *Id*. at 7 (emphasis added). They ask the Court to "reserve any broader questions concerning materially different technologies for another case." *Id*. at 8. They do not, however, identify any aspect of Skribe's process that fails to meet any requirement of Rule 28 or Rule 30. Their preference to defend "traditional" reporting and set Skribe apart is a commercial posture, not a legal distinction, and supplies no reason to withhold or limit the relief sought by Action Care.

On the technologies themselves, the Service-Provider Amici and Action Care agree. As they acknowledge, the Service-Provider Amici's nonstenographic methods, tools, and workflows "are substantially similar to those employed by stenographers," and "[s]tenographic reporters themselves rely extensively on technology, including computer-assisted transcription software and backup digital recordings during transcript preparation." Service-Provider Br. at 14. The use of technology in creating the record is therefore not a distinction between "traditional" reporting and remote deposition platforms like Skribe and Remote Legal. Rather, as Action Care has maintained throughout, it is the norm across both. What matters, as these amici agree, is "whether that technology is employed under the supervision of trained professionals in a manner that preserves the accuracy, reliability, and integrity of the record." *Id*.

The governing test is neutral as to vendor and technology: a deposition must be taken before a disinterested officer authorized to administer oaths under Rule 28 who performs the functions and makes the certifications Rule 30 requires. Skribe meets that test, as even a direct competitor confirms. Remote Legal explains that "[r]emote deposition platforms such as Skribe and Remote Legal employ digital reporters who satisfy these criteria." Remote Legal Br. at 2. Nothing in any amici's brief contradicts that conclusion. The Court can grant the Second Motion

without endorsing, ranking, or comparing any vendor, and it should decline any invitation to import one competitor's characterization of a rival or the rival's technology into the legal standard. That course honors the Service-Provider Amici's own request that the Court "not [ ] cast doubt on the broader category of non-stenographic deposition services." Service-Provider Br. at 15.

### *IV. Amici Lend No Support to MFB's Objection to Skribe's Optional AI Features.*

Regardless of any attempts to distinguish "traditional" nonstenographic reporting from any "emerging technologies," nothing in the amicus briefs supports MFB's objection to Skribe's optional AI features. No amicus raises a confidentiality, privilege, or data-handling concern. To the contrary, CAPTUR acknowledges that Skribe attests to "a robust chain-of-custody protocol including redundant backup recording and security features" that "appear to address the Court's reliability concerns." CAPTUR Br. at 17. Skribe's data-handling representations remain unrebutted, including that Skribe "does not use any data provided by users of its platform to train any AI models" and will handle confidential materials in accordance with the Protective Order. Dkt. 109-1, ¶¶ 8–9. MFB's speculative objection is not a basis to deny an otherwise-proper deposition method, nor is it a reason to prevent Action Care's use of technology to aid in litigation.

For the same reasons, the Court should not split the difference by approving the deposition method while withholding approval of Skribe's optional AI features. The Court's prior Order raised concerns only about compliance with Rules 28 and 30 and the reliability of the official record, not about Skribe's optional features. Those tools form no part of the certified record and do not create, certify, or alter it. Dkt. 109-1, ¶¶ 2, 4. No amicus asked the Court to condition approval on their removal, and MFB identifies no rule they transgress. As addressed in earlier briefings on the Second Motion, the Illinois Supreme Court's Policy on Artificial Intelligence, to which this Court's standing order for civil cases refers all counsel, provides that AI use in litigation "may be expected, should not be discouraged, and is authorized provided it complies with legal

and ethical standards." Dkt. 103 at 6; Dkt. 109 at 8. Approving the deposition recording method while carving out the optional AI features would draw a line the Rules and the record do not support. Action Care respectfully requests that the Court grant the Second Motion in full, including with respect to the optional features, rather than in part.

## CONCLUSION

Action Care respectfully requests that the Court grant its Second Motion, approve the use of Skribe (including its optional features) to record depositions in this action by nonstenographic audiovisual means, and compel the deposition of Dr. Amy Beckley to proceed on a date to be re-noticed by Action Care. If the Court imposes conditions, Action Care requests that they be limited to reasonable safeguards and that they neither impose any categorical credentialing requirements that are not demanded by the Federal Rules of Civil Procedure nor prejudice lawful, cost-effective technologies.

Dated: August 31, 2026

Respectfully submitted,

**ACTION CARE MOBILE VETERINARY CLINIC, LLC**

By: /s/ *Ilya G. Zlatkin*
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Tel: (312) 809-8022
ilya@zce.law

*Attorney for Defendant/Counter-plaintiff Action Care Mobile Veterinary Clinic, LLC*